UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2010-01
MAY 17, 2011 SESSION

FILED

MAY 1 7 2011

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA

v.                          CRIMINAL NO.    5:11-00038
                                           18 U.S.C. § 1001
                                           18 U.S.C. § 1519
                                           18 U.S.C. § 2(b)

HUGHIE ELBERT STOVER

S U P E R S E D I N G
I N D I C T M E N T

The Grand Jury Charges:

COUNT ONE

(False Statement)

Background

At all relevant times:

1.  Performance Coal Company, Inc. ("Performance"), was a corporation engaged in the business of operating an underground coal mine near Montcoal, Raleigh County, West Virginia, known as the Upper Big Branch Mine, the products and operations of which affected interstate commerce. As such, Performance was an "operator" within the meaning of 30 U.S.C. § 802(d) and was subject to the provisions of the Federal Mine Safety and Health Act of 1977 (the "Mine Act") and to the regulations promulgated thereunder.

2.   Defendant HUGHIE ELBERT STOVER was employed by Performance as the head of security.

3.   In this capacity he supervised all of the security guards who worked at Performance.

4.   Furthermore, as an employee and agent of Performance, he was subject to the provisions of the Mine Act and to the regulations promulgated thereunder.

5.   The United States Department of Labor was a department of the executive branch of the Government of the United States and was responsible for the enforcement of laws of the United States relating to labor and employment conditions, including the Mine Act.

6.   The Mine Safety and Health Administration ("MSHA") was an agency of the United States Department of Labor and was responsible for the enforcement of the Mine Act and the promulgation and enforcement of federal regulations related to mine safety and health, codified in Title 30 of the Code of Federal Regulations.

7.   As part of MSHA's regulatory and enforcement efforts, and pursuant to its statutory authority, MSHA mine inspectors made periodic, unannounced inspections of coal mines to ensure compliance with the mandatory health, safety, and other regulations found in Title 30, Code of Federal Regulations, and issued citations for violations of the regulations.   Violators were subject to civil and criminal penalties under the Mine Act.

8.   The Mine Act made it a crime for any person to give advance notice of such an inspection.  Among the purposes of this prohibition against advance notice was to ensure that MSHA inspectors would have the opportunity to observe mining operations as they were actually and normally carried out.

9.   The Federal Bureau of Investigation ("FBI") was an agency of the Department of Justice, which was a department of the executive branch of the Government of the United States. The FBI was responsible for investigating and enforcing the criminal laws of the United States.

Investigations of the Explosion at the Upper Big Branch Mine

10.   On April 5, 2010, an explosion occurred at the Upper Big Branch Mine, which was operated by Performance.  That explosion caused the deaths of 29 miners.

11.   Following the explosion, several entities formed accident teams and began investigations into the cause of the explosion and into the conditions and practices that existed at the Upper Big Branch Mine.  These accident teams included an independent investigation team appointed by the governor of West Virginia, the West Virginia Office of Miner's Health Safety & Training accident team, and MSHA's accident team.

12.   As part of the accident teams' investigations into the explosion, the teams conducted depositions of many individuals who worked at the Upper Big Branch Mine and mine site, including

3

defendant HUGHIE ELBERT STOVER, and inquired about Performance's policy and practices regarding announcing the presence of MSHA inspectors at the Upper Big Branch Mine.

<u>False Statements to the MSHA Accident Team</u>

13.   On or about November 30, 2010, at or near Beaver, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant HUGHIE ELBERT STOVER knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, in that defendant HUGHIE ELBERT STOVER stated and represented to and in the presence of representatives of the Department of Labor and MSHA that Performance had a practice and policy that forbade personnel at the Upper Big Branch Mine from giving advance notice of an inspection by prohibiting the security guards from notifying anyone at the mine site of the presence of MSHA inspectors at the Upper Big Branch Mine.

14.   These statements and representations were false, fictitious, and fraudulent, as defendant HUGHIE ELBERT STOVER then and there well knew, because defendant HUGHIE ELBERT STOVER had himself directed and trained security guards at Performance's Upper Big Branch Mine to give advance notice by announcing the presence of an MSHA inspector on the mine property over the radio.

In violation of Title 18, United States Code, Section 1001.

4

## COUNT TWO

### (False Statements)

1.   The Grand Jury realleges and incorporates by reference paragraphs one through nine of Count One of this Indictment as if fully set forth herein.

### Federal investigation of advance notice

2.   In late 2010 and early 2011, FBI Special Agents, working with MSHA Special Investigators, investigated allegations that advance notices of inspections had been given on a regular and continuing basis at Performance's Upper Big Branch Mine, in violation of the Mine Act.

3.   In the course of the investigation, FBI Special Agents and MSHA Special Investigators conducted interviews of Performance employees and contractors, including defendant HUGHIE ELBERT STOVER and security guards who worked under his supervision, and inquired about Performance's policy and practices regarding announcing the presence of MSHA inspectors at the Upper Big Branch Mine.

4.   The investigation revealed that there were multiple radio channels that were used by the security guards at the Upper Big Branch Mine.  One channel was known as the "security channel."  A second channel was known as the "Montcoal channel."  Radio transmissions on the Montcoal channel could be heard by individuals working in the Upper Big Branch Mine office.

<u>False statements about advance notice</u>

5.  On or about January 21, 2011, at or near Montcoal, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant HUGHIE ELBERT STOVER knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, in that (1) defendant HUGHIE ELBERT STOVER stated and represented to an FBI Special Agent and an MSHA Special Investigator that Performance had a practice and policy dating back to at least 1999 that forbade security guards at the Upper Big Branch Mine from giving advance notice of an inspection by prohibiting the announcement of the presence of MSHA inspectors at the Upper Big Branch Mine over the Montcoal channel; and (2) defendant HUGHIE ELBERT STOVER stated and represented that he would have fired any security guard who did not abide by the practice and policy forbidding the announcement of the presence of MSHA inspectors over the Montcoal channel.

6.  These statements and representations were false, fictitious, and fraudulent, as defendant HUGHIE ELBERT STOVER then and there well knew, because defendant HUGHIE ELBERT STOVER had himself directed and trained security guards at Performance's Upper Big Branch Mine to give advance notice by announcing the presence of an MSHA inspector over the Montcoal channel.

In violation of Title 18, United States Code, Section 1001.

## COUNT THREE

### (Concealment, Cover-Up and Destination of Documents in Federal Investigations)

1.    The Grand Jury realleges and incorporates by reference paragraphs one through nine of Count One of this Superseding Indictment and paragraphs two through four of Count Two of this Superseding Indictment as if fully set forth herein.

2.    At all relevant times, numerous documents relating to several years of security operations at the Upper Big Branch Mine were stored, along with other items, in the garage of a house known as the "Barracks" near the main security gate at the Upper Big Branch Mine.

3.    In early January 2011, defendant HUGHIE ELBERT STOVER directed a person known to the Grand Jury (the "Known Person") to dispose of thousands of pages of the security-related documents, including documents that reflected the presence of MSHA inspectors at the Upper Big Branch Mine in prior years.   Defendant HUGHIE ELBERT STOVER directed the Known Person to dispose of these documents by placing them in a trash compactor near the main security gate at the Upper Big Branch Mine.   At the time he ordered the Known Person to dispose of the documents, defendant HUGHIE ELBERT STOVER knew that the FBI and MSHA were conducting an investigation into allegations of criminal conduct involving Performance's Upper Big Branch Mine, including allegations that

advance notices of inspections had been given at Performance's Upper Big Branch Mine, in violation of the Mine Act.

4.   On approximately January 11, 2011, the Known Person carried out defendant HUGHIE ELBERT STOVER's instruction by sorting through the documents in the Barracks garage, preserving at the direction of defendant HUGHIE ELBERT STOVER, a limited number of documents related to property transfer and equipment removal, and disposing of thousands of pages of security-related documents in the trash compactor.

5.   These documents were later recovered after the federal government inquired about their existence in the course of its investigation into allegations of advance notices of inspections having been given at the Upper Big Branch Mine.

6.   On or about January 11, 2011, at or near Montcoal, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant HUGHIE ELBERT STOVER knowingly and willfully caused the Known Person to conceal, cover up, mutilate and destroy records and documents. Defendant HUGHIE ELBERT STOVER did so with the intent to impede, obstruct, and influence the investigation of a matter within the jurisdiction of agencies of the United States, that is, the Federal Bureau of Investigation and the Mine Safety and Health Administration, by having the records and documents disposed of and otherwise destroyed.

In violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2(b).

R. BOOTH GOODWIN II
United States Attorney

By: _____
BLAIRE L. MALKIN
Assistant United States Attorney

9