THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Beckley

**UNITED STATES OF AMERICA**

*v.*                                               **CRIMINAL NO. 5:11-CR-00038**
                                                                                          **Judge Berger**

**HUGHIE ELBERT STOVER**

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS MADE
AT NOVEMBER 30, 2010 AND JANURARY 21, 2011 INTERROGATIONS**

Comes now Defendant Hughie Elbert Stover ("Mr. Stover"), by counsel, and respectfully requests that the Court suppress any statements that he made on November 30, 2010 and January 21, 2011. On both occasions, Mr. Stover was subjected to custodial interrogations by federal law enforcement. Moreover, it is undisputed that Mr. Stover was never apprised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny. Because Mr. Stover's statements were obtained during custodial interrogations in violation of Miranda, they must be suppressed.

**I.      Necessary Facts and Procedural History**

On April 5, 2010, 29 miners were killed in an incident at the Upper Big Branch Mine in Boone County, West Virginia. The Upper Big Branch Mine was owned and operated by Performance Coal Company. Mr. Stover was the Chief of Security for Performance Coal at the time of the April 5, 2010 mine incident. (Stover Int., November 30, 2010. at 12, attached as Exhibit A.)

Mr. Stover was questioned on November 30, 2010 by representatives of the United States Department of Labor Solicitor's Office, the Mine Safety and Health Administration, the West Virginia Department of Miner Health Safety and Training, and J. Davitt McAteer, the investigator appointed by the Governor of West Virginia to investigate the incident. (Id. at 5-6.)

Mr. Stover's testimony before these four federal and state government agencies was compelled by a subpoena. (Id. at 8-9)("Mr. Koerber: Mr. Stover, you're appearing here today as a result of receiving a subpoena; is that correct?  The Witness:  Yes, sir.")

Mr. Stover was questioned by Davitt McAteer, the investigator appointed by the Governor of West Virginia, regarding the instructions given to security officers regarding visitors to the Upper Big Branch mine. Specifically, McAteer asked whether there were specific instructions for visitors. (Id. at 39). After Mr. Stover stated that Massey policy prohibited the notification of anyone that inspectors were present on mine property for an inspection, McAteer opined "I understand that.  I also note human nature when I drive by a policeman and someone's coming the other way.  I needn't say anymore." (Id. at 40). No one provided Mr. Stover any notice of any of his *Miranda* rights.  Nor was he told that he could leave the room.

Two months later, at 4:33 p.m. on January 21, 2011, Mr. Stover was questioned by FBI agent James F. Lafferty II at Performance Coal's main office in Montcoal, West Virginia. (See FD-302 form, attached as Exhibit B)  Lafferty was accompanied by Mike Belcher of the Mine Safety and Health Administration investigator.   Once again, neither Agent Lafferty nor Mr. Belcher provided Mr. Stover with his *Miranda* rights or informed him that he could stop the interview.

At approximately 1:30 p.m. on January 21, 2011, Massey Energy had alerted the government that Stover had had asked another security guard to throw away items that the government now claims were evidence related to the UBB investigation.  As soon as this information was relayed to federal prosecutors, Stover became a target of the investigation as that term is defined by the United States Attorney Manual.   Therefore, when Agent Lafferty

questioned Stover, he was not simply gathering facts, he was questioning a person suspected of a criminal offense, a "target" under U.S. Department of Justice policy.

The United States has charged Stover with making a false statement at both the November 30, 2010 questioning (Sup. Indict. Count I) and the January 21, 2011 interview (Sup. Indict. Count II). For the reasons set forth herein, Mr. Stover was subject to custodial interrogation at both interviews and, insofar as he was never provided with his Miranda rights, his statements must be suppressed.

## II.   Analysis

### A.   Applicable Legal Standard

It is well settled that a criminal suspect must be advised of his rights before being interrogated in a custodial setting. *Dickerson v. United States*, 530 U.S. 428, 435 (2000) (quoting *Miranda v.* Arizona, 384 U.S. 436, 479)("the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "*Miranda* rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.") *See also U.S. v. Jamison*, 509 F.3d 623, 628 (4th Cir. 2007) ("Custodial interrogation "mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.")

Interrogation occurs when government officials ask a person express questions or the equivalent of questions. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)("We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either

express questioning or its functional equivalent.")  A person is in custody when "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Jamison*, 509 F.3d at 628 (quotation omitted).  The test for whether a person is in custody is objective in nature, and "the appropriate inquiry is whether a reasonable person would feel free to decline officers' requests or otherwise terminate the encounter."  *Florida v. Bostick*, 501 U.S 429, 436 (1991).

      B.      **Mr. Stover's Statements Violated Miranda and Must Be Suppressed**

           i.      **Mr. Stover's "interviews" were interrogations**

On November 30, 2010, in response to a subpoena, Mr. Stover was placed in a room with officials from four separate government entities.  The entire purpose of this interview, as noted in the Superseding Indictment, was to determine if Mr. Stover had been involved in providing advance notice of an inspection by the Mine Safety and Health Administration, a crime under the federal Mine Act, 30 U.S.C. § 801 et. seq.  As such, any questioning was intended to determine whether criminal statutes had been violated and Mr. Stover's responses could clearly implicate him in said alleged criminal activity.

Similarly, when an agent from the Federal Bureau of Investigation came to Stover's workplace on January 21, 2011, the questioning almost exclusively dealt with the advance notification policies at the Upper Big Branch Mine.  Of course, this line was questioning was meant to determine whether crimes were commited and, if so, whether Mr. Stover was a participant.  Moreover, federal prosecutors were notified three hours before Stover was questioned that Stover had directed the throwing away of alleged evidence related to the Upper Big Branch investigation.  Simply put, the fact that government officials were asking direct questions regarding the violation of a federal criminal statute of a witness the government knew

to be the target of a criminal investigation, means that Mr. Stover was interrogated on both November 30, 2010 and the January 21, 2011.

### ii. The interrogations were custodial in nature

A statement made during an interrogation of a suspect who is not first apprised of his rights must be excluded if the interrogation was custodial – i.e. if a reasonable person would not have felt free to leave. *U.S. v. Jamison*, 509 F.3d 623, 628 (4th Cir. 2007); *See United States v. Dickerson*, 530 U.S. 428, 443 (2000). ("The disadvantage of the *Miranda* rule is that statements which may be by no means involuntary, made by a defendant who is aware of his "rights," may nonetheless be excluded . . . [.]")

Mr. Stover's November 30, 2010 interrogation was compelled by subpoena. During the course of the interrogation, Mr. Stover was questioned by representatives of four different federal and state government agencies. Any reasonable person, under such similar circumstances, would believe that he was required to participate and was not feel free to leave. In fact, the language of the subpoena itself advised Mr. Stover that his attendance was required and that he could face penalties for failing to attend.

While Mr. Stover was advised that he could "take a break" from questioning (Stover Int. at 8) he was never told – at any point - that he was free to leave or that he could stop the questioning. A reasonable person, having been taken into a government building at the National Mine Health & Safety Academy pursuant to a subpoena to be questioned by officials from four different government agencies, would not, under such circumstances, believe that he could end the questioning and leave. Instead, a reasonable person would feel compelled to stay and answer questions.

Similarly, on January 21, 2011, an FBI agent and an MSHA investigator visited Stover near Performance Coal's main office. Having already been subjected to a prior custodial interrogation, any similarly situated reasonable person, like Mr. Stover, would not have felt free to walk away from a federal law enforcement officer whose entire purpose was to follow up on statements made pursuant to a subpoena. A reasonable person would have viewed this second interview as a mere continuation of the first – with the same rules applying. The burden to notify Stover of his rights was enhanced even more at this second questioning because at that point the government knew that Stover was a target of the investigation for destroying evidence.

### III.   Conclusion

Mr. Stover was compelled by subpoena to meet with various federal and state agencies. That subpoena demanded compliance and threatened action if he failed to cooperate. During this meeting, Mr. Stover was questioned on matters that unquestionably implicated the violation of federal criminal statutes. He was never told he could leave and he was clearly not in a friendly and inviting environment. Despite all of this, no one provided Mr. Stover with his *Miranda* rights.

Only two months later, with this first forced encounter fresh in his mind, Mr. Stover was again paid a visit by federal law enforcement, who knew, or certainly should have known, that Stover was a target of the investigation. Once again, he was asked questions of a criminal nature without ever being provided his Miranda rights. This is exactly the type of government conduct that Miranda prohibits. The remedy is clear: Mr. Stover's statements must be suppressed.

Wherefore, the defendant respectfully requests that the Court enter an order granting his motion in limine and excluding any evidence regarding the statements made at Mr. Stover's November 30, 2010 and January 21, 2011 questioning by government officials.

                **HUGHIE ELBERT STOVER,**
                By Counsel

                */s/ William J. O'Brien*

                William D. Wilmoth, Esq. (W. Va. Bar. No. 4075)
                William J. O'Brien, Esq. (W. Va. Bar No. 10549)
                Robert L. Bailey, Esq. (W. Va. Bar No. 8902)

**STEPTOE & JOHNSON PLLC**    1233 Main Street Suite 3000
      *Of Counsel*                P. O. Box 751
                Wheeling, WV 26003-0751
                Telephone:    (304) 233-0000
                Facsimile:     (304) 233-0014
                *Counsel for Defendant*

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Beckley

**UNITED STATES OF AMERICA**

v.  **CRIMINAL NO. 5:11-CR-00038**
**Judge Berger**

**HUGHIE ELBERT STOVER**

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June 2011, I have electronically filed

"*Defendant's Motion To Suppress Statements Made At November 30, 2010 And Janurary 21, 2011 Interrogations*" with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following CM/ECF participants:

>Hon. R. Booth Goodwin, II
>Blaire L. Malkin, Esq.
>Steven R. Ruby, Esq.
>United States Attorney's Office
>Southern District of West Virginia
>300 Virginia Street, East, Room 4000
>Charleston, West Virginia  25301

>*/s/ William J. O'Brien*