THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Beckley

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 5:11-CR-00038
Judge Berger

HUGHIE ELBERT STOVER

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE DEFENDANT'S STATEMENTS**

The Mine Safety and Health Administration ("MSHA") and the West Virginia Office of Miners' Health Safety & Training ("WVOMHS&T") are conducting investigations into the April 5, 2010, disaster and the Upper Big Branch ("UBB") coal mine. Neither MSHA nor WVOMHS&T has the statutory authority to issue subpoenas compelling the attendance of witnesses to closed-door, under-oath examinations. Nonetheless, WVOMHS&T did issue several such subpoenas. One of those subpoenas commanded Defendant Hughie Elbert Stover ("Mr. Stover") to appear on November 30, 2010, under threat of contempt should he refuse, and be examined under oath, in private, *i.e.*, not at a "hearing" of any kind. The responses that Mr. Stover gave to MSHA's questioning that day form the sole basis for the government's accusations in Count One (directly) and Count Two (indirectly[1]) of the superseding indictment.

Because the subpoena commanding Mr. Stover to attend the November 2010 examination under penalty of contempt was invalid, the statements that he gave at that time and the statements given in January 2011, which flowed directly from his unlawfully-commanded presence in November 2010, must be excluded from the trial of this matter.[2]

---

[1] Mr. Stover's presence at and answers given during the November 30, 2010, interrogation (which directly form the basis for Count One) led directly to the subsequent January 21, 2011, interrogation (during which Mr. Stover made the statements that directly form the basis for Count Two).

[2] As these statements given in November 2010 and January 2011 form the sole basis for Counts One and Two, respectively, if the Court grants the instant motion, Mr. Stover will be making a motion to dismiss those counts of the indictment for that reason.

# I. ANALYSIS

A.  **The WVOMHS&T subpoena was invalid because it exceeded that agency's statutory authority.**

WVOMHS&T has the following subpoena power at issue in this case:

> The Director of the Office of Miners' Health, Safety and Training . . . has the power and duty to . . . [c]all or subpoena witnesses, for the purpose of conducting hearings into mine fires, mine explosions or any mine accident; to administer oaths and to require production of any books, papers, records or other documents relevant or material to any hearing, investigation or examination of any mine permitted by this chapter. . . .

W. VA. CODE § 22A-1-4(b)(9). This section creates two *separate* powers/duties: (1) subpoena witnesses to hearings, and (2) administer oaths and require production of things to any hearing, investigation or examination of any mine.

In commanding Mr. Stover's presence on November 30, 2010, however, WVOMHS&T inappropriately grafted half of power (1) onto half of power (2) to create a new power, one that the Legislature never granted: the power to command the presence of a witness at an investigation. As is oft stated, this an agency cannot do: "Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication." Syl. pt. 3, *Mountaineer Disposal Serv., Inc. v. Dyer*, 156 W. Va. 766, 197 S.E.2d 111 (1973). *See also State Human Rights Comm'n v. Pauley*, 158 W. Va. 495, 497-98, 212 S.E.2d 77, 78 (1975) ("[A]n administrative agency . . . can exert only such powers as those granted by the Legislature and that if such agency exceeds its statutory authority, its action may be nullified by a court.").

Because this unlawful subpoena, commanding Mr. Stover to appear on November 30, 2010, under threat of punishment for disobedience, was the first domino in the chain that caused Mr. Stover to give all of the statements that form the entire basis for the government's efforts to imprison him for many years under Counts One and Two of the superseding indictment, those counts must be dismissed.

**B.** **MSHA's use of WVOMHS&T as a monkey's paw to issue subpoenas that MSHA itself cannot issue is an unlawful attempt to evade clear limits on MSHA's own subpoena power.**

Like WVOMHS&T, MSHA also cannot lawfully compel the appearance of a witness to anything other than a public hearing:

> For the purpose of making any investigation of any accident or other occurrence relating to health or safety in a coal or other mine, the Secretary may, after notice, **hold public hearings**, and may sign and issue subpoenas for the attendance and testimony of witnesses and the production of relevant papers, books, and documents, and administer oaths.

30 U.S.C. § 813(b) (emphasis added). *See United States v. Blue Diamond Coal Co.*, 667 F.2d 510, 519 n.10 (6th Cir. 1981) ("Although the Secretary is given the power to subpoena documents to investigate an accident, this power has been explicitly limited to investigations in connection with public hearings. *United States v. Consolidation Coal Co.*, 560 F.2d 214, 219 n.10 (6th Cir. 1977), *vacated and remanded*, 436 U.S. 942 (1978), *judgment reinstated*, 579 F.2d 1011 (6th Cir. 1978), *cert. denied*, 439 U.S. 1069 (1979).") (parallel citations omitted), *cert. denied*, 456 U.S. 1007 (1982); *Consolidation Coal*, 560 F.2d at 219 n.10 ("The Secretary's subpoena power under 30 U.S.C. § 813(d) is limited to compelling the production of records and witnesses *at public hearings*.") (emphasis added); *cf. Soc'y of Prof'l Journalists v. Sec'y of Labor*, 832 F.2d 1180, 1181 n.1 (10th Cir. 1987) ("In the instant case, MSHA takes the position

that it was not acting pursuant to 30 U.S.C. § 813(b), which statute provides for 'public hearings' with the power of subpoena.").

MSHA recognizes this limitation on its subpoena power. *Compare* MSHA's *Accident/Illness Investigation Procedures*, Handbook PH00-I-5, at Ch. 3, § VI.H.2 at 25 (stating that at interviews lawfully conducted not at a public hearing, and thus not pursuant to a subpoena, "[w]itness interviews are completely voluntary, and a witness may refuse to answer any question or may terminate the interview at any time"), *with id.* § VI.J. at 31 (stating that at interviews lawfully conducted at a public hearing, "[w]itnesses may appear voluntarily but they may also be compelled by subpoena to appear to answer questions and/or to produce records or other documents in their possession").

Furthermore, notwithstanding that WVOMHS&T has played some nominal role in the investigation of the UBB disaster, it is clear that MSHA has assumed the primary, lead role in that investigation all along, calling the shots on who to subpoena where and when. It is undisputed that the November 30, 2010, interrogation was held at MSHA's offices, and the interrogation was conducted primarily by MSHA investigators. Joseph Main, MSHA's Director conducted a press conference August 12, 2010, to discuss the subpoenas. Jim Workman, *MSHA: No results yet in UBB mine blast probe: Official vows to keep looking for answers*, THE REGISTER-HERALD, Beckley, W. Va., Aug. 12, 2010. Main stated, "***We're*** now issuing subpoenas on a routine basis with regard to witnesses that are requested to come in. We anticipate this to be a pretty steady process from here until the conclusion." *Id.* (emphasis added) (quotations omitted). Kevin Stricklin, MSHA's Coal Administrator, said, "We made the decision that we're going to subpoena everybody . . . ." *Id.* (quotations omitted). "We want them all in here and we want to interview all of them." *Id.* (quotations omitted).

As Main, Stricklin, and others have made clear, this is an MSHA show, with MSHA co-opting the state agency's subpoena power in a naked effort to evade its own clear statutory limitations—limitations that MSHA plainly does not like, as Main's testimony before a Congressional committee shows:

WOOLSEY    So can you talk a little bit more about subpoena power and why is that necessary?

MAIN    Well, let's just use a current case in West Virginia. *We have a state agency that is — that has subpoena power that is using that power to subpoena witnesses where we have an accident investigation going on. We have to go to a public hearing before we can ever have that kind of a — of a — of a power.*

***Information that we're able to get through the use of that state subpoena is something we don't have.*** *And I think it's — a reasonable person would look at it from the standpoint of why doesn't the agency have it.* ***And its lack thereof — is that really impeding the agency's ability to get the job done? And I think the answer to the latter part of that question is, yes, if the state wasn't there in this particular case.***

*House Committee On Education And Labor, Subcommittee On Workforce Protections* (Mar. 3, 2011) (emphasis added).

So in order to evade its own clear statutory limitations, MSHA has recruited the WVOMHS&T as its monkey's paw to achieve what it cannot. This is not allowed. *See, e.g.*, *United States v. Aero Mayflower Transit Co., Inc.*, 831 F.2d 1142, 1146 (D.C. Cir. 1987) (approving of interagency subpoena "lending" but only because the borrower "clearly did not operate to circumvent statutory or other limitations on [its] investigative powers"); *Gaffney v. Hamilton Secs. Group, Inc.*, No. 99-5046, 1999 WL 615098, at *1 (D.C. Cir. July 2, 1999) ("The use of subpoena power to obtain information for another agency component which does not have such power would clearly be improper.") (quotations and citation omitted); *United States v. Educ. Dev. Network Corp.*, 884 F.2d 737, 743 n.11 (3d Cir. 1989) (approving interagency use of

subpoena only because "[t]here is nothing in this record to show that the agency investigation itself was improper or used as a subterfuge by the USAO once it was unable to obtain the subpoenas from a grand jury"), *cert. denied*, 494 U.S. 1078 (1990).

Courts should reject an agency's pretextual end runs around its statutory limitations. *See, e.g., United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958) (declaring that, if the government had used the grand jury subpoena process to gather evidence for its civil antitrust investigation, "it would have been flouting the policy of the law" because the Sherman Act requires that depositions taken under government civil process in an antitrust case "shall be open to the public.").

## II. CONCLUSION

Accordingly, Defendant requests the Court to **GRANT** his motion and **ORDER** that his statements given on November 30, 2010, and January 21, 2011, and anything flowing from or discovered as a result of such statements be excluded from the trial of this matter.

**HUGHIE ELBERT STOVER,**
By Counsel

**STEPTOE & JOHNSON PLLC**
*Of Counsel*

/s/ Robert L. Bailey
William D. Wilmoth, Esq. (W. Va. Bar No. 4075)
William J. O'Brien, Esq. (W. Va. Bar No. 10549)
Robert L. Bailey, Esq. (W. Va. Bar No. 8902)
1233 Main Street Suite 3000
P. O. Box 751
Wheeling, WV 26003-0751
Telephone: (304) 233-0000
Facsimile: (304) 233-0014
*Counsel for Defendant*

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Beckley

**UNITED STATES OF AMERICA**

*v.*  CRIMINAL NO. 5:11-CR-00038
 **Judge Berger**

**HUGHIE ELBERT STOVER**

### CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June 2011, I have electronically filed "*Defendant's Motion* In Limine *to Exclude Defendant's Statements*" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

>R. Booth Goodwin, II
>Blaire L. Malkin
>Steven R. Ruby
>United States Attorney
>Southern District of West Virginia
>300 Virginia Street, East, Room 4000
>Charleston, West Virginia  25301

　　　　　　　　　　　　　　　　　　　　/s/ Robert L. Bailey