IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**UNITED STATES OF AMERICA**

**v.**                                          **CRIMINAL NO. 5:11-00038**

**HUGHIE ELBERT STOVER**

**RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION TO SUPPRESS
AND MOTION IN LIMINE TO EXCLUDE DEFENDANT'S STATEMENTS**

Comes now the United States of America by, Blaire L. Malkin, Assistant United States Attorney for the Southern District of West Virginia, and hereby responds to defendant's Motion to Suppress [Docket 34] and his Motion in Limine to Exclude Defendant's Statements [Docket 35]. Both motions should be denied. Because the defendant was never in custody, <u>Miranda</u> warnings were not required and his statements should not be suppressed on that basis. Additionally, the defendant's Motion in Limine lacks merit because the administrative subpoena issued to defendant was valid under state law. Moreover, the exclusion of defendant's statement from this proceeding is not the proper remedy for curing any state-law defect with regard to the subpoena.

**FACTS**

On April 5, 2010, an explosion occurred at the Upper Big Branch Mine ("UBB"), which was operated by Massey Energy Company ("Massey"). At the time of the explosion, defendant was employed as the head of security at UBB, among other Massey operations.

After the explosion, the Department of Justice launched an investigation into potential criminal charges. Several other entities launched investigations seeking to determine the cause of the explosion, including the federal Mine Safety and Health Administration ("MSHA"), the West Virginia Office of Miner's Health Safety & Training ("OMHST"), and an independent investigative team appointed by the governor of West Virginia. As part of their investigation, these other entities conducted joint depositions of individuals who worked at UBB.

On November 20, 2010, OMHST issued defendant a subpoena to appear for a deposition at the National Mine Health & Safety Academy in Beaver, West Virginia. On November 30, 2010, defendant appeared for a deposition pursuant to the subpoena. He was accompanied by counsel, who was present during his deposition along with counsel for Massey. There were no law enforcement officers who possessed the official power of arrest present at the deposition. The hearing was led by a state assistant attorney general, Barry Koerber, who is assigned to OMHST. Defendant was asked questions by Mr. Koerber and by another representative of OMHST, as well as by representatives of MSHA, the U.S. Department of Labor, and the head of the Governor's independent investigation team. Mr. Koerber told defendant that if for any reason he needed to take a break, he should let the questioners know and they would do so. Finally, Mr. Koerber explained to defendant that if the

investigators wanted to re-interview him, they would notify him in the future, most likely by serving him with another subpoena.

Nearly two months later, on January 21, 2011, defendant was contacted by FBI Agent James F. Lafferty, II, who asked defendant if they could meet for an interview in connection with the DOJ investigation. Defendant, who had spoken with Agent Lafferty before and had previously been interviewed by the FBI, agreed and asked Agent Lafferty to come to the UBB site in Montcoal, West Virginia. The interview took place in the parking lot outside of Massey's offices at UBB. Also present during the interview was an MSHA special investigator, Mike Belcher. Neither Agent Lafferty nor Mr. Belcher were present for defendant's November 2010 deposition and they did not ask defendant any specific questions about his deposition testimony. During the interview that took place on January 21, 2011, defendant was never placed under arrest, and neither Agent Lafferty nor Mr. Belcher displayed any force or told defendant that he was not free to leave.

## DISCUSSION

### A. DEFENDANT WAS NOT ENTITLED TO MIRANDA WARNINGS BECAUSE HE WAS NEVER IN CUSTODY

The warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), need only be given when a suspect is subject to "custodial police interrogation." Id. at 439; United States v. Martindale, 790 F.2d 1129, 1133 (4th Cir. 1986) ("Miranda is only applicable in cases where the defendant is in custody."). A suspect is in

custody when, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (internal quotation marks omitted). The appropriate inquiry is an objective one, focusing on whether a reasonable person in the suspect's position would have felt free to terminate the interrogation and leave. Thompson v. Keohane, 516 U.S. 99, 112 (1995). As a general matter, however, "[a]bsent police-imposed restraint, there is no custody." United States v. Jamison, 509 F.3d 623, 633 (4th Cir. 2007).

Applying these principles here, defendant was in no way subject to custodial interrogation with regard to either statement. Defendant maintains he was in custody during his November 2010 deposition because he appeared pursuant to a subpoena issued by OMHST. The mere fact that a person's attendance has been compelled by subpoena, however, does not mean that the person is in custody for purposes of Miranda. See United States v. Mandujano, 425 U.S. 564, 579 (1976) (ruling that witnesses subpoenaed to grand jury are not entitled to Miranda warnings); Iverson v. North Dakota, 480 F.2d 414, 424 (8th Cir. 1973) (holding that testimony compelled by subpoena "does not in itself constitute such compulsion to incriminate oneself to the extent the safeguards in Miranda were intended to prevent"). That is because the circumstances of subpoena-compelled testimony do not remotely resemble those that

4

prompted Miranda's protective warnings — "incommunicado interrogation of individuals in a police-dominated atmosphere." 384 U.S. at 445.

Moreover, nothing else about the circumstances of defendant's November 2010 deposition indicate that he was in custody. The deposition took place at a government training center, not at law enforcement offices. Present with the defendant during his statement was his attorney, along with counsel for Massey. Defendant's freedom of action was not curtailed to a degree that would be akin to formal arrest, as he was never told that he was not free to leave. In fact, as defendant concedes, he was told that he could take a break from questioning whenever he needed to. And there was no sort of restraint on defendant's actions or conduct imposed by the police, because no law enforcement officers with the official power of arrest were present.

Nor was defendant in custody during his interview with FBI Agent Lafferty on January 21, 2011. Defendant attempts to link his FBI interview with his earlier deposition testimony, arguing that a reasonable person would consider the FBI interview a "mere continuation" of the deposition. As explained above, however, defendant was not in custody at the time of his deposition. Moreover, defendant's FBI interview took place two months after his deposition, neither Agent Lafferty nor Mr. Belcher were present for the deposition, and the OMHST representative who conducted the

deposition explained that if defendant needed to be re-interviewed then he would be issued another subpoena.

In addition, the context of defendant's FBI interview demonstrates that he was not in custody. Defendant was not placed under formal arrest or told that he could not cease the interview and leave. Instead, Agent Lafferty requested to speak with defendant, as he had done previously, and defendant voluntarily complied. At defendant's suggestion, the interview took place in the parking lot of defendant's place of business, in surroundings which would have been comfortable and familiar to defendant. See Martindale, 790 F.2d at 1133 (ruling that defendant was not in custody because, inter alia, the interview occurred in defendant's own office).[1]

In short, because none of the hallmarks of a custodial police interrogation were present at the time of either of defendant's statements, defendant was not in custody and not entitled to

---

[1] Defendant also argues that he was in custody because, at the time of his January 2011 FBI interview, he had become a "target" in the Government's investigation due to the fact that the Government had learned of his participation in the destruction of documents. This contention lacks factual and legal merit. Factually, defendant never contends that Agent Lafferty or Mr. Belcher had any knowledge of the document destruction or that they asked him any questions about that issue. More importantly, the relevant legal standard concerns whether defendant was in custody from an objective standpoint, not the government's subjective state of mind. See United States v. Parker, 262 F.3d 415, 419 (4th Cir. 2001) ("Custody determinations do not depend on the subjective views of either the interrogating law enforcement officers or of the person being questioned, but depend instead [on] the objective circumstances of the interrogation.").

<u>Miranda</u> warnings. As a result, his Motion to Suppress those statements pursuant to <u>Miranda</u> should be denied.

**B. THE STATE SUBPOENA ISSUED TO DEFENDANT WAS VALID AND THERE IS NO BASIS FOR EXCLUDING DEFENDANT'S STATEMENTS FROM THIS PROCEEDING**

Defendant has also filed a Motion in Limine seeking to exclude his statements on the grounds that OMHST lacked statutory authority under West Virginia law to subpoena him for his November 2010 deposition. As with his Motion to Suppress, defendant argues that the statements made during his January 2011 FBI interview stemmed from this supposedly improper subpoena. Finally, defendant contends, without any supporting authority, that he is entitled to have both of his statements excluded from the evidence in this case as a remedy for OMHST having exceeded its statutory authority. Because there is no legal support for defendant's arguments, his Motion in Limine should be denied.

Defendant's entire argument rests on a narrow — and mistaken — interpretation of the relevant West Virginia statute. OMHST's implementing statute confers on its director the "power and duty" to:

> Call or subpoena witnesses, for the purpose of conducting hearings into mine fires, mine explosions, or any mine accident; to administer oaths and to require production of any books, papers, records or other documents relevant or material to any hearing, investigation or examination of any mine permitted by this chapter.

W. Va. Code § 22A-1-4(b)(9). Despite this plain statutory language, defendant attempts to draw a distinction between the power to subpoena witnesses to <u>hearings</u> and the power to subpoena witnesses to <u>investigations</u>. The statute does not draw that distinction, however, and there is no statutory definition or case law to support that interpretation. Instead, the statute simply confers on OMHST the power to subpoena witnesses "for the purpose of conducting hearings into ... mine explosions," and, quite naturally, also empowers OMHST to "administer oaths" to those witnesses it subpoenas. As such, the subpoena issued by OMHST to defendant was valid. He was subpoenaed for the purpose of conducting a hearing into a mine explosion, and, as plainly authorized by the statute, he was administered an oath by OMHST before giving his testimony.[2]

Moreover, even if the OMHST subpoena issued to defendant were found to be defective under state law, the proper remedy would have been for defendant to have moved to quash the subpoena in the appropriate state circuit court. See <u>W. Va. Human Rights Comm'n v. Moore</u>, 411 S.E. 2d 702, 704 (W. Va. 1991). Defendant cannot

---

[2] Defendant also attacks the validity of the OMHST subpoena by arguing that MSHA unlawfully evaded the limits on its own subpoena power and co-opted OMHST's subpoena power. This argument, however, is belied by the undisputed facts of this case. Defendant was issued a subpoena by OMHST and appeared for a deposition led by one of its representatives. Defendant has no legal support for his view that OMHST's decision to invite MSHA to participate in his deposition somehow invalidated an otherwise legitimate subpoena.

identify any precedent for excluding from a criminal trial a statement made pursuant to a subpoena simply because the subpoena was defective under the authorizing statute.  Instead, defendant relies on administrative law decisions, which in no way address the admissibility of evidence in criminal proceedings.  See, e.g., United States v. Aero Mayflower Transit Co., 831 F.2d 1142, 1146 (D.C. Cir. 1987) (explaining that the proper forum for challenging a federal administrative subpoena is in subpoena enforcement proceedings).

Furthermore, defendant's position is directly contrary to the principles that the exclusion of evidence from a criminal case is an extraordinary remedy, aimed at deterring constitutional violations. See Sanchez-Llamas v. Oregon, 548 U.S. 331, 348 (2006). As explained above, there was no constitutional violation in this case.  Rather, defendant's argument for the exclusion of his statements is premised entirely on his reading of MSH&T's implementing statute.  Yet, "there is no exclusionary rule generally applicable to statutory violations." United States v. Clenney, 631 F.3d 658, 667 (4th Cir. 2011) (internal quotation marks omitted).  More importantly, even if West Virginia law provided for the exclusion of evidence obtained via an invalid administrative subpoena (which it does not), it would have no effect on whether that evidence would be admissible in federal court.  Id. ("Federal not state law governs the admissibility of

evidence obtained by state officers but ultimately used in a federal prosecution." (internal quotation marks omitted)).

In sum, the OMHST subpoena issued to defendant in November 2010 was valid under state law. Regardless, the remedy for any defect under state law with regard to that subpoena would lie in state court proceedings, not in the exclusion from trial of defendant's statement made pursuant to the subpoena. In addition, because there is no basis for excluding defendant's November 2010 statement, there is also no basis for excluding his statement to the FBI in January 2011. That is especially true because, as explained above, there is no meaningful connection between the two statements. Accordingly, defendant's Motion in Limine to exclude his statements should be denied.

## **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court deny defendant's Motion to Suppress [Docket 34] and his Motion in Limine to Exclude Defendant's Statements [Docket 35].

Respectfully submitted,

R. BOOTH GOODWIN II
United States Attorney

s/Blaire L. Malkin
Blaire L. Malkin
WV Bar Number: 10671
Assistant United States Attorney
United States Attorney's Office
300 Virginia Street, E., Suite 4000
Charleston, West Virginia 25301
Telephone: (304) 345-2200
Email: blaire.malkin@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing "RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION TO SUPPRESS AND MOTION IN LIMINE TO EXCLUDE DEFENDANT'S STATEMENTS," has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing on this 30th day of June, 2011, to:

>William David Wilmoth, Esquire
>Steptoe & Johnson PLLC
>1233 Main Street, Suite 3000
>Wheeling, WV  26003-0751

>s/Blaire L. Malkin
>Blaire L. Malkin
>WV Bar Number: 10671
>Assistant United States Attorney
>United States Attorney's Office
>300 Virginia Street, E., Suite 4000
>Charleston, West Virginia 25301
>Telephone: (304) 345-2200
>Fax: (304) 347-5104
>Email: blaire.malkin@usdoj.gov