IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 5:11-00038

HUGHIE ELBERT STOVER

THIRD SUPPLEMENTAL RESPONSE OF THE UNITED STATES OF
AMERICA TO DEFENDANT'S STANDARD DISCOVERY REQUESTS,
AND REQUEST OF THE UNITED STATES FOR RECIPROCAL DISCOVERY

Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, Rule 16.1(a) of the Local Rules of Criminal Procedure, and the Arraignment Order and Standard Discovery Request entered by the Court in this case on March 15, 2011, the United States of America, by counsel, herewith supplements its responses to the standard discovery requests:

This is the third supplement to discovery.  Previous supplemental discovery was sent to counsel by letter on June 21, 2011, and May 18, 2011.

Specifically, the United States responds to request G and makes other disclosures as required.

**Request G:  Give to the defendant a written summary of any testimony the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under Federal Rules of Criminal Procedure 16(b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use**

**under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. [Fed. R. Crim. P. 16(a)(1)(G)]**

**RESPONSE:**

A.    The United States may call Melinda C. Cash to testify at trial.  Ms. Cash is employed by the Federal Bureau of Investigation as a Computer Analysis Response Team Senior Forensic Examiner.

Summary of Witness's Testimony

The United States anticipates that if called as a witness, Ms. Cash would testify that defendant received email messages from Massey Energy Company officials directing him not to dispose of any documents relating to the Upper Big Branch mine.  Ms. Cash would testify that defendant opened certain of these email messages as well as the attachments thereto.  Ms. Cash may also provide additional testimony necessary to explain these opinions or the process by which they were reached.

Summary of Bases and Reasons for Testimony

Ms. Cash's opinions are based on her examination of computer files containing email messages and attachments received by defendant, as well as certain related computer files and computer registries.  Ms. Cash also used software applications designed to

forensically examine computers, including AccessData's Forensic Toolkit, to examine the properties of email messages and attachments received by defendant. Ms. Cash has been trained and certified in the use of Forensic Toolkit and other software used for forensic examination of computers. Ms. Cash reached her opinions based on the information contained in these files, as well as information available through the use of the computer forensics software.

Witness's Qualifications

Ms. Cash's curriculum vitae is attached.

B. The United States may also call Kevin Stricklin to testify at trial. Mr. Stricklin is the Mine Safety and Health Administration's (MSHA) Administrator for Coal Mine Safety and Health. Mr. Stricklin's testimony will be based on his own factual knowledge, and the United States, in making this disclosure, does not take the position that Mr. Stricklin's testimony will be offered under Rules 702, 703, or 705 of the Federal Rules of Evidence. Rather, the United States is disclosing Mr. Stricklin's testimony solely out of an abundance of caution.

Summary of Witness's Anticipated Testimony

The United States anticipates that if called as a witness, Mr. Stricklin would testify that advance notice of mine inspections,

including announcements that inspectors are entering mine property, creates health and safety risks.  Mr. Stricklin would also testify that the Mine Act's prohibition of advance notice of mine inspections is an important provision for protecting health and safety in coal mines.  Mr. Stricklin would also testify that in an investigation of a mine accident, it is important to determine whether advance notice of mine inspections was given at the mine in question and what their effect was on safety at the mine.  Mr. Stricklin would further testify that in the investigation of the explosion at the Upper Big Branch mine, it is important to determine whether advance notice of mine inspections was given and how any such advance notice affected safety at the mine.  Mr. Stricklin may further testify that the Upper Big Branch mine was subject to the provisions of the Mine Act and to inspections and regulation by MSHA.  Mr. Stricklin may also provide additional testimony necessary to explain these opinions or the process by which they were reached.

Summary of Bases and Reasons for Testimony

Mr. Stricklin's anticipated testimony would be based on his experience and knowledge as an official of the Mine Safety and Health Administration, as well as his experience and knowledge as a coal miner.  This includes experience and knowledge in the areas of mine health and safety risks, and in the effect of advance

notice of mine inspections on mine safety and health. Mr. Stricklin's anticipated testimony would also be based on his experience in investigations of mine accidents and his involvement in the investigation of the Upper Big Branch explosion.

Witness's Qualifications

Mr. Stricklin has worked in the coal mining industry since 1977. During the summer months of his Mining Engineering studies at the University of Pittsburgh, he worked as a general underground inside laborer at the United States Steel Maple Creek Mine located near New Eagle, Pennsylvania. His duties included assisting in roof bolting operations, hanging brattice to assist ventilation, building ventilation controls, installing additional roof supports, installing track, and rock dusting.

During Mr. Stricklin's senior year at the University of Pittsburgh, he was selected to work part time for MSHA's Technical Support Noise Division, where he calibrated dosimeters for inspectors from both Coal and Metal/Non Metal. Upon graduation, Mr. Stricklin accepted a position with MSHA's Technical Support Ventilation Division in May 1980. He spent ten years in the Ventilation Division and was involved in every major mine disaster that occurred during that time, serving various roles on accident response and investigation teams. As a member of the Ventilation Division, Mr. Stricklin also provided technical services to MSHA

district offices, including full mine ventilation surveys, face
ventilation studies, future projection simulations, and training
with handheld gas detection equipment.

In February 1990, Mr. Stricklin was selected for MSHA's
supervisory training program.  In 1991, after completing the
program, Mr. Stricklin was selected as the health supervisor in
MSHA's District 2, located in western Pennsylvania.  He remained in
that position for three years, focusing on hazards associated with
coal mine dust and pneumoconiosis.

In 1994, Mr. Stricklin was promoted to Assistant District
Manager in charge of Technical Services in District 2.  In 1999, he
acted as District Manager in District 2 for approximately one year
due to the illness of the District Manager.  Around the same period
of time, Mr. Stricklin also served a detail as Acting Chief of the
Division of Health in MSHA's headquarters office in Arlington,
Virginia.

In 2001, Mr. Stricklin became Assistant District Manager in
charge of Enforcement in District 2.  After two years in that role,
he resumed his former position as Assistant District Manager in
charge of Technical Services.  During this time, Mr. Stricklin was
a member of the Jim Walter Resources No. 5 mine explosion
investigation team, was one of the senior officials on site during
the rescue of the Quecreek miners, and acted as a special assistant
to MSHA's Administrator for Coal Mine Safety and Health.

6

In 2003, Mr. Stricklin became District Manager in MSHA District 3, headquartered in Morgantown, West Virginia. In that position, he was responsible for the inspection and plan approvals of all coal mines in Maryland, Ohio, and northern West Virginia.

In 2006, Mr. Stricklin became MSHA's Acting Administrator for Coal Mine Safety and Health, and he assumed that position permanently in April 2007. As Administrator, Mr. Stricklin is responsible for the inspection of the United States' 600 underground coal mines and 750 surface coal mines, which employ a total of 125,000 miners. Around 1215 employees work under Mr. Stricklin's supervision. Mr. Stricklin has been closely involved with investigations of the recent disasters at Sago, Aracoma, Darby, Crandall Canyon, and Upper Big Branch.

**The United States also discloses the following information:**

When Mr. Stover's deposition was taken on November 30, 2010, the audio on the court reporter's machine either did not save or did not function properly, and no audio could be retrieved from the machine following the deposition. The court reporter's back up digital recorder did work and she was able to listen to the entirety of Mr. Stover's testimony on that device when she prepared the transcript. As part of her normal practice and procedure the recording on the digital recorder was taped over by later audio

7

recordings.    Her  digital  recorder  only  holds  a  few  weeks  of recordings at a time.

When  Mr.  Stover's  hard  drive  was  first  imaged  by  FTI Consulting  (FTI),  Massey's  contractor  for  handling  electronically stored  information  relating  to  UBB,  on  April  22,  2010,  the resulting  image  did  not  arrive  at  FTI  with  the  images  of  the  other hard  drives.    What  happened  to  the  initial  image  was  never determined.  Mr. Stover's email inbox and other documents were then recovered by FTI in May 2010 using a backup tape.

The  United  States  has  sent  witness  immunity  letters  under separate cover.

The  United  States  has  sent  disclosures  regarding  Andrew Gillispie,  Michael  Belcher,  and  Tim  Watkins  under  separate  cover.

Any  discovery  provided  that  is  not  mandated  by  Court  order, the  Federal  Rules  of  Criminal  Procedure,  federal  statute  or  federal case  law,  is  provided  voluntarily  as  a  matter  of  discretion  solely to  expedite  and  facilitate  litigation  of  this  case.

## REQUEST OF THE UNITED STATES FOR RECIPROCAL DISCOVERY

Pursuant to Rules 16.1(b) and 16.1(d) of the Local Rules of Criminal Procedure, the United States of America requests that defendant provide all applicable reciprocal discovery within 14 days of the service of this response and the provision of materials requested by defendant in the Standard Discovery Request.

Respectfully submitted,

R. BOOTH GOODWIN II
United States Attorney


s/Blaire L. Malkin
Blaire L. Malkin
WV Bar Number: 10671
Assistant United States Attorney
United States Attorney's Office
300 Virginia Street, E., Suite 4000
Charleston, West Virginia 25301
Telephone: (304) 345-2200
Fax: (304) 347-5104
Email: blaire.malkin@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that service of the foregoing "THIRD SUPPLEMENTAL RESPONSE OF THE UNITED STATES OF AMERICA TO DEFENDANT'S STANDARD DISCOVERY REQUESTS, AND REQUEST OF THE UNITED STATES FOR RECIPROCAL DISCOVERY," has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing on this 11th day of July, 2011, to:

William David Wilmoth, Esquire
Steptoe & Johnson PLLC
1233 Main Street, Suite 3000
wheeling, WV  26003-0751


s/Blaire L. Malkin
Blaire L. Malkin
WV Bar Number: 10671
Assistant United States Attorney
United States Attorney's Office
300 Virginia Street, E., Suite 4000
Charleston, West Virginia 25301
Telephone: (304) 345-2200
Fax: (304) 347-5104
Email: blaire.malkin@usdoj.gov