IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                               CRIMINAL ACTION NO. 5:11-cr-00038

HUGHIE ELBERT STOVER,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the United States' Motion *in Limine* to Exclude Evidence of Stanton Survey Results (Document 28), the United States' Motion *in Limine* Regarding Prior Convictions and Bad Acts of Witnesses (Document 29), Defendant's Motion *in Limine* to Exclude Evidence, Testimony, or Reference to the April 5, 2010 Tragedy at the Upper Big Branch Mine (UBB) (Document 32), Defendant's Motion to Suppress Statements Made at November 30, 2010 and January 21, 2011 Interrogations (Document 34), and Defendant's Motion *in Limine* to Exclude Defendant's Statements (Document 35) together with all relevant written submissions.

**I.    DISCUSSION**

*A.  United States' Motion in Limine to Exclude Evidence of Stanton Survey Results*

The Government expects to call two witnesses, Charles Lilly and Tommy Wingo, who worked as security officers at UBB. (Document 28 at 1.) In the hiring process, Mr. Lilly and Mr. Wingo filled out the Stanton Survey, which assesses employee integrity through multiple choice

questions. *Id*. The Government moves this Court to preclude Defendant from using any evidence of these guards' survey answers or results to impeach their credibility. *Id*. at 3. To date, no response has been filed by Defendant.

The Court is not aware of the specific nature of the Stanton Survey, but as described by the Government, the test is similar to a polygraph test because it is used to measure the honesty and integrity of the respondent by some objective means. *Id*. at 2. It is well established that "polygraph evidence is never admissible to impeach the credibility of a witness." *United States v. Sanchez*, 118 F.3d 192, 197 (4th Cir. 1997). The Court finds there is no evidence that the Stanton Survey would be relevant to the credibility of the witnesses, nor is there any evidence that the results of the Stanton Survey are reliable to assess the witnesses' character for truthfulness or untruthfulness. Accordingly, the Court grants the Government's motion *in limine* to exclude evidence of the witnesses' Stanton Survey.

### B. *United States' Motion in Limine Regarding Prior Convictions and Bad Acts of Witnesses*

The Government expects to call Kevin White, a supervisor of the contract guards at Performance Coal, to testify at trial. (Document 29 at 1.) According to the Government, it is aware that over ten years ago Mr. White was charged with domestic battery. *Id*. This charge was subsequently dismissed. *Id*. Further, according to the Government, Mr. White was convicted of shoplifting fifteen (15) years ago. *Id*. The Government moves to preclude, as improper under Rule 609, questioning on cross-examination regarding Mr. White's prior misdemeanor conviction and prior charge of domestic battery. *Id*. at 4. To date, no response has been filed by Defendant.

Rule 609 of the Federal Rules of Evidence allows for the impeachment of a witness based on two types of prior convictions.  First, a witness may be impeached, subject to Rule 403, for any conviction of a crime that was punishable in excess of one year under the law the witness was convicted. Fed. R. Evid. 609(a)(1).  Second, a witness may be impeached for any conviction "regardless of the punishment, if it can readily be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." Fed. R. Evid. 609(a)(2).  However, evidence of a witness's prior conviction "is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release . . . imposed for that conviction . . . unless the court determines . . . the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).  Moreover, evidence of such a conviction is not admissible unless the proponent provides the adverse party sufficient written notice of intent to use such evidence to provide the adverse party the chance to contest its use. *Id*.

Mr. White was not convicted of the prior charge of domestic battery. (Document 29 at 1.) The Court finds cross-examination of Mr. White on the charge of domestic battery is, therefore, improper.

Mr. White was convicted of misdemeanor shoplifting more than ten years ago. *Id*. The Court finds cross-examination of Mr. White relative to the misdemeanor shoplifting conviction is improper inasmuch as the conviction was not for a crime punishable by a term of imprisonment in excess of one year. Further, based on the information currently before the Court, the conviction occurred more than ten years ago.   Moreover, the Defendant has not given the United States any indication that he has an intention to use this conviction as would be required by Rule 609(b) of the Federal Rules of Evidence.

In light of the above findings, the Court grants the Government's motion *in limine* to exclude evidence of Mr. White's prior convictions and bad acts.

C.  ***Defendant's Motion in Limine to Exclude Evidence, Testimony, or Reference to the April 5, 2010 Tragedy at UBB***

Defendant moves to exclude evidence, testimony, or reference to the tragic April 5, 2010 explosion which killed twenty-nine (29) miners at UBB. First, Defendant argues that reference to UBB should not be admissible because it is not relevant. (Document 32 at 2-3.) Second, Defendant argues, if evidence of the explosion at UBB is relevant, that evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. (Document 32 at 4-6.)

Evidence is relevant, and, therefore, admissible, if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401, 402. Nevertheless, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Evidence is unfairly prejudicial under Rule 403 only if the evidence would have an undue tendency to suggest a decision on an improper basis. *United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003). Further, even if the evidence is unfairly prejudicial, a limiting instruction to the jury will generally prevent any danger. *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996).

For many reasons, evidence of the explosion at UBB is relevant in this case. First, with respect to Counts One and Two, evidence of the explosion at UBB is clearly relevant because the Government must prove the materiality of the alleged false statements. Specifically, the Government must show that Defendant's statements had a tendency to influence the respective investigations. Second, with respect to Count Three, Defendant stands charged with obstructing

justice in violation of 18 U.S.C. § 1519. An element of this offense is the intent to impede, obstruct, or influence an investigation. This requires evidence of an investigation and also evidence of intent to obstruct that investigation. Finally, evidence of the explosion at UBB is clearly relevant to the narrative framework of these charges. When making a decision, the jury would be puzzled by the gaps in the story if evidence of the explosion at UBB were excluded. *See Old Chief v. United States*, 519 U.S. 172, 189 (1997). Ultimately, if the Court were to exclude evidence of the explosion at UBB, this would unfairly distort the case. *Id.* Accordingly, the Court finds the evidence of the explosion at UBB is relevant.

Further, the probative value of the evidence of the explosion at UBB is not substantially outweighed by the danger for unfair prejudice. As discussed *supra*, the evidence of the explosion at UBB is necessary to establish certain elements of the crimes alleged. Thus, this evidence is extremely probative. Further, Defendant fears that he will be unfairly prejudiced by evidence of the UBB disaster. Specifically, "[i]f jurors are allowed to hear evidence of the mine disaster, their very human response may be to punish anyone associated with Performance Coal, even if the evidence does not support a finding that Stover is guilty beyond a reasonable doubt on the charges against him." (Document 32 at 5.) The Court can avoid any unfair prejudice through trial supervision and with limiting instructions to the jury. Accordingly, the Court finds the probative value of the evidence, of the explosion at UBB, is not substantially outweighed by the risk of unfair prejudice to the Defendant. The Court does, however, warn the Government that unnecessary, graphic and irrelevant details of the UBB explosion will not be admitted into evidence.

In light of the above findings, the Court denies Defendant's motion *in limine* to exclude evidence, testimony, or reference to the April 5, 2010 tragedy at UBB.

### D. Defendant's Motion to Suppress Statements Made at November 30, 2010 and January 21, 2011 Interrogations

Defendant moves to suppress statements made on November 30, 2010, and January 21, 2011, on the grounds that Defendant's *Miranda* rights were violated. Defendant asserts on both occasions he was subjected to custodial interrogations by federal law enforcement. The relevant facts necessary for a determination of this motion are not disputed by the parties. The warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), need only be given when a suspect is subject to "custodial police interrogation." *Id*. at 439. This requires a Court to decide if a defendant was in custody and whether a defendant was subject to interrogation. First, a suspect is in custody if under the totality of the circumstances, "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (internal quotation marks omitted). The custody test is an objective test. Specifically, the inquiry focuses on whether "a reasonable person would feel free to decline officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S 429, 436 (1991). Second, a suspect is subjected to custodial interrogation "whenever a person is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)

In the instant case, the Defendant was clearly subjected to express questioning which amounts to an interrogation under *Innis* on both November 30, 2011, and January 21, 2011. Thus, the Court need only focus on whether these interrogations were custodial.

On November 30, 2011, Defendant appeared, in response to a subpoena, before an investigation panel made up of officials from the United States Department of Labor, the federal Mine Safety and Health Administration ("MSHA"), the West Virginia Office of Miner's Health Safety & Training ("WVOMHST"), and an independent investigative team appointed by

6

Governor Manchin. (Document 34 at 1.) This deposition took place at the National Mine Health & Safety Academy in Beaver, West Virginia. (Document 41 at 2.) Defendant was accompanied by counsel at this deposition. *Id.* Defendant stated at his deposition that "Massey policy prohibits the notification of anyone that inspectors were present on mine property for inspection." (Document 34 at 2.) No law enforcement officers or officials with the power to arrest were at the deposition. (Document 41 at 5.) Further, Defendant's freedom of action was not constrained by any government officials, nor was he physically constrained. *Id.* Finally, Defendant was told he could take a break at any time if he so wished. (Document 34 at 5.)

Defendant argues that he was in custody because any reasonable person being questioned by representatives of four different federal and state government agencies "would believe that he was required to participate and was not free to leave." The Government argues the fact that "a person's attendance has been compelled by subpoena, however, does not mean that the person is in custody for purposes of *Miranda*." (Document 41 at 4.) (citing *United States v. Mandujano*, 425 U.S.564, 579 (1976) (ruling that witnesses subpoenaed to grand jury are not entitled to Miranda warnings); *Iverson v. North Dakota*, 480 F.2d 414, 424 (8th Cir. 1973) (holding that testimony compelled by subpoena "does not in itself constitute such compulsion to incriminate oneself to the extent the safeguards in Miranda were intended to prevent")). Defendant argues this situation is not like being compelled to testify in front of a grand jury. (Document 56 at 2.) Specifically, "unlike an MSHA or FBI interrogation—the grand jury is a core structural component of the federal justice system, mandated by the Constitution." *Id.*

Looking at the totality of the circumstances, several factors weigh against Defendant's argument that he was in custody for the purposes of *Miranda*. First, the meeting did not take place in the interrogation room of a police station, but rather the confines of the National Mine

Health & Safety Academy.  Second, there were no law enforcement officers who possessed the official power of arrest present at Defendant's deposition. (Document 41 at 2.)  Third, Defendant was not physically restrained and was informed he could take breaks if he desired. (Document 34 at 5.)  Fourth, Defendant was represented by counsel at this deposition. (Document 41 at 5.)  Finally, Federal Courts have held this type of agency deposition is not custodial for the purposes of *Miranda*. *E.g*. *United States v. DiStefano*, 129 F.Supp.2d 342, 349 (S.D. N.Y. 2001)( Defendant stock broker was not in "custody," so as to require *Miranda* warnings, during deposition with his Securities and Exchange Commission (SEC), despite his claim that the SEC attorney threatened to have him arrested if he did not show up in compliance with a subpoena).

The Court finds the deposition did not have characteristics of a formal arrest nor were there any restrictions on Defendant's freedom of movement to the extent a reasonable person would feel he was unable to leave.  Accordingly, Defendant's motion to suppress statements made at the November 30, 2010, deposition is denied.

Defendant also moves to suppress the statements made on January 21, 2011, to FBI Agent James F. Lafferty and MSHA special investigator, Mike Belcher. (Document 34 at 6.)  This questioning took place at Defendant's place of work. *Id*. Defendant argues this was a derivative violation of *Miranda* based on the prior November 30, 2010, deposition.  Specifically, "[h]aving already been subjected to a prior custodial interrogation, any similarly situated reasonable person, like Mr. Stover, would not have felt free to walk away from a federal law enforcement officer whose entire purpose was to follow up on statements made pursuant to a subpoena." As discussed *supra*, the prior deposition was not custodial. The January 21, 2011, meeting with Mr. Lafferty and Mr. Belcher was not a custodial interrogation requiring *Miranda* warnings. After being contacted by Mr. Lafferty and Mr. Belcher, Defendant suggested the

8

agents come interview him at his place of work. (Document 41 at 6.) Defendant was not physically constrained nor was his freedom of movement threatened by Mr. Lafferty and Mr. Belcher. *Id*. Defendant argues that Mr. Lafferty and Mr. Belcher should have issued the *Miranda* warnings because he was the "target" of an investigation. (Document 34 at 6.) Defendant's argument is off base. The determination of custody is an objective not subjective test. "Custody determinations do not depend on the subjective views of either the interrogating law enforcement officers or of the person being questioned, but depend instead [on] the objective circumstances of the interrogation." *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001).

The Court finds that a reasonable person in Defendant's situation would not believe that he was unable to leave or terminate the encounter. Further, the Court finds Defendant's meeting with Mr. Lafferty and Mr. Belcher did not have characteristics of a formal or de facto arrest. Accordingly, Defendant's motion to suppress statements made at the January 21, 2011, meeting is denied.

### E. *Defendant's Motion in Limine to Exclude Defendant's Statements*

Defendant argues that the subpoena issued by WVOMHST was improperly issued under W. Va. Code § 22A-1-4. (Document 35) Further, Defendant asserts MSHA used WVOMHST to circumvent its inability to issue a subpoena to Mr. Stover because of MSHA's limitation to do so under 30 U.S.C. § 813(b). *Id*. Defendant moves *in limine* to exclude the statements given on November 30, 2010, and January 21, 2011, and anything flowing from or discovered as a result of such statements based on the alleged invalidity of Defendant's subpoena. *Id*. Again, the necessary facts are not disputed by the parties.

The Court need not decide whether the subpoena violated WVOMHST's authorizing statute because even if the subpoena were invalid, the statements made and evidence derived from them are not legally excluded under the exclusionary rule. "The availability of the suppression remedy for ... statutory, as opposed to constitutional, violations ... turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights." *United States v. Donovan*, 429 U.S. 413, 432 n. 22, (1977). Further, "there is no exclusionary rule generally applicable to statutory violations.*"* *United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011) (internal quotation marks omitted). "Congress has shown that it knows how to create a statutory suppression remedy." *Id*. No such statutory suppression exists in 30 U.S.C. § 813(b). Even if W. Va. Code § 22A-1-4 provided for the exclusion of evidence obtained in violation of the authorizing statute, "[f]ederal not state law governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution." *Id*.

The Court finds Defendant's statements made on November 30, 2010, and January 21, 2011, should not be excluded under the exclusionary rule. Accordingly, Defendant's motion *in limine* to exclude statements given on November 30, 2010, and January 21, 2011, and anything flowing from or discovered as a result of such statements is denied.

## II.   CONCLUSION

In light of the findings and discussion *supra*, the Court hereby **ORDERS** that the United States' Motion *in Limine* to Exclude Evidence of Stanton Survey Results (Document 28) be **GRANTED**, the United States' Motion *in Limine* Regarding Prior Convictions and Bad Acts of Witnesses (Document 29) be **GRANTED**, Defendant's Motion *in Limine* to Exclude Evidence,

Testimony, or Reference to the April 5, 2010, Tragedy at the Upper Big Branch Mine (UBB) (Document 32) be **DENIED**, Defendant's Motion to Suppress Statements Made at November 30, 2010, and January 21, 2011, Interrogations (Document 34) be **DENIED** and Defendant's Motion *in Limine* to Exclude Defendant's Statements (Document 35) be **DENIED**.

    The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the United States Marshal.

        ENTER:    October 18, 2011

*[Signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA