# EXHIBIT B

Westlaw.

662 F.3d 1037
(Cite as: 662 F.3d 1037)

**C**

United States Court of Appeals,
Eighth Circuit.
UNITED STATES of America, Plaintiff–Appellee,
v.
Wanda Faye RICHART, Defendant–Appellant.

No. 10–1977.
Submitted: Jan. 12, 2011.
Filed: Dec. 8, 2011.

**Background:** Defendant was convicted in the United States District Court for the Eastern District of Arkansas, Susan Webber Wright, J., of conspiracy to make a false statement and making a false statement, and received consecutive 60–month sentences on each count. Defendant appealed.

**Holdings:** The Court of Appeals, Melloy, Circuit Judge, held that:
(1) any error in applying role enhancement was harmless;
(2) upward departure for offense committed in order to facilitate or conceal commission of another offense could be applied;
(3) any procedural error in imposing upward departure was harmless;
(4) decision to impose consecutive 60–month sentences was not unreasonable;
(5) defendant's state murder conviction was not an improper or irrelevant factor for district court to consider;
(6) upward variance from advisory guidelines range was not abuse of discretion; and
(7) FBI agent's hearsay testimony at sentencing hearing that defendant had physically and sexually abused two children in her care was sufficiently reliable to support conditions of supervised release requiring defendant to participate in sexual offender treatment and forbidding direct contact with minors.

Affirmed.

Bye, Circuit Judge, filed dissenting opinion.

West Headnotes

**[1] Criminal Law 110 ⬅1156.2**

110 Criminal Law
  110XXIV Review
    110XXIV(N) Discretion of Lower Court
      110k1156.1 Sentencing
        110k1156.2 k. In general. Most Cited Cases
    When reviewing the imposition of sentences, whether inside or outside the Guidelines range, Court of Appeals applies a deferential abuse-of-discretion standard.

**[2] Criminal Law 110 ⬅1134.75**

110 Criminal Law
  110XXIV Review
    110XXIV(L) Scope of Review in General
      110XXIV(L)8 Sentencing
        110k1134.75 k. In general. Most Cited Cases
    In reviewing a defendant's sentence, Court of Appeals first ensures that the district court did not commit significant procedural error; then, absent significant procedural error, it reviews the sentence for substantive reasonableness.

**[3] Sentencing and Punishment 350H ⬅40**

350H Sentencing and Punishment
  350HI Punishment in General
    350HI(C) Factors or Purposes in General
      350Hk40 k. In general. Most Cited Cases

**Sentencing and Punishment 350H ⬅373**

350H Sentencing and Punishment
  350HII Sentencing Proceedings in General
    350HII(G) Hearing
      350Hk369 Findings and Statement of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

Reasons
350Hk373 k. Sufficiency. Most Cited Cases

**Sentencing and Punishment 350H ⬅651**

350H Sentencing and Punishment
   350HIV Sentencing Guidelines
      350HIV(A) In General
         350Hk651 k. Operation and effect of guidelines in general. Most Cited Cases

**Sentencing and Punishment 350H ⬅661.5**

350H Sentencing and Punishment
   350HIV Sentencing Guidelines
      350HIV(A) In General
         350Hk655 Constitutional, Statutory, and Regulatory Provisions
            350Hk661.5 k. Mandatory or advisory. Most Cited Cases
   Procedural errors at sentencing include failing to calculate or improperly calculating the Sentencing Guidelines range, treating the Guidelines as mandatory, failing to consider the statutory sentencing factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. 18 U.S.C.A. § 3553(a); U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[4] Criminal Law 110 ⬅1139**

110 Criminal Law
   110XXIV Review
      110XXIV(L) Scope of Review in General
         110XXIV(L)13 Review De Novo
            110k1139 k. In general. Most Cited Cases

**Criminal Law 110 ⬅1158.34**

110 Criminal Law
   110XXIV Review
      110XXIV(O) Questions of Fact and Findings
         110k1158.34 k. Sentencing. Most Cited Cases
   In reviewing a sentence for procedural error,

Court of Appeals reviews the district court's factual findings for clear error and its application of the Sentencing Guidelines de novo. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[5] Sentencing and Punishment 350H ⬅752**

350H Sentencing and Punishment
   350HIV Sentencing Guidelines
      350HIV(C) Adjustments
         350HIV(C)2 Factors Increasing Offense Level
            350Hk752 k. Organizers, leaders, managerial role. Most Cited Cases
   To be subject to a role enhancement at sentencing as an organizer, leader, manager, or supervisor of criminal activity, a defendant need only manage or supervise one other participant, and the simple fact that a defendant recruits new members into a conspiracy supports a finding of the defendant being a manager or supervisor. U.S.S.G. § 3B1.1(c), 18 U.S.C.A.

**[6] Criminal Law 110 ⬅1177.3(1)**

110 Criminal Law
   110XXIV Review
      110XXIV(Q) Harmless and Reversible Error
         110k1177.3 Sentencing and Punishment
            110k1177.3(1) k. In general. Most Cited Cases
   Any error in applying role enhancement was harmless when sentencing defendant for conspiracy to make a false statement and making a false statement, where evidence suggested that defendant did more than merely suggest that others lie to the FBI about murder victim's disappearance, but instead instructed her friends what to say and threatened to harm a witness and her unborn baby if she ever told anyone what really happened, and the enhancement had no effect on the advisory guideline range. U.S.S.G. § 3B1.1(c), 18 U.S.C.A.

**[7] Sentencing and Punishment 350H ⬅820**

350H Sentencing and Punishment

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

350HIV Sentencing Guidelines
   350HIV(F) Departures
     350HIV(F)2 Upward Departures
      350Hk818 Offense-Related Factors
       350Hk820 k. Scope, seriousness, and gravity of offense. Most Cited Cases

Upward departure for an offense committed in order to facilitate or conceal the commission of another offense could be applied to defendant convicted of conspiracy to make a false statement and making a false statement for lying to cover up the fact that she murdered child victim; defendant's actions fell outside the "heartland" of the offense, since she lied to federal agents in order to cover up a particularly brutal crime, and, as a result, she successfully avoided detection of that crime for many years and gave victim's brother false hope of reuniting with his sister. 18 U.S.C.A. § 1001; U.S.S.G. § 5K2.9, p.s., 18 U.S.C.A.

**[8] Criminal Law 110 ☞1177.3(2)**

110 Criminal Law
   110XXIV Review
     110XXIV(Q) Harmless and Reversible Error
      110k1177.3 Sentencing and Punishment
       110k1177.3(2) k. Sentencing proceedings in general. Most Cited Cases

Any procedural error in imposing upward departure for an offense committed in order to facilitate or conceal the commission of another offense when sentencing defendant convicted of conspiracy to make a false statement and making a false statement was harmless, although it was unclear whether the district court imposed an upward departure or an upward variance, where the court appropriately considered and explained the relevant statutory sentencing factors. 18 U.S.C.A. §§ 1001, 3553(a); U.S.S.G. § 5K2.9, p.s., 18 U.S.C.A.

**[9] Criminal Law 110 ☞1134.75**

110 Criminal Law
   110XXIV Review
     110XXIV(L) Scope of Review in General
      110XXIV(L)8 Sentencing

       110k1134.75 k. In general. Most Cited Cases

All that is generally required to satisfy the appellate court that the trial court considered statutory sentencing factors is evidence that the district court was aware of the relevant factors. 18 U.S.C.A. § 3553(a).

**[10] Sentencing and Punishment 350H ☞373**

350H Sentencing and Punishment
   350HII Sentencing Proceedings in General
     350HII(G) Hearing
      350Hk369 Findings and Statement of Reasons
       350Hk373 k. Sufficiency. Most Cited Cases

District court adequately explained degree of its upward variance when sentencing defendant for conspiracy to make a false statement and making a false statement; court twice stated that it had "carefully considered" statutory sentencing factors, and explained that it imposed consecutive 60-month sentences because defendant lied to cover up the fact that she murdered her niece and it was unclear how much time she would actually serve in state prison for the murder, that she caused harm to many other people, and that the sentence would deter others from committing a similar offense. 18 U.S.C.A. § 3553(a).

**[11] Criminal Law 110 ☞1134.76**

110 Criminal Law
   110XXIV Review
     110XXIV(L) Scope of Review in General
      110XXIV(L)8 Sentencing
       110k1134.76 k. Consecutive or cumulative sentences. Most Cited Cases

Court of Appeals reviews the district court's decision to impose consecutive sentences for reasonableness.

**[12] Sentencing and Punishment 350H ☞566**

350H Sentencing and Punishment

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

350HIII Sentence on Conviction of Different Charges
    350HIII(B) Consecutive or Cumulative Sentences
        350HIII(B)2 Particular Offenses
            350Hk566 k. False pretenses and fraud. Most Cited Cases

**Sentencing and Punishment 350H ☞642**

350H Sentencing and Punishment
    350HIII Sentence on Conviction of Different Charges
        350HIII(D) Disposition
            350Hk642 k. In general. Most Cited Cases
    District court's decision to impose consecutive 60-month sentences on defendant convicted of conspiracy to make a false statement and making a false statement for lying to cover up the fact that she murdered child victim was not unreasonable; court considered the Sentencing Guidelines range, which was properly calculated to be between zero and six months, before considering statutory sentencing factors, and concluded that, even after departing up to the statutory maximum on each count, concurrent sentences would not be sufficient and that consecutive sentences were required to achieve the appropriate total punishment. 18 U.S.C.A. § 3553(a); U.S.S.G. § 5G1.2, 18 U.S.C.A.

**[13] Sentencing and Punishment 350H ☞651**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(A) In General
            350Hk651 k. Operation and effect of guidelines in general. Most Cited Cases
    The now-advisory Sentencing Guidelines cannot mandate a sentence within the calculated range or concurrent sentencing. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[14] Sentencing and Punishment 350H ☞548**

350H Sentencing and Punishment
    350HIII Sentence on Conviction of Different Charges
        350HIII(B) Consecutive or Cumulative Sentences
            350HIII(B)1 In General
                350Hk548 k. Discretion of court. Most Cited Cases
    Sentencing Guidelines provision requiring sentences to run concurrently if the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment does not alternatively limit the district court's discretion to sentence consecutively when the total punishment is less than the statutory maximum; in other words, the provision does not describe the only time a court may impose consecutive sentences. U.S.S.G. § 5G1.2, 18 U.S.C.A.

**[15] Sentencing and Punishment 350H ☞585**

350H Sentencing and Punishment
    350HIII Sentence on Conviction of Different Charges
        350HIII(B) Consecutive or Cumulative Sentences
            350HIII(B)3 Factors and Purposes
                350Hk585 k. In general. Most Cited Cases
    In fashioning sentences, whether concurrent or consecutive, a district court must still continue to determine the appropriate Sentencing Guidelines range and then consider the statutory sentencing factors. 18 U.S.C.A. § 3553(a).

**[16] Sentencing and Punishment 350H ☞373**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(G) Hearing
            350Hk369 Findings and Statement of Reasons
                350Hk373 k. Sufficiency. Most Cited Cases
    District court did not procedurally err in deciding to run two 60-month sentences consecutive to each other when sentencing defendant for conspiracy to make a false statement and making a false

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
(Cite as: 662 F.3d 1037)

statement; court adequately demonstrated consideration of statutory sentencing factors in determining that 120 months' imprisonment was an appropriate sentence, and achieved that objective by varying up to the statutory maximum on each count and running the two sentences consecutive to each other. 18 U.S.C.A. § 3553(a).

**[17] Criminal Law 110 ☞1156.2**

110 Criminal Law
    110XXIV Review
        110XXIV(N) Discretion of Lower Court
            110k1156.1 Sentencing
                110k1156.2 k. In general. Most Cited Cases
    Second task on appeal, if Court of Appeals is certain that the district court's sentencing decision is procedurally sound, is to then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.

**[18] Criminal Law 110 ☞1156.2**

110 Criminal Law
    110XXIV Review
        110XXIV(N) Discretion of Lower Court
            110k1156.1 Sentencing
                110k1156.2 k. In general. Most Cited Cases
    A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant factor that should have received significant weight; gives significant weight to an improper or irrelevant factor; or considers only the appropriate factors but commits a clear error of judgment.

**[19] Sentencing and Punishment 350H ☞95**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(E) Factors Related to Offender
            350Hk93 Other Offenses, Charges, Misconduct
                350Hk95 k. Nature, degree, or seriousness of other misconduct. Most Cited Cases
    Defendant's state murder conviction was not an improper or irrelevant factor for the district court to consider when sentencing defendant convicted of conspiracy to make a false statement and making a false statement for lying about murdering victim; circumstances of defendant's case took it outside the "heartland" of typical violations. 18 U.S.C.A. §§ 1001, 3553(a).

**[20] Sentencing and Punishment 350H ☞651**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(A) In General
            350Hk651 k. Operation and effect of guidelines in general. Most Cited Cases
    District court gave sufficient weight to the advisory guideline range when sentencing defendant for conspiracy to make a false statement and making a false statement; district court acknowledged at sentencing that custody range was zero to six months under the Sentencing Guidelines, but explicitly found that such a sentence was inadequate. 18 U.S.C.A. § 3553(a); U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[21] Sentencing and Punishment 350H ☞66**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(D) Factors Related to Offense
            350Hk66 k. Nature, degree or seriousness of offense. Most Cited Cases
    District court's upward variance from advisory guidelines range of zero to six months imprisonment when it imposed consecutive 60-month sentences on defendant convicted of conspiracy to make a false statement and making a false statement was not abuse of discretion; although the variance of 54 months on each count was not minor or insubstantial, district court determined that the circumstances of the offense, which involved defendant's lies about the murder of a child victim, were not typical, but were particularly egregious and out of the ordinary, justifying a significant upward vari-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
(Cite as: 662 F.3d 1037)

ance. 18 U.S.C.A. § 3553(a)(2).

**[22] Sentencing and Punishment 350H ⟨⟩651**

350H Sentencing and Punishment
   350HIV Sentencing Guidelines
     350HIV(A) In General
      350Hk651 k. Operation and effect of
guidelines in general. Most Cited Cases
    District court must make an individualized assessment based on the facts presented at sentencing, and upon determining that a non-Guidelines sentence is warranted, the district court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. 18 U.S.C.A. § 3553(a)(2).

**[23] Criminal Law 110 ⟨⟩1134.75**

110 Criminal Law
   110XXIV Review
     110XXIV(L) Scope of Review in General
      110XXIV(L)8 Sentencing
       110k1134.75 k. In general. Most Cited Cases
    Court of Appeals may consider the extent of any variance from the Guidelines range, but must give due deference to the district court's decision that statutory sentencing factors, on a whole, justify the extent of the variance. 18 U.S.C.A. § 3553(a).

**[24] Criminal Law 110 ⟨⟩1134.75**

110 Criminal Law
   110XXIV Review
     110XXIV(L) Scope of Review in General
      110XXIV(L)8 Sentencing
       110k1134.75 k. In general. Most Cited Cases
    Court of Appeals may not require extraordinary circumstances to justify a sentence outside the Sentencing Guidelines and is prohibited from the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence. U.S.S.G. § 1B1.1 et seq., 18

U.S.C.A.; 18 U.S.C.A. § 3553(a).

**[25] Criminal Law 110 ⟨⟩1134.75**

110 Criminal Law
   110XXIV Review
     110XXIV(L) Scope of Review in General
      110XXIV(L)8 Sentencing
       110k1134.75 k. In general. Most Cited Cases
    While the Court of Appeals must ensure that the district court gave serious consideration to the extent of any departure from the Sentencing Guidelines and explained its conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications, fact that the Court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court. 18 U.S.C.A. § 3553(a); U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[26] Criminal Law 110 ⟨⟩1134.75**

110 Criminal Law
   110XXIV Review
     110XXIV(L) Scope of Review in General
      110XXIV(L)8 Sentencing
       110k1134.75 k. In general. Most Cited Cases
    A district court's sentence need not be the most appropriate one, it need only be a reasonable one.

**[27] Criminal Law 110 ⟨⟩1156.6**

110 Criminal Law
   110XXIV Review
     110XXIV(N) Discretion of Lower Court
      110k1156.1 Sentencing
       110k1156.6 k. Grant of probation or supervised release. Most Cited Cases
    Court of Appeals reviews the district court's imposition of the terms and conditions of supervised release for an abuse of discretion.

**[28] Sentencing and Punishment 350H ⟨⟩1962**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
(Cite as: 662 F.3d 1037)

350H Sentencing and Punishment
   350HIX Probation and Related Dispositions
      350HIX(G) Conditions of Probation
         350Hk1962 k. Discretion of court. Most Cited Cases
    District court is afforded wide discretion in imposing conditions on a defendant's supervised release so long as they meet statutory requirements. 18 U.S.C.A. § 3583(d).

**[29] Sentencing and Punishment 350H ☞317**

350H Sentencing and Punishment
   350HII Sentencing Proceedings in General
      350HII(F) Evidence
         350Hk317 k. Hearsay. Most Cited Cases
    FBI agent's hearsay testimony at sentencing hearing that defendant had physically and sexually abused two children in her care was sufficiently reliable to support conditions of supervised release requiring defendant to participate in sexual offender treatment and forbidding direct contact with minors when sentencing defendant for conspiracy to make a false statement and making a false statement in connection with child victim's death; testimony was corroborated by allegations in presentence report (PSR) that two children had been removed from defendant's care before victim's death based on reports of abuse. 18 U.S.C.A. § 3583(d).

**[30] Sentencing and Punishment 350H ☞304**

350H Sentencing and Punishment
   350HII Sentencing Proceedings in General
      350HII(F) Evidence
         350Hk304 k. Discretion of court. Most Cited Cases
    A district court has wide discretion at sentencing as to the kind of information considered or its source.

**[31] Sentencing and Punishment 350H ☞308**

350H Sentencing and Punishment
   350HII Sentencing Proceedings in General
      350HII(F) Evidence
         350Hk307 Admissibility in General
            350Hk308 k. In general. Most Cited Cases

**Sentencing and Punishment 350H ☞317**

350H Sentencing and Punishment
   350HII Sentencing Proceedings in General
      350HII(F) Evidence
         350Hk317 k. Hearsay. Most Cited Cases
    In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy; in other words, relevant hearsay testimony may be considered if sufficiently reliable reasons demonstrate the testimony is probably accurate.

**[32] Sentencing and Punishment 350H ☞317**

350H Sentencing and Punishment
   350HII Sentencing Proceedings in General
      350HII(F) Evidence
         350Hk317 k. Hearsay. Most Cited Cases
    Determination of whether hearsay evidence is sufficiently reliable to support a sentencing decision depends on the facts of the particular case, and is committed to the sound discretion of the district court.

**\*1041** Angela Lorene Pitts, AFPD, Fayetteville, AR, for appellant.

Patrick C. Harris, AUSA, Little Rock, AR, for appellee.

Before MURPHY, BYE, and MELLOY, Circuit Judges.

MELLOY, Circuit Judge.
    After a jury found Wanda Richart guilty of one count of conspiracy to make a false statement in vi-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
(Cite as: 662 F.3d 1037)

olation of 18 U.S.C. § 371 and one count of making a false statement in violation of 18 U.S.C. § 1001, the district court [FN1] sentenced her to sixty months' imprisonment on each count, to be served consecutively, and three years' supervised release. Richart appeals her sentence, arguing that the district court committed procedural error in imposing a two-level adjustment for her role in the offense, in imposing an upward departure, and in running the two sentences consecutive to each other. Richart also contends that the district court abused its discretion by imposing a substantively unreasonable sentence and by imposing special conditions of supervised release. For the reasons stated below, we affirm.

> FN1. The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

### I. Background

On February 6, 2008, Wanda Richart and her husband, Charles "Bubba" Richart, were charged with making, and conspiring to make, false statements to an FBI agent in violation of 18 U.S.C. §§ 371 and 1001. These charges were the result of an investigation by the FBI into the disappearance of Wanda and Bubba's fourteen-year-old niece, Christina Richart. Christina was the daughter of Bubba's deceased brother and had been living with Wanda and Bubba when she went missing in the summer of 1999. In 2005, the FBI began investigating Christina's disappearance, and during the course of that investigation, Wanda repeatedly told FBI agents that Christina had gone to live with an aunt in California. This was a lie, which Wanda told to prevent authorities from discovering what had really happened to *1042 Christina. In fact, Christina had died in the bathroom of the Richarts' house during the summer of 1999. At that time, Christina and her younger brother, Michael, were living with Wanda and Bubba, along with Wanda and Bubba's young son, Steven. Two other individuals also lived in the house: Richard Burton and Joann Holdman, who was pregnant.

At trial, Joann Holdman testified that on the day Christina died, Christina and Wanda got into an argument, and that at a certain point, Wanda told Christina that she needed a bath and forced her into the bathroom, where the argument continued. Holdman stated that after about ten or fifteen minutes of hearing Wanda and Christina yelling at each other in the bathroom and the sounds of splashing and crying, she heard a "thud" and then she "didn't hear Christina anymore." According to Holdman, when the bathroom door opened, Christina was lying in front of the bathtub, not breathing. Holdman testified that she felt Christina's neck for a pulse and was unable to find one and that, when she put her hand on Christina's head, she felt a "mushy spot." Holdman stated that when she suggested calling for an ambulance, Wanda told her "not to do nothing stupid and that if I did anything stupid, she would kill me and my baby." The following morning, Holdman accompanied Wanda, Bubba, and Burton to bury Christina's body in the woods. Upon returning to the house, Wanda and Bubba gathered up Christina's clothes and belongings and burned them.

When asked if there was a discussion about what to tell people if they asked what had happened to Christina, Holdman testified that Wanda instructed the group to say that Christina's mother had returned and taken Christina to live with her. Holdman stated that she did not tell anybody what had happened to Christina because she was afraid of Wanda. She continued living with Wanda and Bubba for about a month after Christina died. According to Holdman, on the day she moved out, Wanda put her hand on Holdman's throat and told her that she could leave, but that if she told anybody anything about what really happened to Christina, Wanda would find her and kill her and her baby. Holdman also asserted that Wanda telephoned her soon after Holdman delivered her baby in March of 2000 and told her to "remember what we talked about," which Holdman interpreted as a renewal of the threat. After that phone call, Holdman had no further contact with Wanda. However, she testified at trial that when FBI agent Mike

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 9

662 F.3d 1037
(Cite as: 662 F.3d 1037)

Lowe interviewed her in June of 2006, she lied and told him that Christina's aunt had taken Christina to live with her. When pressed, Holdman stated that she could not remember whether she told Lowe that Christina had gone to live with her mother or her aunt, but that whichever one Wanda had told her to say, that is what she would have told Lowe. Holdman explained that she told Lowe this lie because she was still afraid of Wanda. When Lowe returned in January of 2008, though, Holdman told him the truth about Christina because she "didn't want to be scared anymore."

Burton's trial testimony was that after the four adults returned from burying Christina's body, Wanda instructed them to tell people that Christina had gone to live with an aunt in northern Arkansas or Oklahoma. Burton stated that he was interviewed by Lowe in October of 2005, in April of 2006, and in October of 2006, and that on each occasion he told the lie that Wanda had come up with. Bubba also testified at Wanda's trial. He stated that on the night Christina died, he did not call the police and did not call for an ambulance because Wanda told him not to. He testified that he did not remember who *1043 first came up with the false story about what happened to Christina, but that when he was interviewed by Lowe in October of 2005 and November of 2007, on both occasions, he told Lowe that Christina had gone to live with an aunt in California. Bubba also stated that Wanda told the FBI the same lie about Christina going to live in California with an aunt. In December of 2007, however, Bubba again met with Lowe and this time told the truth about what happened to Christina.

Donna Walker [FN2] testified at trial that Michael Richart, Christina's brother, came to live with her and her husband in May of 2000 after having been removed from Wanda and Bubba's care by the Department of Human Services ("DHS"). According to Walker, DHS became involved after Michael's school reported suspected abuse. Walker stated that when she first met with Wanda and Bubba, in May of 2000, Wanda told her that

Christina had gone to live with a great-aunt in Oklahoma. In July of 2001, Walker and her husband began the process of adopting Michael, and Walker again contacted Wanda in order to obtain some necessary paperwork. Walker testified that during that conversation, she also asked about Christina, and Wanda told her that Christina had gone to live with an aunt in California. Walker noted the discrepancy between this story and the previous account she had received from Wanda, but did not pursue the matter. However, because Michael continued to ask about his sister, Walker began to search for Christina. Through her uncle, who was the police chief in Fordyce, Arkansas, Walker succeeded in getting a missing child report filed in early 2005, and in September of 2005, at the behest of Arkansas state police, the FBI became involved in the search for Christina.

> FN2. Donna Walker is Michael Richart's adoptive mother. She and her husband took Michael in after he was removed from the Richarts' care in May of 2000, and subsequently adopted him.

On December 2, 2009, a jury found Wanda Richart guilty of both federal charges. On January 22, 2010, she pled nolo contendere in Arkansas state court to a charge of second degree murder, and was sentenced to 360 months' imprisonment. Her federal sentencing took place on April 23, 2010. The Pre–Sentence Investigation Report ("PSR") recommended a base offense level of six pursuant to U.S.S.G. § 2B1.1, and a two-level enhancement pursuant to § 3B1.1(c) for being "an organizer, leader, manager, or supervisor" of the conspiracy to make false statements. Based on a total offense level of eight and a criminal history category of I, the advisory Guidelines range was zero to six months' imprisonment. The PSR also referenced § 5K2.9, which provides for an upward departure to reflect the seriousness of the offense where the defendant committed the offense in order to conceal the commission of another offense, and § 5K2.21, which provides for an upward departure

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
(Cite as: 662 F.3d 1037)

based on uncharged conduct that did not enter into the determination of the applicable Guidelines range. At sentencing, Richart made several factual objections to the PSR, including two that are relevant to her appeal. First, Richart objected to the allegation that she lied to FBI agents in order to hide not only Christina's murder but also physical abuse and sexual exploitation of Christina and the other minors in the Richarts' care. Second, Richart objected to paragraphs stating that she had threatened to kill Holdman and Holdman's unborn child. Richart also objected to the two-level enhancement for her role in the offense and to the language in the PSR regarding an upward departure.

*1044 The district court found that the trial testimony supported the allegations that Richart lied in order to conceal Christina's murder and that Richart threatened to kill Holdman. Therefore, the district court overruled Richart's objections to those statements. The district court found that the allegations about physical and sexual abuse were not supported by the trial testimony. However, at sentencing, Lowe testified that he had interviewed Christina's younger brothers, Norman and Michael Richart, and that both boys told him that Wanda and Bubba physically and sexually abused Christina, Norman, and Michael. On the basis of this testimony, the district court overruled Richart's objection to the statements in the PSR regarding physical and sexual abuse. Further, the district court held that the two-level enhancement for role in the offense was appropriate because Richart "was the perpetrator of the idea to lie about what happened to Christina." Before sentencing Richart, the district court permitted the government to call Walker as a witness. Walker testified that Richart's lie about Christina's whereabouts caused Michael to maintain a dream of seeing his sister again and that this caused him emotional harm.

The district court sentenced Richart to the statutory maximum of 60 months' imprisonment on each count, to run consecutive to each other for a total of 120 months' imprisonment and consecutive

to Richart's undischarged state sentence. The district court stated its reasons for imposing the instant sentence:

I do believe that Ms. Richart murdered her niece.... I don't really know how much time Ms. Richart will do in [state prison]. I realize that she does not have good health, and I do believe that this sentence is appropriate under 18 United States Code Section 3553(a). I think that this crime of hers has caused not just Christina harm, but also has caused harm to many other people. And, of course, this has nothing to do with, really, the sentence imposed, but had it not been for Ms. Walker, this crime would have gone undetected I believe.

...

[T]he Court ... finds that, based on all the considerations in Section 3553(a) ... this is a fair sentence under the circumstances, and I am finding that because, first of all, I don't know how much time she will actually do in state custody. I just don't know. And I find that she murdered her niece and that a zero-to-six month sentence is far, far too inadequate for such a brutal offense. And ... I know that she is not being sentenced for [murdering her niece]. She is being sentenced for lying about it, but one reason that she was able to go so long without being detected is that she did. She was successful in carrying on this lie for a while, and she caused untold harm as a result of the lie. And she lied about something very brutal, and she covered it up.

...

This is speculation, I admit. But had she not lied about what happened to this child and had not been successful in covering up for so many years what had happened, she might have even been convicted of a far more serious offense. I don't know. But she lied about it, and Christina's remains still have not been found, as far as I know.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

...

She has received a 360–month sentence, and I am considering that. And I don't know how much of that time she will serve in Arkansas. And I don't think that, what she did, a 360–month sentence is really adequate because she lied and she covered it up and it worked for **\*1045** years and she caused a lot of harm. And I find that this is punishment that she deserves, and it also sends a message to deter others from committing similar offenses.

The district court also ordered three years of supervised release on each count, to run concurrent to each other, and imposed special conditions of supervised release. These special conditions require Richart to participate in sex-offender treatment and prohibit her from having direct contact with minors under the age of eighteen without written permission from the probation office, from entering into any area where children frequently congregate, and from possessing, subscribing to, or viewing any video, magazines, or literature depicting children in the nude or in sexually explicit positions. The district court explained that its reason for imposing these special conditions was its finding that Richart had abused children physically and sexually. Richart appeals her sentence, arguing that it is both procedurally unsound and substantively unreasonable. She also contends that the district court abused its discretion in imposing two of the special conditions of supervised release.

## II. Discussion
### A. Procedural Error

[1][2][3][4] "When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." *United States v. Feemster,* 572 F.3d 455, 461 (8th Cir.2009) (en banc) (internal quotations marks omitted). "In reviewing a defendant's sentence, we first ensure that the district court did not commit significant procedural error; then, absent significant procedural error, we review the sentence for substantive reasonableness."

*United States v. Frausto,* 636 F.3d 992, 995 (8th Cir.2011) (internal quotation marks and alterations omitted). "Procedural errors include 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.' " *Id.* (quoting *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). "In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the [G]uidelines de novo." *Id.* (internal quotations marks omitted).

### (i) Adjustment for Role in Offense
[5] Richart contends that the district court erred in calculating the advisory Guidelines range by applying a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c). A district court may increase a defendant's offense level by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor" of one or more other participants in the criminal activity. U.S.S.G. § 3B1.1(c). In determining whether the adjustment applies, the district court should consider such factors as:

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n. 4; *see also United States v. Rodriguez,* 112 F.3d 374, 377 (8th Cir.1997) (applying factors). In applying these factors, we have recognized that "[t]he terms 'organizer,' 'leader,' 'manager,' and 'supervisor' are to be construed **\*1046** broadly." *United States v. McDonald,* 521 F.3d 975, 978 (8th Cir.2008). "To be subject to a role enhancement under § 3B1.1(c), a defendant need only manage or supervise one other participant," *United States v. Davis,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

583 F.3d 1081, 1097 (8th Cir.2009), and "the simple fact that a defendant recruits new members into a conspiracy supports a finding of the defendant being a manager or supervisor." *United States v. Payton,* 636 F.3d 1027, 1048 (8th Cir.2011) (internal quotations marks omitted). However, § 3B1.1's enhancement "does not apply to a defendant who merely suggests committing the offense." U.S.S.G. § 3B1.1 cmt. n. 4.

[6] In overruling Richart's objection to the enhancement, the district court stated:

I find that [Richart], in fact, was the perpetrator of the idea to lie about what happened to Christina, about where she was taken. This was all not just to hide about who picked her up, but the fact that she was murdered. And the enhancement is not to apply to a defendant who merely suggests committing the offense. That's correct. The Court finds that this defendant actually committed the offense and that she did actually lie to agents and she was, of course, in the conspiracy to lie as well.

Richart does not contest the district court's factual finding that she was the one who came up with the idea to lie about what happened to Christina. However, she contends that this is not sufficient to support an enhancement under § 3B1.1(c) because she "merely suggest[ed]" that Burton, Holdman, and Bubba perpetrate the lie and did not exercise sufficient "control and authority" over them to warrant application of the enhancement.

We do not think the fact that Richart actually told the lie to FBI agents and actually participated in the conspiracy to lie supports a conclusion that she did more than "merely suggest" to others that they also commit the offense. Nor are we convinced that coming up with the lie would, alone, be sufficient to warrant application of an adjustment under § 3B1.1(c). However, we need not definitively decide whether the district court erred in its application of the Guidelines to the facts because we find that any error was harmless. *See United States v.*

*Shuler,* 598 F.3d 444, 447 (8th Cir.2010) ("Because the Guidelines are now advisory, procedural errors in determining the advisory sentencing range are subject to harmless error analysis."); *United States v. Jackson,* 594 F.3d 1027, 1030 (8th Cir.2010) ("[A] sentencing court's harmless error in applying the Guidelines does not require a remand.").

In the first place, Richart's argument that the facts of her case do not support the enhancement is unpersuasive. Based on the record in this case, there is sufficient evidence to support a finding that Richart was an organizer, leader, manager or supervisor. "A defendant need not directly control others in the organization to have functioned as an organizer." *United States v. Morris,* 18 F.3d 562, 569 (8th Cir.1994). Rather, "the simple fact that a defendant recruits new members into a conspiracy supports a finding of the defendant being a manager or supervisor." *Payton,* 636 F.3d at 1048 (internal quotations marks omitted). Here, the trial testimony supports a finding that Richart did more than "merely suggest" that Burton, Holdman, and Bubba lie about what had happened to Christina. Bubba testified that on the night Christina died, Wanda told him not to call the police or an ambulance, and Holdman testified that Wanda threatened to kill her and her unborn baby if she called for an ambulance. Both Holdman and Burton testified that Wanda *instructed* the group to tell people that *1047 Christina had gone to live with an aunt. *See United States v. Drapeau,* 121 F.3d 344, 350 (8th Cir.1997) (affirming application of the enhancement where the defendant " *instructed* his friends in the craft of constructing firebombs" and " *directed* his friends to obtain the ingredients for the firebombs, and [the defendant's] friends obeyed his commands" (emphases added)). Further, Holdman stated that Wanda threatened to kill her and her unborn child if she ever told anybody what really happened to Christina. Thus, there is ample evidence that Wanda Richart did more than merely proffer suggestions to her friends.

Second, while the district court did not expli-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

citly state that it would have imposed the same sentence regardless of any error in its application of the § 3B1.1(c) adjustment, *cf. United States v. Davis,* 583 F.3d 1081, 1094–95 (8th Cir.2009) (concluding that any error in classifying a defendant as a career offender would be harmless as the district court specifically stated it would impose the same sentence even if defendant was not deemed a career offender), on the highly unusual facts of this case, it is extremely unlikely that the district court would have imposed a lower sentence absent the § 3B1.1(c) enhancement. Although the two-level enhancement increased Richart's offense level from six to eight, this had no effect on the advisory guideline range, which remained zero to six months. Thus, with or without the § 3B1.1(c) adjustment, the district court would have started from the very same point before departing upward. Additionally, the district court specifically sentenced Richart to the statutory maximum sentence on both counts, and its list of reasons for doing so did not include any reference to Richart's leadership role. We conclude that any error in applying the enhancement under § 3B1.1(c) was harmless.

#### (ii) Upward Departure or Variance

[7] Next, Richart contends that the district court committed procedural error in imposing an upward departure based on U.S.S.G. § 5K2.9. Section 5K2.9 is a policy statement, which provides, "If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct." The district court found that an upward departure was appropriate under § 5K2.9 because Richart lied to cover up the fact that she murdered Christina. Richart argues that her act in lying to federal agents in order to conceal her own wrongdoing is not outside the "heartland" of typical cases and, therefore, a departure is unwarranted. Richart relies on *United States v. Robertson,* 324 F.3d 1028 (8th Cir.2003), in which we reversed the district court's decision to depart upward under § 5K2.9. In *Robertson,* we ex-

plained that "the possibility that a suspect would lie to an interrogator in order to minimize his exposure to criminal prosecution most certainly would have been" taken into account by the Sentencing Commission in establishing the guideline range for a violation of 18 U.S.C. § 1001. *Id.* at 1032. Therefore, we held that "a case in which the defendant knowingly lies to a federal agent regarding a fact material to the agent's investigation" does not "fall[ ] outside the heartland of such offenses merely because the defendant told the lie to conceal aspects of the offense for which he was arrested." *Id.*

Richart's reliance on *Robertson* is misplaced. Although we concluded in *Robertson* that, in that case, the defendant's actions did not fall outside the heartland of § 1001 offenses, we acknowledged that a departure would be warranted if the defendant's **\*1048** conduct " 'significantly differs from the norm.' " *Id.* at 1031 (quoting *United States v. Evans,* 148 F.3d 477, 485 (5th Cir.1998) (affirming a § 5K2.9 upward departure from a sentence for extortion based on "the sheer scale of the violations," which set the offense apart from the incidental violations taken into account by the Sentencing Commission)). Here, the district court concluded, and we agree, that Richart's case differs significantly from the norm. As the district court explained, this is not a case of "someone who is lying to a federal agent about whether he paid a tax or wrote a check ... it's about lying to a federal agent about what happened to a child when the person lying murdered the child." Richart lied to federal agents in order to cover up a particularly brutal crime, and, as a result, she successfully avoided detection of that crime for many years. Further, the district court believed that "had [Richart] not been successful in covering up [Christina's murder] for so many years ..., she might have even been convicted of a far more serious offence" than second degree murder. In addition, Richart's lies not only prevented discovery of her underlying crime but also increased the harm by giving Christina's brother, Michael, false hope of being reunited with Christina. Richart does not argue that any of these factual findings are

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

clearly erroneous,[FN3] and the district court did not err as a matter of law in concluding that such facts warranted an upward departure under § 5K2.9.

> FN3. We are unable to detect any evidence in the record supporting the district court's speculation that Richart might have been convicted of a more serious offense in state court had she not been successful in carrying on her lie for so long. Nor are we aware of any more reliable evidence of harm to other people than Walker's non-expert testimony at sentencing that the lie caused Michael emotional harm. However, Richart has not attacked any of these factual determinations as clearly erroneous. As a result, for the purposes of this appeal, we will assume that the district court did not err in "selecting a sentence based on clearly erroneous facts." *Gall,* 552 U.S. at 51, 128 S.Ct. 586.

[8] In any event, any procedural error in imposing an upward departure pursuant to § 5K2.9 would have been harmless. The district court justified its decision to impose a sentence above the advisory guideline range by referencing *both* U.S.S.G. § 5K2.9 and 18 U.S.C. § 3553(a). Therefore, it is unclear whether the district court imposed an upward departure or an upward variance. The distinction is immaterial, however, where, as here, the district court appropriately considered and explained the relevant § 3553(a) factors. *United States v. Washington,* 515 F.3d 861, 866–67 (8th Cir.2008) (finding "no significant procedural error" when the district court "described its sentence as a 'variance or upward departure' from the Guidelines range and drew no distinctions between the two terms" because the court "appropriately considered the relevant factors of § 3553(a)" and "provided an adequate explanation for the variance"); *cf. United States v. Villareal–Amarillas,* 562 F.3d 892, 898 (8th Cir.2009) ("After *Booker,* the only constraints on sentencing judges are the statutory maximum and minimum for the offense at issue and the senten-

cing statutes, particularly 18 U.S.C. § 3553(a). The judge is cabined, but also liberated, by the § 3553(a) factors." (internal quotation marks, alterations, and citation omitted)); *United States v. Jones,* 509 F.3d 911, 915 (8th Cir.2007) (holding that the district court did not err in declining to depart from the advisory guidelines range based on the defendant's jail misconduct yet imposing a variance under § 3553(a) based on the same jail misconduct). Here, the district court explicitly found that the sentence imposed was fair and appropriate **\*1049** "based on all the considerations in Section 3553(a)," and thoroughly documented its justifications for the variance. Thus, the district court committed no significant procedural error. *Washington,* 515 F.3d at 867; *see also Gall,* 552 U.S. at 53, 128 S.Ct. 586 (finding "no significant procedural error" where the District Judge "correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered all of the § 3553(a) factors, and thoroughly documented his reasoning").

[9][10] For similar reasons, we also reject Richart's argument that the district court erred in failing to explain the degree of its variance. "The Supreme Court in *Gall* explained that a sentencing court 'must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.' " *United States v. Deegan,* 605 F.3d 625, 629 (8th Cir.2010) (quoting *Gall,* 552 U.S. at 50, 128 S.Ct. 586). However, "we do not require a district court to categorically rehearse each of the section 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered." *United States v. Dieken,* 432 F.3d 906, 909 (8th Cir.2006). Nor have we required district courts to make specific findings on the record about each § 3553(a) factor. *United States v. Perkins,* 526 F.3d 1107, 1110 (8th Cir.2008). "[A]ll that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors," and "[i]f a district court references some

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

of the considerations contained in § 3553(a), we are ordinarily satisfied that the district court was aware of the entire contents of the relevant statute." *Id.* at 1110–11 (internal quotation marks omitted).

Here, the district court twice stated that it had "carefully considered" the § 3553(a) factors. In addition, the court explained at some length its reasons for imposing consecutive sixty-month sentences: Richart lied to cover up the fact that she murdered her niece and it was unclear how much time she would actually serve in state prison for the murder; Richart successfully carried on the lie for a long period of time, causing harm not just to Christina but to "many other people"; the lie may have prevented Richart from being convicted for a more serious offense than second degree murder; Richart's crime would have gone undetected but for Donna Walker; and 120 months' imprisonment provided just punishment for Richart's offense and "sends a message to deter others from committing similar offenses." [FN4] This explanation "demonstrat[ed] consideration of the statutory sentencing factors." *Villareal–Amarillas,* 562 F.3d at 899. The district court's reasons show that it considered the first § 3553(a) factor, which concerns the nature and circumstances of the offense, as well as the seriousness of the offense, the need for just punishment, and the need for deterrence, all of which fall under the second § 3553(a) factor. Further, the district court considered the need to avoid unwarranted sentence disparities among similarly-situated defendants, which is the sixth § 3553(a) factor, finding that Richart's conduct was of a different order from that of defendants who lied to federal agents about their involvement in less-serious crimes. Based on our review of the lengthy sentencing colloquy, we are satisfied that the district court " 'considered the parties' arguments and has a reasoned basis for exercising [its] own legal **\*1050** decisionmaking authority.' " *United States v. Starfield,* 563 F.3d 673, 675 (8th Cir.2009) (quoting *Rita v. United States,* 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)). Accordingly, we find no procedural error in the district court's de-

cision to vary up to the statutory maximum on each count.

> FN4. As noted above, because Richart does not argue otherwise, we assume the district court did not err in making these factual determinations.

### (iii) Consecutive Counts

[11][12] Richart argues, further, that the district court erred in running the two sixty-month sentences consecutive to each other. "[W]e review the district court's decision to impose consecutive sentences for reasonableness." *United States v. Rutherford,* 599 F.3d 817, 820 (8th Cir.2010). Richart contends that the district court's decision to impose consecutive sentences was unreasonable because it violated U.S.S.G. § 5G1.2 and because there was not a sufficient basis to run the counts consecutively. Section 5G1.2 states, in relevant part:

(c) If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

(d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

[13][14] We have defined the phrase " 'total punishment' to mean 'the precise sentence determined by the sentencing judge from within the appropriate [G]uidelines range.' " *Rutherford,* 599 F.3d at 820 (alteration in original) (quoting *United States v. Ervasti,* 201 F.3d 1029, 1045–46 (8th Cir.2000)). However, the now-advisory Guidelines "cannot mandate a sentence within the calculated range or concurrent sentencing." *Id.* at 821. In addition to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
(Cite as: 662 F.3d 1037)

the Guidelines, " 18 U.S.C. § 3584 and 18 U.S.C. § 3553 are relevant 'statutory concerns' for the district court to consider in reaching its ultimate sentence." *Id.* Section 3584 states that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time ... the terms may run concurrently or consecutively," and directs that the district court, "in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider ... the factors set forth in section 3553(a)." Thus, "[t]he applicability of § 5G1.2 to cases involving multiple counts is narrow." *Rutherford,* 599 F.3d at 821. "Notably § 5G1.2 does not alternatively limit the district court's discretion to sentence consecutively when the total punishment is less than the statutory maximum. In other words, § 5G1.2 does not describe the only time a court may impose consecutive sentences." *Id.* (emphasis omitted); *see also United States v. Jarvis,* 606 F.3d 552, 554 (8th Cir.2010) ("Although the court must consider the [G]uidelines when fashioning an appropriate sentence, the [G]uidelines do not control whether sentences run concurrently or consecutively." (internal citation omitted)).

[15] "In fashioning sentences, whether concurrent or consecutive, a district court must still continue to determine the appropriate Guidelines range and then consider the § 3553(a) factors." *Rutherford,* 599 F.3d at 821. Here, the district court considered the Guidelines range, which the parties agreed was properly calculated to be between zero and six months, before considering the factors set forth in § 3553(a), as required by § 3584(b) and *1051 our precedents, in order to determine whether to impose a consecutive or concurrent sentence. *See id.* The district court expressly stated that 120 months of incarceration "is appropriate under 18 United States Code Section 3553(a)." This finding reflects the district court's conclusion that, even after departing up to the statutory maximum on each count, concurrent sentences would not be sufficient under the facts of the case, and, therefore, consecutive sentences were required to achieve the appropriate total punishment.

[16] Richart contends that the decision to run the two sixty-month sentences consecutive to each other "constitutes an additional upward departure independent of the upward departure from the calculated guideline range to the statutory maximum and the court procedurally erred in failing to explain and / or support sufficiently this departure." We reject this argument, too. As we explained in Part II.A.(ii), above, the district court adequately demonstrated consideration of the statutory sentencing factors in determining that 120 months' imprisonment was an appropriate sentence. The court did not procedurally err in achieving this objective by varying up to the statutory maximum on each count and running the two sentences consecutive to each other. The district court correctly calculated the advisory guideline range, properly considered the § 3553(a) factors, selected a 120–month sentence based on factual findings that were not clearly erroneous, and adequately explained the chosen sentence. *See Gall,* 552 U.S. at 51, 128 S.Ct. 586; *Frausto,* 636 F.3d at 995. Consequently, we find no procedural error in the district court's analysis.

B. Substantive Reasonableness

[17][18] "Our second task on appeal, if we are certain that the district court's decision is 'procedurally sound,' is to 'then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.' " *Washington,* 515 F.3d at 865 (quoting *Gall,* 552 U.S. at 51, 128 S.Ct. 586). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant factor that should have received significant weight; gives significant weight to an improper or irrelevant factor; or considers only the appropriate factors but ... commits a clear error of judgment." *United States v. Saddler,* 538 F.3d 879, 890 (8th Cir.2008) (internal quotations marks omitted). Richart asserts error of all three types. First, Richart contends that the district court gave improper weight to her state sentence for Christina's murder, which the district court deemed inadequate. Specifically, she contends that the instant sentence was "clearly driven" by this one

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

factor. Moreover, she asserts that the district court should not have considered her state conviction at all because this factor is already taken into account by the Guidelines in establishing the base offense level for a violation of 18 U.S.C. § 1001. Second, Richart argues that the district court failed to give sufficient weight to the advisory guideline range. Finally, Richart contends that the factors relied on by the district court did not support a sentence of 120 months, which was greater than necessary to achieve the purposes set forth in § 3553(a)(2).

[19] We do not agree with Richart that the sentence imposed by the district court was driven solely by its belief that her state sentence for Christina's murder was inadequate. While the district court gave significant weight to the fact that Richart murdered her niece and to the uncertain amount of time Richart will actually serve in state prison, the court also gave several other reasons for concluding that the sentence**1052** imposed was appropriate, including: that Richart's lie was about something very brutal and caused harm to many people; that Richart successfully carried on the lie for a long period of time, and might otherwise have been convicted of a more serious offense than second degree murder; that Richart's crime would have gone undetected but for Donna Walker; and that 120 months' imprisonment provided just punishment and deterred others from committing similar offenses. Nevertheless, were we to conclude that the district court ought not to have considered Richart's state conviction at all, remand would likely be necessary. *See, e.g., United States v. Bertling,* 611 F.3d 477, 482 (8th Cir.2010) ("To be sure, the district court discussed other reasons for varying from [the appellants'] advisory guidelines ranges, but that fact alone does not allow us to affirm the sentences."); *accord United States v. Hunt,* 521 F.3d 636, 649 (6th Cir.2008) ("[I]t does not matter that the district court relied on a number ... of relevant facts in its sentencing, if it also relied on facts that it could not properly consider.").

We do not believe, though, that Richart's state

murder conviction was an "improper or irrelevant factor" for the district court to consider. We agree with the district court that "the second-degree murder offense[ ] in no way enhanced under the [G]uidelines ... the sentence [Richart] received on either count.... It might have been relevant conduct for purposes of not giving her criminal history points, but it did not in any way affect the guideline calculation of either ... the conspiracy count or the substantive count." Further, as we explained in Part II.A.(ii), above, the circumstances of Richart's case take it outside the "heartland" of typical 18 U.S.C. § 1001 violations. Consequently, we disagree with Richart's argument that the fact that she killed her niece is already taken into account by the Guidelines in establishing the guideline range for a violation of § 1001.

In any case, "we previously have allowed variances based on factors already taken into account by the advisory guidelines," where the Guidelines do not fully account for those factors, or "when a district court applies broader § 3553(a) considerations in granting the variance." *Jones,* 509 F.3d at 914 (internal quotations marks omitted) (affirming an upward variance based on the defendant's jailhouse misconduct even though that misconduct was also the basis for denying a two-level decrease for acceptance of responsibility, because the misconduct "not only demonstrated his lack of acceptance of responsibility, but, ... [also] clearly was relevant to other § 3553(a) factors"); *United States v. Fiorito,* 640 F.3d 338, 352 (8th Cir.2011) ("[W]e have held that a district court may impose an upward variance based on facts already included in the advisory sentencing guidelines where the advisory guidelines do not fully account for those facts." (internal quotation marks and alteration omitted)); *see also United States v. Chase,* 560 F.3d 828, 831 (8th Cir.2009) ("[F]actors that have already been taken into account in calculating the advisory guideline range, such as a defendant's lack of criminal history, can nevertheless form the basis of a variance."); *United States v. Roberson,* 334 Fed.Appx. 787, 790 (8th Cir.2009) (unpublished)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
(Cite as: 662 F.3d 1037)

(affirming the district court's upward variance because "[w]hile it is true the Guidelines accounted for the seriousness of the instant offense ... the district court did not abuse its discretion in concluding the Guidelines did not account for [its] extreme, dangerous, and random nature"). Thus, even if though the guideline range for a violation of 18 U.S.C. § 1001 already accounts for "the possibility that a suspect would lie to an interrogator in *1053 order to minimize his exposure to criminal prosecution," *Robertson,* 324 F.3d at 1032, the district court did not err in varying upward based on its determination that the Guidelines do not fully account for the nature, circumstances, and seriousness of Richart's offense, *see* 18 U.S.C. § 3553(a)(1), (2)(A). Accordingly, "we cannot say that the district court abused its discretion by giving too much weight to an improper factor." *United States v. Barrett,* 552 F.3d 724, 727 (8th Cir.2009).

[20][21] We also disagree with Richart's assertion that the district court failed to give sufficient weight to the advisory guideline range. The district court acknowledged at sentencing that "[t]he custody range is zero to [six] months under the [G]uidelines," but explicitly found that "a zero-to-six month sentence is far, far too inadequate." Clearly, the district court did not fail to consider this relevant factor. *See Saddler,* 538 F.3d at 890 ("A district court abuses its discretion ... when it fails to consider a relevant factor that should have received significant weight...." (internal quotations marks omitted)). Therefore, we turn to Richart's argument that a 120–month sentence was greater than necessary to achieve the purposes set forth in § 3553(a)(2). Section 3553(a) provides that the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [ § 3553(a)(2)]." These purposes are the need for the sentence imposed:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a)(2).

[22] In this case, the district court varied upward from the top of the advisory guideline range by fifty-four months on each count, and ran the sentences consecutive to each other to achieve a total upward variance of 114 months from what *Gall* characterizes as "the initial benchmark." 552 U.S. at 49, 128 S.Ct. 586. This upward variance is "neither minor nor insubstantial," and "[e]ven under *Gall,* 'a [major] variance should be supported by a more significant justification than a minor one.' " *Washington,* 515 F.3d at 867 (alteration in original) (quoting *Gall,* 552 U.S. at 50, 128 S.Ct. 586). The district court "must make an individualized assessment based on the facts presented," and upon determining that a non-Guidelines sentence is warranted, the district court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall,* 552 U.S. at 50, 128 S.Ct. 586; *Washington,* 515 F.3d at 867.

[23][24][25] However, even though the sentence imposed is outside the advisory Guidelines range, our substantive review of Richart's sentence is "narrow and deferential." *Feemster,* 572 F.3d at 464 (internal quotation marks omitted); *see also Gall,* 552 U.S. at 51, 128 S.Ct. 586 ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."). Thus, "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Feemster,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

572 F.3d at 464 (internal quotation marks omitted).
**\*1054** We "may consider the extent of [any variance from the Guidelines range], but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51, 128 S.Ct. 586. "We may not require extraordinary circumstances to justify a sentence outside the Guidelines and are prohibited from the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Feemster*, 572 F.3d at 462 (emphasis omitted) (internal quotation marks omitted) (citing *Gall*, 552 U.S. at 47, 128 S.Ct. 586). While we must ensure that the district court gave "serious consideration to the extent of any departure from the Guidelines" and explained its "conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications," *id.* at 462 (quoting *Gall*, 552 U.S. at 46, 128 S.Ct. 586), the fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court," *Gall*, 552 U.S. at 51, 128 S.Ct. 586.

In this case, as noted, the district court explained that a 120–month sentence was appropriate because: Richart's lie was about something very brutal; Richart's crime in murdering her niece would have gone undetected but for Donna Walker; Richart successfully carried on the lie for a long period of time and, absent the lie, might have been convicted of a more serious offense than second degree murder; it was unclear how much time Richart would actually serve in state prison; Richart's lie caused harm not just to Christina but to "many other people"; and 120 months' imprisonment provided just punishment for Richart's offense and "sends a message to deter others from committing similar offenses."

Viewing the district court's sentencing decision with due deference, we cannot say that the district court abused its discretion. *See United States v.*

*Mangum,* 625 F.3d 466, 470 (8th Cir.2010). "[A] sentencing court has wide latitude to weigh the section 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Lozoya,* 623 F.3d 624, 627 (8th Cir.2010) (internal quotation marks omitted) (rejecting appellants' argument that the circumstances were not extraordinary enough to justify upward variances of sixty-five and forty-three months). Simply because the district court weighed the relevant factors more heavily than Richart would prefer does not mean the district court abused its discretion. *See id.; see also United States v. Townsend,* 617 F.3d 991, 995 (8th Cir.2010) (explaining that the appellant "must show more than the fact that the district court disagreed with his view of what weight ought to be accorded certain sentencing factors"); *Mangum,* 625 F.3d at 470 ("Where a district court in imposing a sentence makes an individualized assessment based on the facts presented, addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable." (internal quotation marks and alterations omitted)).

[26] "We may not—it bears repeating—set aside a sentence merely because we would have decided that another one is more appropriate. A district court's sentence need not be the most appropriate one, it need only be a reasonable one." *United States v. Irey,* 612 F.3d 1160, 1191 (11th Cir.2010) (en banc) (citations omitted); *see also United States v. Kane,* 639 F.3d 1121, 1134 (8th Cir.2011) (holding that although this court's assessment of **\*1055** whether two co-defendants were "similarly situated" for purposes of weighing § 3553(a)(6) "would be different" than the district court's, "viewed through the lens of *Gall*, ... the district court acted within its broad discretion" (internal quotation marks omitted)); *United States v. Garate,* 543 F.3d 1026, 1029 (8th Cir.2008) (" *Gall* is quite clear that the fact that we may have weighed some facts differently, ... or that we, in applying our own individual decades of prior experience as sentencing judges in both the federal and state systems,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

would not have imposed the same ... sentence had we been sitting as the sentencing court, 'is insufficient to justify reversal of the district court.' " (quoting *Gall,* 552 U.S. at 51, 128 S.Ct. 586)).

Indeed, this court has previously upheld comparable, and even larger, absolute month variances, in deference to the sentencing judge's "institutional advantage" in finding facts and judging their import under § 3553(a). *Gall,* 552 U.S. at 51–52, 128 S.Ct. 586; *see, e.g., United States v. Foy,* 617 F.3d 1029, 1038 (8th Cir.2010) (affirming a 218–month upward variance because (1) "[w]e are not entitled ... under our deferential review to overturn a sentencing decision because we might have reasonably concluded a different sentence was appropriate"; (2) "the district court provided as our precedent requires, substantial insight into the reasons for its determination"; and (3) "the district court's explicit justifications rest largely on the kind of defendant-specific determinations that are within the special competence of sentencing courts" (internal quotation marks omitted)); *United States v. Azure,* 596 F.3d 449, 456 (8th Cir.2010) (affirming the district court's decision to run two sentences consecutively in order to achieve a 180–month sentence, which was 84 months above the top of the advisory guideline range for each count); *United States v. Dehghani,* 550 F.3d 716, 723 (8th Cir.2008) (affirming an upward variance of 105 months to achieve a sentence of 432 months' imprisonment, and explaining that "[b]ecause the sentencing judge is in a superior position to weigh the relevant factors under § 3553(a), the fact that we might reasonably conclude 'that a different sentence was appropriate is insufficient to justify reversal of the district court' ") (quoting *Gall,* 552 U.S. at 51, 128 S.Ct. 586); *United States v. McDonald,* 267 Fed.Appx. 477, 478–79 (8th Cir.2008) (unpublished) (recognizing the Supreme Court's rejection of an appellate rule that requires "extraordinary circumstances" to justify an extraordinary variance, and affirming a 130–month downward variance "[u]nder the more deferential abuse-of-discretion review outlined by the Supreme

Court in *Gall* " (internal quotation marks omitted)); *United States v. Larrabee,* 436 F.3d 890, 894 (8th Cir.2006) (affirming an upward variance of 128 months).

Ultimately, the district court determined that the circumstances of Richart's offense were not typical, but were particularly egregious and out of the ordinary, justifying a significant upward variance. Giving deference to the district court as required by *Gall,* we cannot say that the district court committed a clear error of judgment in weighing the relevant factors. *See Kane,* 639 F.3d at 1136 ("Because of the substantial deference district courts are due in sentencing, we give their decisions about what is reasonable wide berth and almost always let them pass." (internal quotation marks omitted)). Particularly given the impermissibility of proportionality review after *Gall,* 552 U.S at 49, 128 S.Ct. 586, we see no basis to conclude that the district court abused its discretion in sentencing Richart to 120 months' imprisonment. *See, e.g., United States v. Bear Robe,* 521 F.3d 909, 911 (8th Cir.2008); *\*1056United States v. Austad,* 519 F.3d 431, 435 (8th Cir.2008) (opining that before *Gall,* the defendant's sentence "might have presented a closer issue," but recognizing that "[i]n light of *Gall,* ... although it is uncontroversial that a major departure should be supported by a more significant justification than a minor one, the justification need not be precisely proportionate" (internal quotation marks and citations omitted) (emphasis omitted)). Accordingly, we find that Richart's sentence is substantively reasonable and affirm the judgment of the district court.

C. Special Conditions of Supervised Release
[27][28] Lastly, Richart objects to two of the special conditions of supervised release imposed by the district court. She argues that the district court abused its discretion in imposing special condition one, which requires her to participate in sexual offender treatment, and special condition three, which forbids direct contact with minors absent written approval from her probation officer and prohibits

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

her from entering areas children frequent. "We review the district court's imposition of the terms and conditions of supervised release for an abuse of discretion." *United States v. Jorge–Salgado,* 520 F.3d 840, 842 (8th Cir.2008) (internal quotation marks omitted). "The district court is afforded wide discretion in imposing conditions on a defendant's supervised release so long as they meet the requirements of 18 U.S.C. § 3583(d)." *United States v. Boston,* 494 F.3d 660, 667 (8th Cir.2007). Section 3583(d) requires that any special conditions imposed must be "reasonably related" to "the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medicinal or other correctional needs." *See United States v. Bender,* 566 F.3d 748, 751 (8th Cir.2009) (internal quotation marks omitted). In addition, such conditions must "involve[ ] no greater deprivation of liberty than is reasonably necessary" to achieve these purposes and must be "consistent with any pertinent policy statements issued by the Sentencing Commission." § 3583(d).

[29] Richart contends that special conditions one and three are unwarranted under § 3583 because the district court's factual finding that Richart physically and sexually abused the children in her care was clearly erroneous. *See United States v. Douglas,* 646 F.3d 1134, 1136 (8th Cir.2011) (recognizing that we review the district court's factual findings at sentencing for clear error). She concedes that if the district court did not clearly err in finding that she physically and sexually abused the children in her care, then the special conditions were proper. At sentencing, the district court overruled Richart's objection to the allegations in the PSR that Richart physically and sexually abused the children in her care based on the testimony of Agent Lowe. Lowe's testimony was as follows:

Q: And let's address the allegation of physical abuse and sexual abuse against Christina, Michael,

and Norman. Have you interviewed Michael Richart about this?

A: Yes.

Q: Have you interviewed Norman Richart about this?

A: Yes.

Q: The allegations of sexual and physical abuse, who does it come from?

A: It comes from Norman and Michael.

Q: And they said they were abused physically and sexually?

A: Yes, they did.

**\*1057** Q: By whom?

A: Wanda and Bubba Richart.

[30][31][32] Richart asserts that Lowe's testimony is insufficiently reliable to support the district court's finding because it is uncorroborated hearsay. "A district court has wide discretion at sentencing as to the kind of information considered or its source." *United States v. Atkins,* 250 F.3d 1203, 1212 (8th Cir.2001) (citing *United States v. Johnson,* 767 F.2d 1259, 1276 (8th Cir.1985)). " 'In resolving any ... dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.' " *United States v. Pratt,* 553 F.3d 1165, 1170 (8th Cir.2009) (emphasis omitted) (quoting U.S.S.G. § 6A1.3(a)). "In other words, relevant hearsay testimony may be considered if sufficiently reliable reasons demonstrate the testimony is probably accurate." *United States v. Woods,* 596 F.3d 445, 448 (8th Cir.2010) (citing *United States v. Sharpfish,* 408 F.3d 507, 511 (8th Cir.2005)). "The determination of whether hearsay evidence is suffi-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

ciently reliable to support a sentencing decision depends on the facts of the particular case, and is committed to the sound discretion of the district court." *Id.* (quoting *United States v. Cassidy*, 6 F.3d 554, 557 (8th Cir.1993)).

The district court recognized that Lowe's testimony was hearsay, but held that it was corroborated by other allegations in the PSR, namely that Norman was removed from Wanda and Bubba's care prior to Christina's death based on reports of abuse, and that Michael was removed from their care after Christina's death also because abuse was reported. Lowe's evidence was corroborated by the testimony of Donna Walker, who stated both at trial and at sentencing that Michael Richart came to live with her and her husband after his teachers reported suspected abuse. Therefore, we conclude that the district court did not abuse its discretion in determining that Lowe's testimony was probably accurate. *Woods*, 596 F.3d at 448. In light of Lowe's and Walker's testimony, the district court's factual finding that Richart sexually abused the children in her care was not clearly erroneous. As such, special conditions one and three are reasonably related to the goals of § 3553(a). *Bender*, 566 F.3d at 751. Accordingly, we affirm the district court's imposition of the conditions of supervised release.

### III. Conclusion
Accordingly, we affirm the judgment of the district court.

BYE, Circuit Judge, dissenting.
Not too long ago the Supreme Court observed: "In sentencing, as in other areas, district judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur." *Rita v. United States*, 551 U.S. 338, 354, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). The district court here varied upward from the 0 to 6 months Guideline range and sentenced Richart to 120 months' imprisonment—the statutory maximum—for making, and conspiring to make, false statements to an FBI agent. The district court's

120–month sentence is the type of mistake we ought to correct, and by holding the sentence substantively reasonable, the majority today abandons " 'the post that we have been ordered to hold in sentencing review and the responsibility that goes with it.' " *United States v. Kane*, 639 F.3d 1121, 1136 (8th Cir.2011) ***1058** (quoting *United States v. Irey*, 612 F.3d 1160, 1225 (11th Cir.2010) (en banc)). Therefore, I respectfully dissent.

While addressing a substantive reasonableness challenge, we consider the totality of the circumstances and review the sentencing court's decision for an abuse of discretion. *United States v. Reynolds*, 643 F.3d 1130, 1136 (8th Cir.2011). A sentencing court abuses its discretion if it: " '(1) fails to consider a relevant factor that should have received significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment.' " *United States v. Shakal*, 644 F.3d 642, 645 (8th Cir.2011) (quoting *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir.2009) (en banc)). In other words, " 'substantive review exists, in substantial part, to correct sentences that are based on unreasonable weighing decisions.' " *Kane*, 639 at 1136 (quoting *Irey*, 612 F.3d at 1193–94 (collecting cases)). Based on the record before us, I would conclude the district court's 120–month sentence is the product of unreasonable weighing decisions and is, therefore, substantively unreasonable.

The record demonstrates the district court's decision to vary upward from the 0 to 6 months Guideline range, and impose a 120–month sentence, rested largely, if not exclusively, on the court's desire to correct what it perceived to be an inadequate state sentence for Richart's second-degree murder conviction. Specifically, the court gave significant weight to the nature of Richart's state conviction, the length of her state sentence, and the uncertain amount of time she would actually serve in state prison. The court observed:

[T]his is a fair sentence under the circumstances,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 23

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

and I am finding that because, first of all, I don't know how much time she will actually do in state custody. I just don't know. And I find that she murdered her niece and that a zero-to-six month sentence is far, far too inadequate for such a brutal offense. And she also—and I know that she is not being sentenced for that offense. She is being sentenced for lying about it, but one reason that she was able to go for so long without being detected is that she did.

...

And she got a 30-year sentence, and I don't know—and, again, I don't know how much of that time she will actually serve. And I believe that she could have—I don't know. This is speculation, I admit. But had she not lied about what happened to this child and had not been successful in covering it up so many years what had happened, she might have even been convicted of a far more serious offense.

...

She has received a 360-month [state-court] sentence, and I am considering that. And I don't know how much of that time she will serve in Arkansas. And I don't think, what she did, a 360-month sentence is really adequate because she lied and she covered it up and it worked for years and she caused a lot of harm. And I find that this is punishment that she deserves, and it also sends a message to deter others from committing similar offenses.

Sentencing Tr. at 36–37, 39–41.

Read in isolation, the district court's last statement may suggest Richart's sentence was necessary "to provide just punishment" and "to afford adequate deterrence to criminal conduct." *See* 18 U.S.C. § 3553(a)(2)(A) –(B). Having reviewed the entire record, however, I am unconvinced the district court meant "just punishment" for making, and conspiring to make, false **\*1059** statements to an

FBI agent when it described Richart's 120-month sentence as the "punishment that she deserves." Rather, I am of the opinion the court imposed the sentence it did to supplant what it perceived to be an inadequate state sentence for a second-degree murder. But Richart was before the district court awaiting sentencing for her federal offenses. She was not before the court to be sentenced, for the second time, for her state conviction. Accordingly, by fixating on its perceived inadequacy of Richart's state sentence—a factor not listed in section 3553(a) —the district court gave significant weight to an improper factor and, thus, abused its discretion. *See United States v. Walters,* 643 F.3d 1077, 1079 (8th Cir.2011) (stating a district court abuses its discretion if it gives significant weight to an improper factor); *see also United States v. Green,* 436 F.3d 449, 456–57 (4th Cir.2006) (recognizing a sentencing court's decision to depart from the Guideline range must be based on the factors listed in section 3553(a)). Moreover, even if the district court properly considered the state conviction under the guise of "the nature, circumstances, and seriousness of Richart's offense," *see ante* 1053 (citing 18 U.S.C. § 3553(a)(1), (2)(A)), I would still conclude the court engaged in the type of unreasonable weighing we ought not tolerate by giving the state conviction and sentence too much weight. *See, e.g., United States v. Givens,* 443 F.3d 642, 646 (8th Cir.2006) (holding a sentence unreasonable where the sentencing court gave "too much weight" to the defendant's "history and characteristics" and gave "not enough [weight] to the other portions of section 3553(a)").

It is our responsibility to correct sentencing mistakes when they occur. *Rita,* 551 U.S. at 354, 127 S.Ct. 2456; *see also Kane,* 639 F.3d at 1136 ("If anything remains of substantive reasonableness review in the court of appeals, our court cannot ignore its duty to correct the weighing errors in this case."). Because under the totality of the circumstances and on the record before us I would find Richart's 120-month sentence substantively unreasonable, I would vacate the sentence and remand for

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

662 F.3d 1037
**(Cite as: 662 F.3d 1037)**

resentencing.

C.A.8 (Ark.),2011.
U.S. v. Richart
662 F.3d 1037

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.)))

▷
This case was not selected for publication in the
Federal Reporter.

Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or
after Jan. 1, 2007. See also Fifth Circuit Rules
28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find
CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Victor Jesus RODRIGUEZ also known as Canana,
and Fredy Giovanni Garcia-Tobar, also known as
Freddy Giovanni Garcia-Tobar, Freddy Giovanni
Garcia, also known as Jo Jo, also known as Joe,
also known as Alfredo Garcia, Defendants-Appel-
lants.

No. 06-20636.
Nov. 23, 2009.

**Background:** Defendants were convicted in a jury
trial in the United States District Court for the
Southern District of Texas, of conspiracy to harbor
and transport aliens for profit, resulting in death,
and various counts of harboring or transporting in-
dividual aliens and aiding and abetting same of-
fenses. Defendants appealed.

**Holdings:** The Court of Appeals held that:
(1) evidence was sufficient to support conspiracy
convictions;
(2) upward departure from defendants' Guidelines
range was warranted, given 19 deaths resulting
from actions;
(3) court acted within its discretion in denying de-
fendant's pre-trial motion for continuance; and
(4) any error in admitting evidence of prior bad acts
was harmless.

Affirmed.

West Headnotes

**[1] Conspiracy 91 ☞47(3.1)**

91 Conspiracy
    91II Criminal Responsibility
        91II(B) Prosecution
            91k44 Evidence
                91k47 Weight and Sufficiency
                    91k47(3) Particular Conspiracies
                        91k47(3.1) k. In general. Most
Cited Cases
    Evidence was sufficient to allow reasonable
jury to conclude that there was agreement to harbor
aliens and transport them past border checkpoints
for financial gain, that defendant knew about object
of plan, including fact that aliens were to be trans-
ported away from border, and that various members
of scheme, including defendant, undertook overt
acts to harbor and transport aliens, thus supporting
defendant's conviction for conspiracy to harbor and
transport aliens for profit. Immigration and Nation-
ality Act, § 274, 8 U.S.C.A. § 1324.

**[2] Aliens, Immigration, and Citizenship 24 ☞799**

24 Aliens, Immigration, and Citizenship
    24X Offenses, Penalties and Prosecutions
        24k792 Prosecutions
            24k799 k. Sentencing and punishment.
Most Cited Cases

**Sentencing and Punishment 350H ☞820**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(F) Departures
            350HIV(F)2 Upward Departures
                350Hk818 Offense-Related Factors
                    350Hk820 k. Scope, seriousness,
and gravity of offense. Most Cited Cases
    Upward departure from Guidelines sentencing
range of 140 to 175 months in prison, such that de-
fendant was sentenced to 247 months, was warran-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.)))

Page 2

ted in prosecution for conspiracy to harbor and transport aliens for profit, based on resulting death of 19 aliens due to overcrowding in tractor-trailer, and various counts of harboring or transporting individual aliens and aiding and abetting same offenses; defendant took no care to ensure ongoing safety of people he helped harbor and transport, and presence of each person that he delivered to be picked up by trailer contributed to overcrowding that led to deaths. Immigration and Nationality Act, § 274, 8 U.S.C.A. § 1324; U.S.S.G. §§ 5K2.0(a)(3), p.s., 5K2.1, p.s., 18 U.S.C.A.

**[3] Conspiracy 91 ☞51**

91 Conspiracy
   91II Criminal Responsibility
     91II(C) Sentence and Punishment
      91k51 k. In general. Most Cited Cases
    (Formerly 24k799)

**Sentencing and Punishment 350H ☞820**

350H Sentencing and Punishment
   350HIV Sentencing Guidelines
     350HIV(F) Departures
      350HIV(F)2 Upward Departures
       350Hk818 Offense-Related Factors
        350Hk820 k. Scope, seriousness, and gravity of offense. Most Cited Cases

Upward departure from Guidelines sentencing range of 108 to 135 months in prison, such that defendant was sentenced to 180 months, was warranted in prosecution for conspiracy to harbor and transport aliens for profit, based on resulting death of 19 aliens due to overcrowding in tractor-trailer, and various counts of harboring or transporting individual aliens and aiding and abetting same offenses; court considered defendant's intellectual functioning and mental capacity and his culpability relative to other members of conspiracy who also received upward departures. Immigration and Nationality Act, § 274, 8 U.S.C.A. § 1324.

**[4] Criminal Law 110 ☞590(2)**

110 Criminal Law
   110XIX Continuance
     110k588 Grounds for Continuance
      110k590 Want of Preparation
       110k590(2) k. Want of time for preparation by counsel. Most Cited Cases

Court acted within its discretion in denying defendant's motion for continuance based on change of attorneys shortly before trial for conspiracy to harbor and transport aliens for profit, resulting in death, and various counts of harboring or transporting individual aliens and aiding and abetting same offenses; defendant's new lawyers represented that they were prepared for trial, defendant's objections arguably amounted to attempt to re-urge incompetency, which already had been decided and not appealed, and defendant made no allegation of prejudice in form of explanation of what might have happened differently had there been continuance. Immigration and Nationality Act, § 274, 8 U.S.C.A. § 1324.

**[5] Criminal Law 110 ☞1169.11**

110 Criminal Law
   110XXIV Review
     110XXIV(Q) Harmless and Reversible Error
      110k1169 Admission of Evidence
       110k1169.11 k. Evidence of other offenses and misconduct. Most Cited Cases

Any error in admitting evidence of how defendant first became involved in alien smuggling cell and of his participation in specific prior operations to transport aliens was harmless in trial for conspiracy to harbor and transport aliens for profit, resulting in death, and various counts of harboring or transporting individual aliens and aiding and abetting same offenses; evidence outside of defendant's history of involvement, including telephone records thoroughly connecting defendant with conspiracy and other co-conspirators' testimony as to defendant's role, was sufficient to support conviction. Immigration and Nationality Act, § 274, 8 U.S.C.A. § 1324; Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.)))

**\*891** James Lee Turner, Assistant U.S. Attorney, U.S. Attorney's Office Southern District of Texas, Houston, TX, for Plaintiff-Appellee.

Victor Jesus Rodriguez, Federal Detention Center Houston, Houston, TX, pro se.

Appeal from the United States District Court for the Southern District of Texas, Houston Division, US-DC No. 4:03-CR-221-6.

Before WIENER, GARZA, and ELROD, Circuit Judges.

PER CURIAM: [FN*]

> FN* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

**\*\*1** This appeal arises from a much-publicized tragedy in which nineteen Mexican immigrants died in a tractor-trailer while being smuggled into the United States. In the trial in the district court, one of several **\*892** arising from the incident, a jury convicted appellants of conspiracy to harbor and transport aliens for profit, resulting in death, and of various counts of harboring and transporting individual aliens and aiding and abetting the same offenses, under various provisions of 8 U.S.C. § 1324 . Appellant Victor Jesus Rodriguez challenges his conspiracy conviction and aspects of his sentence, based on the assertion that his connection with the fatal truck ride was tenuous. Appellant Fredy Giovanni Garcia-Tobar challenges his sentence and challenges his convictions based on the denial of his motion for continuance and on an evidentiary objection. Having considered the arguments on appeal, we AFFIRM the convictions and sentences of Rodriguez and Garcia-Tobar.

**I. Facts and Proceedings**

Evidence in the record, which we construe in the light most favorable to the verdicts,[FN1] supports the following summary of the facts.

> FN1. *United States v. Martinez-Lugo,* 411 F.3d 597, 599 (5th Cir.2005) (per curiam).

Appellants participated in complicated, ongoing operations to smuggle undocumented immigrants across the border from Mexico and transport them to destinations within Texas. The process involved at least three different "cells" of smugglers that moved immigrants across the border and transported them to further points in the United States.

In May 2003, members of the cells brought together and packed more than seventy immigrants into the back of a truck trailer in Harlingen. En route to Houston, nineteen of them died as a result of heat and overcrowding before the driver abandoned the trailer in Victoria. The driver and other smugglers have been tried separately. *See, e.g., United States v. Williams,* 449 F.3d 635 (5th Cir.2006) (allowing new trial, over double jeopardy objections, for the driver); *United States v. Rodriguez,* 553 F.3d 380 (5th Cir.2008) (affirming convictions and sentences for several organizers including the parents of current Appellant Rodriguez).

Rodriguez and Garcia-Tobar played roles in different stages of the Victoria tragedy. Rodriguez assisted his parents in smuggling immigrants from Mexico. Near the border, he received some of the immigrants who would end up in the truck, helped house them, and transported them to the site where they boarded the truck. Garcia-Tobar was involved in bringing immigrants from the border to locations further inside the United States. He helped recruit the driver of the truck in which the tragedy took place, provided the driver a hotel room the night before the trip, and served as a contact person for the driver during the operation, in addition to coordinating the operation with other organizers. He was paid approximately $5,000 for his involvement in transporting this group of aliens.

Appellants and twelve others were indicted in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.)))

June, and a superseding indictment was issued in March of the following year. Count 1 of the superseding indictment charged all defendants with conspiracy to conceal, harbor, and transport thirty-eight undocumented aliens for commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A) and (B). Appellants and some of the other defendants were also charged with multiple counts of harboring aliens and transporting aliens for financial gain (one count each per particular alien), as well as aiding and abetting the transporting of aliens resulting in death, in violation of various provisions of § 1324.

**2 Rodriguez was convicted of Count 1 (conspiracy), a total of twenty counts for harboring and transporting particular *893 aliens, two additional counts for harboring two other aliens, and nineteen counts of aiding and abetting transportation of aliens resulting in death. He received a sentence of 247 months on various concurrent terms, plus five years of supervised release and $4200 in special costs.

Garcia-Tobar was convicted of Count 1 (conspiracy), twelve counts of transporting particular aliens, and nineteen counts of aiding and abetting transportation of aliens resulting in death. He received a sentence of 180 months on various concurrent terms plus five years of supervised release and $3900 in special costs.

## II. Discussion: Rodriguez

### A. Sufficiency

Rodriguez challenges the sufficiency of the evidence supporting the conspiracy conviction, arguing that he never had a meeting of the minds with the co-conspirators regarding the specific logistical details of transporting the aliens "outside of the immediate environs of their location after entry into the United States," including doing so by means of a non-refrigerated tractor-trailer. He alleges he was not a part of the conspiracy because the evidence only showed that he received aliens at the border

and assisted with transporting and housing them near the border.

In considering whether there is sufficient evidence to support a verdict, this court asks only whether the jury's decision was rational, not whether it was correct. *United States v. Lopez-Urbina,* 434 F.3d 750, 757 (5th Cir.2005). The question is whether "any reasonable trier of fact" could have reached the jury's conclusion, beyond a reasonable doubt, on all elements of the crime. *United States v. Martinez-Lugo,* 411 F.3d 597, 599 (5th Cir.2005) (per curiam). The court considers all evidence and all reasonable inferences therefrom in the light most favorable to the verdict. *Id.*

The elements of conspiracy are (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective. *United States v. Floyd,* 343 F.3d 363, 370 (5th Cir.2003). [FN2] "[E]ach element may be proven by circumstantial evidence," *United States v. Mulderig,* 120 F.3d 534, 547 (5th Cir.1997), and proof of a tacit conspiratorial agreement is sufficient, *United States v. Freeman,* 434 F.3d 369, 376 (5th Cir.2005). Furthermore, it is not necessary to prove that a defendant knew exactly how others would carry out their parts of the scheme:

> FN2. Rodriguez bases his insufficiency argument on general conspiracy principles, and does not contend that the elements or rules for conspiracy under 8 U.S.C. § 1324(a)(1)(A)(v)(I) differ from those applicable under the general conspiracy statute at 18 U.S.C. § 371.

Where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, or where

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.)))

the character of the property involved or nature of the activity is such that knowledge on the part of one member concerning the existence and function of other members of the same scheme is necessarily implied due to the overlapping nature of the various roles of the participants, the existence of a single conspiracy will be inferred. **3 *United States v. Thomas,* 12 F.3d 1350, 1358 (5th Cir.1994) (quoting *United States v. Elam,* 678 F.2d 1234, 1246 (5th Cir.1982)); *see also Rodriguez,* 553 F.3d at 391 n. 4 ("Conspiracy law contemplates the existence of subgroups."); *894 *United States v. Morris,* 46 F.3d 410, 416 (5th Cir.1995) (allowing inference of conspiracy where there are "several parts inherent in a larger common plan" and "the activities of one aspect of the scheme are necessary or advantageous to ... the overall success of the venture.").

[1] We conclude the evidence is sufficient to support Rodriguez's conspiracy conviction. There was evidence that Rodriguez played a substantial role in housing, feeding, collecting money from, and transporting various aliens, including delivering them to the area where they would board the ill-fated trailer. One alien testified that the smuggler who delivered her and other aliens to the border told her Rodriguez would meet the aliens at a rendezvous point and take them to a safe house, which he did. He collected money from this group, and at one point took custody of a three-year old deemed too young to travel with the others, but whom he and his parents planned to transport separately. The evidence would allow a reasonable jury to conclude that (1) there was an agreement to harbor these aliens and transport them past the checkpoints toward Houston and points beyond for financial gain, (2) Rodriguez knew about the object of the plan, including the fact that the aliens were to be transported away from the border, and (3) various members of the scheme, including Rodriguez himself, undertook overt acts to harbor and transport the aliens.

**B. Sentence**
[2] At both Rodriguez's and Garcia-Tobar's

sentencings, the district court departed upwardly in part to reflect the total number of deaths involved in the incident. Rodriguez's Guidelines calculation, not disputed on appeal, called for 140 to 175 months, but he received 247 months. Rodriguez challenges his sentence, arguing it is unreasonable to hold him accountable for all of the deaths because he was not directly involved in smuggling all of the aliens, as evidenced by his acquittals on the harboring and transporting count with respect to some of the aliens. Further, he notes that on the conspiracy count, the jury checked "No" under "We, the jury, further unanimously find beyond a reasonable doubt that the conduct of all co-conspirators in furtherance of the conspiracy was reasonably foreseeable to this Defendant."

The Supreme Court has mandated a two-step process for review of sentences imposed pursuant to the Sentencing Guidelines. The reviewing court must first determine whether the district court was procedurally correct in calculating the base sentence and then determine whether the sentence actually imposed was reasonable. *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 594, 596-97, 169 L.Ed.2d 445 (2007). The court reviews *de novo* the interpretation and application of the Sentencing Guidelines, but reviews findings of fact in the course of sentencing for clear error. *United States v. Smith,* 440 F.3d 704, 706 (5th Cir.2006). The Supreme Court has equated the reasonableness requirement with abuse of discretion review. *See Gall,* 128 S.Ct. at 594. There is no presumption of unreasonableness for sentences outside the Guideline range; instead, the sentencing court must provide "sufficient justifications." *Id.*

**4 The United States Sentencing Guidelines ("U.S.S.G.") authorize departures when circumstances are present to a degree not adequately taken into consideration by the Guidelines. U.S.S.G. § 5K2.0(a)(3). U.S.S.G. § 5K2.1 provides that "[i]f death resulted, the court may increase the sentence above the authorized Guideline range" and states that "whether multiple deaths resulted" is an

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.)))

"appropriate factor[ ]."

There is no reversible error in Rodriguez's sentence. He was convicted of participating*895 in the conspiracy that led to nineteen deaths. He took no care to ensure the ongoing safety of the people he helped harbor and transport, and the presence of each person that he delivered to be picked up by the trailer contributed to the overcrowding that led to the deaths. *See United States v. De Jesus-Ojeda,* 515 F.3d 434, 443 (5th Cir.2008) (finding deaths from dehydration in Texas bush reasonably foreseeable even though defendant did not know precisely how the smuggling, transporting, and harboring would occur). As discussed above, culpability for conspiracy does not depend on knowing or pre-approving all actions of one's co-conspirators in furtherance of the agreed-upon object. Here, the tragedy resulted from the conspiracy, and the district court followed a justification for upward departure that is expressly articulated in the Guidelines. This was not an abuse of discretion.

**III. Discussion: Garcia-Tobar**

**A. Sentencing**

[3] Garcia-Tobar also challenges his sentence. His Guideline range was 108 to 135 months, but the court departed upward, imposing a sentence of 180 months, based largely on the number of deaths caused by the conspiracy. He argues his upward departure was inappropriate because he demonstrated a diminished mental capacity, which the court failed to take into consideration. He argues that the court thereby "lump[ed] him in with everyone else" and failed to give him the requisite individualized assessment, citing *United States v. Armstrong,* 550 F.3d 382, 406 (5th Cir.2008).

Garcia-Tobar is incorrect in his assertion that the district court failed to consider his mental acuity in sentencing. The district court in fact imposed the upward departure for individualized reasons. In a lengthy discussion of the individualized factors informing Garcia-Tobar's sentence, the district

court indicated that it had considered Garcia-Tobar's "intellectual functioning and mental capacity in making the assessment that an upward departure is warranted and justified by this defendant's involvement and conduct." It further indicated that it had considered Garcia-Tobar's culpability relative to other members of the conspiracy who also received upward departures. As in *Armstrong,* "a review of the sentencing hearing transcript clearly shows that the district court ... gave an individualized assessment, and adequately explained the chosen sentence, including an explanation for imposing an upward departure from the Guidelines range." 550 F.3d at 406. Garcia-Tobar's claim of a lack of individualized sentencing accordingly fails.

**B. Motion for continuance**

**5** [4] Garcia-Tobar also argues the district court improperly denied his "pro se motion" for continuance made at the outset of trial.

Garcia-Tobar was represented for more than six months prior to trial by attorneys Nemecio Lopez and Alberto Garcia. Lopez had to withdraw shortly before trial because of a conflict, and former United States Attorney Mervyn Mosbacker joined ten days before trial to replace him. Mosbacker told the court at that time that he would be ready for trial.

As the trial began, however, Garcia-Tobar asked to personally address the court to ask for a continuance.[FN3] In a somewhat confusing explanation of his motion for continuance, he claimed that his lawyers had not communicated well with him and that he did not understand the *896 nature of the proceedings despite having reviewed the indictment with a psychiatrist. The district court appeared to view the colloquy as rehashing issues previously addressed when the court rejected Garcia-Tobar's assertion of incompetency, after a psychiatric evaluation had indicated he was feigning incompetency. Garcia-Tobar's lawyers stated they were ready for trial, and the motion for continuance was denied.

FN3. Garcia-Tobar had given Mosbacker a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.)))

letter expressing concern that Mosbacker did not have enough time to prepare for trial.

"Trial judges have broad discretion in deciding requests for continuances, and we review only for an abuse of that discretion resulting in serious prejudice." *United States v. German,* 486 F.3d 849, 854 (5th Cir.2007) (citation omitted). Here, Garcia-Tobar's lawyers represented they were prepared for trial, the defendant's objections arguably amounted to an attempt to re-urge incompetency (an issue already decided and not appealed), and there is no allegation of prejudice in the form of an explanation of what might have happened differently had there been a continuance. We find no reversible error in the district court's denial of the continuance.

**C. Rule 404(b) argument**
[5] Finally, Garcia-Tobar argues that the district court erred when it allowed evidence, over Garcia-Tobar's objection, of how he became involved with the smuggling cell and of his participation in specific prior operations to transport other groups of immigrants. He argues that this conduct took place before the time period specified for the conspiracy in the indictment and that admitting evidence of this conduct violated Federal Rule of Evidence 404(b). The district court's decisions on the admissibility of evidence are reviewed for abuse of discretion. *See, e.g., United States v. Akpan,* 407 F.3d 360, 373 (5th Cir.2005).

Rule 404(b) prohibits admission of evidence concerning "other crimes, wrongs, or acts" for the purpose of "prov[ing] the character of a person in order to show action in conformity therewith." In applying the rule to "continuing scheme[s]," however, we have determined that "[e]vidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an 'extrinsic' offense within the meaning of Rule 404(b), and is therefore not barred by the rule." *United States v. Dula,* 989 F.2d 772, 777 (5th Cir.1993).

**6 The indicted conspiracy in this case was an instance of smuggling arising in the context of regular, ongoing operations. One could plausibly describe it as part of the same "series of transactions" as recent smuggling operations accomplished by the same actors with the same modes of operation. *See Dula,* 989 F.2d at 777.

Furthermore, even assuming arguendo that the evidence was extrinsic and was impermissibly admitted, there would be no reversible error because the error would be harmless. In a harmless error examination,

we view the error in relation to the entire proceeding, not merely in isolation. Reversal is not required unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction. When the other evidence of guilt is overwhelming, and the error would not have substantially influenced the jury's verdict, the error is harmless.

*United States v. Hawley,* 516 F.3d 264, 268 (5th Cir.2008) (footnotes omitted). Here, telephone records thoroughly connect Garcia-Tobar with the conspiracy, and some co-conspirators testified extensively as to Garcia-Tobar's role. There is ample evidence, apart from the history of his involvement in transporting other groups of immigrants, to convict him of the crimes at issue.

***897 IV. CONCLUSION**
For the reasons given above, the convictions and sentences of Rodriguez and Garcia-Tobar are AFFIRMED.

C.A.5 (Tex.),2009.
U.S. v. Rodriguez
353 Fed.Appx. 890, 2009 WL 4035095 (C.A.5 (Tex.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

609 F.3d 609
**(Cite as: 609 F.3d 609)**

**C**

United States Court of Appeals,
Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jaime Alejandro ALVARADO PEREZ, Defendant-
Appellant.

No. 08-5078.
Argued: May 11, 2010.
Decided: July 1, 2010.

**Background:** Defendant was convicted in the United States District Court for the District of Maryland, Roger W. Titus, J., of being a felon in possession of a firearm and ammunition, and he appealed his 96-month sentence.

**Holdings:** The Court of Appeals, Alarcón, Senior Circuit Judge, held that:
(1) offense level enhancement for facilitating or potentially facilitating another felony offense was warranted;
(2) district court did not clearly err in applying offense level enhancement for serious psychological injury to a victim;
(3) court did not clearly err in applying offense level enhancement for causing a significant disruption of a governmental function; and
(4) the sentence was substantively reasonable.

Affirmed.

Shedd, Circuit Judge, filed concurring opinion.

West Headnotes

**[1] Sentencing and Punishment 350H ☞731**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(B) Offense Levels
            350HIV(B)3 Factors Applicable to Sever-

al Offenses
            350Hk731 k. Facilitation of other offense. Most Cited Cases
    In defendant's sentencing for being a felon in possession of a firearm, a sentencing guidelines offense level enhancement for facilitating or potentially facilitating another felony offense, the offense of reckless endangerment under Maryland law, was warranted, based on defendant's having created a substantial risk of death or serious physical injury to another by carrying a fully loaded handgun that had no safety mechanism in a cloth bag while traveling on a public-transportation bus. U.S.S.G. § 2K2.1(b)(6), 18 U.S.C.A.; West's Ann.Md.Code, Criminal Law, § 3-204(a).

**[2] Criminal Law 110 ☞1139**

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110XXIV(L)13 Review De Novo
                110k1139 k. In general. Most Cited Cases

**Criminal Law 110 ☞1158.34**

110 Criminal Law
    110XXIV Review
        110XXIV(O) Questions of Fact and Findings
            110k1158.34 k. Sentencing. Most Cited Cases
    In assessing a challenge to a sentencing court's application of the sentencing guidelines, the court of appeals reviews the court's factual findings for clear error and its legal conclusions de novo. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[3] Jury 230 ☞34(10)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**609 F.3d 609**
**(Cite as: 609 F.3d 609)**

230k34(5) Sentencing Matters
230k34(10) k. Weapons. Most
Cited Cases

In sentencing defendant for being a felon in possession of a firearm, district court did not violate defendant's Sixth Amendment right to trial by jury by considering relevant conduct that was not admitted by defendant or proved to a jury, for purposes of determining whether to apply an offense level enhancement under the advisory sentencing guidelines. U.S.C.A. Const.Amend. 6; U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[4] Sentencing and Punishment 350H ☞844**

350H Sentencing and Punishment
　350HIV Sentencing Guidelines
　　350HIV(F) Departures
　　　350HIV(F)2 Upward Departures
　　　　350Hk842 Victim-Related Factors
　　　　　350Hk844 k. Extreme injury, trauma, or loss. Most Cited Cases

In sentencing defendant for being a felon in possession of a firearm, district court did not clearly err in applying sentencing guidelines offense level enhancement for serious psychological injury to a victim; defendant's probation officer testified that the defendant's conduct of bringing a loaded gun to her office caused her to wear a bullet proof vest, and to request a transfer from a job that she had performed for 25 years. U.S.S.G. § 5K2.3, p.s., 18 U.S.C.A.

**[5] Sentencing and Punishment 350H ☞820**

350H Sentencing and Punishment
　350HIV Sentencing Guidelines
　　350HIV(F) Departures
　　　350HIV(F)2 Upward Departures
　　　　350Hk818 Offense-Related Factors
　　　　　350Hk820 k. Scope, seriousness, and gravity of offense. Most Cited Cases

In sentencing defendant for being a felon in possession of a firearm, district court did not clearly err in applying sentencing guidelines offense level enhancement for causing a significant disruption of a governmental function; record showed that defendant's conduct of bringing a loaded gun to his probation officer's office caused the probation office to transfer defendant's probation officer to a different position, and to post a new sign stating its policy against bringing weapons into the office. U.S.S.G. § 5K2.7, p.s., 18 U.S.C.A.

**[6] Weapons 406 ☞343**

406 Weapons
　406V Prosecution
　　406V(H) Sentence and Punishment
　　　406k343 k. Possession after conviction of crime. Most Cited Cases

The defendant's 96-month sentence for being a felon in possession of a firearm and ammunition, which represented an upward variance from the sentencing guidelines range of 63 to 78 months, was substantively reasonable. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**\*610 ARGUED:** Eun Kyung Cho, Hall & Cho, PC, Rockville, Maryland, for Appellant. Michael Joseph Leotta, Office of the United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Solette Magnelli, Assistant United States Attorney, Office of the United States Attorney, Baltimore, Maryland, for Appellee.

Before GREGORY and SHEDD, Circuit Judges, and ARTHUR L. ALARCÓN, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed by published opinion. Senior Judge ALARCÓN wrote the opinion, in which Judge GREGORY joined. Judge SHEDD wrote a separate concurring opinion.

**OPINION**
ALARCÓN, Senior Circuit Judge:

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
(Cite as: 609 F.3d 609)

Jaime Alejandro Alvarado Perez ("Alvarado-Perez") entered a conditional plea to a one-count felony indictment of unlawful possession of a firearm and ammunition by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). He appeals from the district court's sentencing decision on two grounds: (1) the district court clearly erred by applying three sentencing enhancements pursuant to the advisory United States Sentencing Guidelines §§ 2K2.1(b)(6), 5K2.3, and 5K2.7 relating to Alvarado-Perez's conduct of taking a loaded firearm inside a "backpack" [FN1] into the office of a probation officer, and (2) the district court's 96-month sentence is unreasonable in light of 18 U.S.C. § 3553(a).

> FN1. The parties refer to it as a "backpack." The photograph of the object introduced into evidence shows that it was a cloth bag with a draw string that could be carried on a person's back.

We affirm because we conclude that the district court did not err in applying the sentencing enhancements. We also have determined that the district court did not abuse its discretion in sentencing Alvarado-Perez to 96 months of imprisonment.

I
A

The facts of this case are not in dispute. In their plea agreement, the parties stipulated that the United States would prove *611 the following facts beyond a reasonable doubt:

The defendant, JAIME ALEJANDRO ALVARADO-PEREZ, entered the United States from his native country of El Salvador on December 21, 2001 as a non-immigrant child of a legal permanent resident. This status was valid until December 20, 2003, after which the defendant's status became that of an illegal alien. Since that date, the defendant has been in the United States and has not filed any applications with the U.S. Citizenship and Immigration Services. His status, to date, remains that of an illegal alien.

On June 30, 2006, [ALVARADO-]PEREZ was convicted in the Circuit Court for Montgomery County, Maryland on the offense of Third Degree Sexual Offense, which involves the use or threatened use of force as an element. This offense was committed against a minor. [Alvarado-]Perez was sentenced to three years' imprisonment and two years of supervised release. His civil rights have not been restored.

In September of 2007, agents from Immigration and Customs Enforcement ("ICE") became aware that [ALVARADO-]PEREZ was illegally within the United States. On September 6, 2007, [ALVARADO-]PEREZ visited the Montgomery County Parole and Probation Office for his regular meeting with his probation officer. On August 23, 2007, that probation officer had visited [ALVARADO-]PEREZ and had told him that because he had missed several appointments and had failed to maintain the conditions of his probation, that [he] was on the verge of violating his probation that would result in his reincarceration. When [ALVARADO-]PEREZ arrived for his September 6th meeting, ICE Agents approached him. [ALVARADO-] PEREZ acknowledged his identity and admitted that his visa from 2001 expired. ICE agents then arrested [ALVARADO-]PEREZ for immigration violations. During a search incident to this arrest, agents found a .38 caliber revolver, Model MR 102, serial number 09644, and 16 rounds of Winchester .38 caliber cartridges in the bag that the defendant was wearing when he entered the probation office. The firearm was loaded. The firearm and ammunition were manufactured outside of Maryland and crossed state lines, in and affecting interstate commerce. [ALVARADO-]PEREZ knowingly possessed the firearm and ammunition and brought it to the probation office.

[ALVARADO-]PEREZ was subsequently advised of his Miranda rights, which he waived. During this interview, [ALVARADO-]PEREZ

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
**(Cite as: 609 F.3d 609)**

stated, among other things, that: (1) he had arrived in the United States on December 21, 2001 with a visa that had since expired; (2) he had brought the firearm with him to his probation meeting on that date; (3) he did not need the gun for protection against gang members; and (4) he was an MS-13 gang member in El Salvador, as reflected by his tattoos.

(Plea Agreement 9.)

B

On September 26, 2007, a federal grand jury returned an indictment charging Alvarado-Perez with one count of unlawful possession of a firearm and ammunition by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). [FN2] Alvarado-Perez*612 pled guilty to the one-count indictment. Section 924(a)(2) provides that "[w]hoever knowingly violates ... section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 922(a)(2). At Alvarado-Perez's sentencing hearing on October 17, 2008, the district court noted that the presentence report provided for a base offense level of 20 and a criminal history category II. After a 3-point reduction for acceptance of responsibility, Alvarado-Perez's total base offense level was 17.

> FN2. The indictment also charged Alvarado-Perez with one count of possession of a firearm and ammunition by an alien under 18 U.S.C. § 922(g)(5). That count was dismissed on the motion of the Government.

The district court imposed three sentencing enhancements, however, which increased Alvarado-Perez's offense level to 25. First, the district court imposed a 4-point sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) based on its determination that Alvarado-Perez's conduct of carrying a loaded firearm in a backpack at least facilitated or had the potential of facilitating the crime of reckless endangerment. Second, the district court imposed a 2-point sentencing enhancement pursuant

to U.S.S.G. § 5K2.3 based on its determination that Alvarado-Perez's conduct of bringing a loaded firearm into the office of a probation officer caused the officer psychological injury. Finally, the district court imposed a 2-point sentencing enhancement pursuant to U.S.S.G. § 5K2.7 based on its determination that Alvarado-Perez's conduct of bringing a loaded firearm into the probation officer's office also caused a significant disruption of a government function. With a new base offense level of 25 and a criminal history category II, Alvarado-Perez's Sentencing Guidelines range was 63 to 78 months.

After considering the 18 U.S.C. § 3553(a) factors, the district court imposed an upward variance and sentenced Alvarado-Perez to 96 months imprisonment and 3 years supervised released. Alvarado-Perez filed this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II

A

[1] Alvarado-Perez contends that the district court erred in applying an enhancement for facilitating or potentially facilitating the crime of reckless endangerment under U.S.S.G. § 2K2.1(b)(6). Alvarado-Perez argues that "[b]ased upon the facts admitted [ ] and agreed upon by [the parties], the enhancement does not apply." (Appellant's Br. 13.)

[2] "In assessing a challenge to a sentencing court's application of the Guidelines, we review the court's factual findings for clear error and its legal conclusions de novo." *United States v. Allen,* 446 F.3d 522, 527 (4th Cir.2006) (citing *United States v. Ebersole,* 411 F.3d 517, 536-36 (4th Cir.2005)).

Section 2K2.1 (b)(6) of the Sentencing Guidelines provides:

If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
**(Cite as: 609 F.3d 609)**

levels. If the resulting offense level is less than level 18, increase to level 18.

U.S.S.G. § 2K2.1(b)(6).

In interpreting § 2K2.1(b)(6), this Court has previously held that "a firearm is possessed 'in connection with' another felony offense if the firearm 'facilitated, or had the potential of facilitating' the other offense." *United States v. Jenkins,* 566 F.3d 160, 162 (4th Cir.2009) (quoting U.S.S.G. § 2K2.1 ). "This requirement is satisfied if **\*613** the firearm 'ha[d] some purpose or effect' with respect to the other offense,[ ] including if the firearm 'was present for protection or to embolden the actor.' " *Id.* (quoting *United States v. Blount,* 337 F.3d 404, 411 (4th Cir.2003) and *United States v. Lipford,* 203 F.3d 259, 266 (4th Cir.2000)).

The term "another felony" is defined in § 2K2.1(b)(6) as "any federal, state, or local offense ... punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1(b)(6) cmt. n. 14(C).

Section 3-204 of the Maryland Code of Criminal Law provides as follows:

(a) [a] person may *not* recklessly:

(1) engage in conduct that creates a substantial risk of death or serious physical injury to another; or

(2) discharge a firearm from a motor vehicle in a manner that creates a substantial risk of death or serious physical injury to another.

(b) A person who violates this section is guilty of the misdemeanor of reckless endangerment and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $5,000 or both.

Md.Code Ann.Crim. Law § 3-204(a) (emphasis added).[FN3] "Maryland's reckless endangerment

statute is aimed at deterring the commission of potentially harmful conduct before an injury or death occurs. As a consequence, a defendant may be guilty of reckless endangerment even where he has caused no injury." *Boyer,* 107 Md.App. at 39, 666 A.2d 1269. "Accordingly, guilt under the statute does not depend upon whether the accused intended that his reckless conduct create a substantial risk of death or serious injury to another; rather, the trier of fact must determine whether the accused's conduct, when viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe." *Id.* (internal quotation marks omitted).

> FN3. Although, under Maryland law, a person who is guilty of reckless endangerment is guilty of a misdemeanor, *Boyer v. State,* 107 Md.App. 32, 39, 666 A.2d 1269 (Md.Ct.Spec.App.1995), the offense constitutes a felony under the Guidelines because it is punishable by imprisonment for a term exceeding one year. U.S.S.G. § 2K2.1(b)(6) cmt. n. 14(C).

The district court found that Alvarado-Perez recklessly endangered other persons. It determined that Alvarado-Perez's conduct of carrying a loaded firearm in his backpack was a gross departure from the standard of conduct that a law-abiding person would observe and that it created a substantial risk of death or serious physical injury to another. The district court reasoned as follows:

> Anybody who gets on a public transportation bus, and who carries with him a fully loaded weapon with no safety, and a lot of bullets in a bag that can be jostled and easily make the trigger go off is clearly endangering the public and doing so recklessly.

> ...

> A law-abiding person would not want to get on a public bus with a gun, much less with a gun fully loaded, no safety, in a bag that, with the slightest

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
**(Cite as: 609 F.3d 609)**

agitation, could cause death or serious bodily harm on that bus.... I conclude that it certainly meets the level of reckless endangerment.

Based upon this record, we agree with the district court that carrying a fully loaded handgun that has no safety mechanism in a cloth bag constitutes reckless endangerment. The district court did not clearly err in determining that Alvarado-Perez's *614 conduct constituted reckless endangerment under Maryland law.

[3] Alvarado-Perez further maintains that the district court's finding that he was guilty of reckless endangerment was based solely on the court's determination that "the firearm did not have a safety." (Appellant's Br. 16.) Alvarado-Perez argues that "[t]he district court relied heavily and repeatedly on [this] fact [which was] not admitted by [him], nor proven to a jury." (*Id.*)

This Court has previously held that:

[s]entencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized ... Indeed, 'many individual Guidelines apply higher sentences in the presence of *special facts*' and '[i]n many cases, the sentencing judge, not the jury, will determine the existence of those facts.' *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007). That 'does not violate the Sixth Amendment,' however, because '[a]s far as the law is concerned, the judge could disregard the Guidelines and apply the same sentence ... in the absence of the special facts.' ... The point is thus that the Guidelines must be advisory, not that judges may find no facts.

*United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir.2008). Accordingly, the district court was entitled to consider relevant conduct that was not admitted by Alvarado-Perez in determining an appropriate sentencing decision. The following colloquy demonstrates that Alvarado-Perez's counsel was mindful of this principle at sentencing:

**THE COURT:** I'm entitled to consider conduct other than the conduct involved in offense of conviction, am I not?

**MS. CHO [defense counsel]:** I'm sorry, your Honor?

**The Court:** I'm entitled to consider conduct including uncharged and acquitted conduct of the defendant that is not part of the offense of conviction under the sentencing guidelines, am I not?

**MS. CHO [defense counsel]:** Absolutely your honor.

Whether or not Alvarado-Perez admitted that the revolver did not have a safety mechanism, or whether this fact was presented to a jury, is not controlling because the evidence presented by the Government was sufficient to meet the preponderance of the evidence standard. *See Benkahla*, 530 F.3d at 312. At the sentencing hearing, ICE Special Agent Sergeant Paul Morris testified that the firearm found in Alvarado-Perez's backpack did not have a safety and that it could have fired on its own. He testified as follows:

**THE COURT:** Was the safety on the gun on or off?

**WITNESS: [Agent Morris]:** I do not believe the gun had a safety, sir. It was a revolver.

**THE COURT:** So there would be no safety? In other words, it could fire-

**WITNESS: [Agent Morris]:** Correct.

**THE COURT:**-without any additional effort required?

**WITNESS: [Agent Morris]:** Correct.

Because the district court's finding that Alvarado-Perez's conduct of carrying a loaded firearm in a backpack at least facilitated or had the potential

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

609 F.3d 609
**(Cite as: 609 F.3d 609)**

of facilitating the crime of reckless endangerment was not clearly erroneous, the court did not err in applying the 4-point sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6).

**\*615 B**

[4] Alvarado-Perez contends that the district court erred in applying the enhancement under U.S.S.G. § 5K2.3. Section 5K2.3 provides:

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

U.S.S.G. § 5K2.3. Specifically, Alvarado-Perez argues that the distress caused to Probation Officer Donna Billeter, which caused her to wear a bullet proof vest and request a job transfer, was based on inaccurate information.

The district court imposed this enhancement because it found that Alvarado-Perez's conduct in bringing a loaded firearm into Officer Billeter's office caused her psychological injury. Officer Billeter's testimony that the fact that Alvarado-Perez brought a gun into Billeter's office caused her to wear a bullet proof vest and request a transfer from a job that she had performed for 25 years is undisputed.

The district court's determination that Alvarado-Perez's action of bringing a firearm to Billeter's office caused her serious psychological injury was not clearly erroneous. Accordingly, the district court did not err in applying the 2-point sentencing enhancement pursuant to U.S.S.G. § 5K2.3.

**C**

[5] Alvarado-Perez contends that the district court erred in applying the enhancement under U.S.S.G. § 5K2.7. Section 5K2.7 of the advisory Sentencing Guidelines, in pertinent part, provides:

If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice[.]

U.S.S.G. § 5K2.7.

Alvarado-Perez contends that the district court failed to indicate what precautions the probation office took to justify an enhancement for disruption of a governmental function. The record supports the district court's finding that the probation office was significantly disrupted by Alvarado-Perez's conduct of bringing a firearm into the probation office. The probation office transferred Officer Billeter to another position and it posted a new sign stating its policy against bringing weapons into the office. As the district court noted, Alvarado-Perez's actions caused the probation office to

come to the realization that they can no longer assume that those who are on probation are going to be reasonably well-behaved when [they are] in [the probation] office.

It[ ] required [probation officers] to post new sign-age, required them to give additional notifications, additional precautions, and ... it certainly disrupted the operations of this office.

The district court's determination that Alvarado-Perez's actions had caused a significant disruption of a governmental function was not clearly erroneous.

**\*616 III**

Alvarado-Perez maintains that the district court abused its discretion because his sentence of 96 months imprisonment is unreasonable. He claims that the sentence is "greater than necessary to con-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
(Cite as: 609 F.3d 609)

form with the sentencing goals of 18 U.S.C. § 3553(a)." (Appellant's Br. 25.) Alvarado-Perez contends that the district court incorrectly assumed that the firearm was fully loaded, that the failure to have a safety heightened the normal threat posed by the firearm, and gave undue weight to uncharged allegations of general criminal activity. (*Id.* at 25-26.) In addition, Alvarado-Perez asserts that his sentence of 96 months imprisonment provides no deterrence because he has never served a sentence of this length. The length of his previous sentence was 44 days. (*Id.* at 27.)

In *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), the Supreme Court instructed that

[r]egardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range. Assuming, that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the §

3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

Practical considerations also underline this legal principle. The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court. Moreover, district courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than the appellate courts do.

*Gall,* 552 U.S. at 51-52, 128 S.Ct. 586 (citing *Rita,* 551 U.S. at 357-58, 127 S.Ct. 2456 and *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (internal quotations omitted)).

Section 3553(a) requires that a sentencing court consider the following factors:

*617 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
(Cite as: 609 F.3d 609)

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...

(5) any pertinent policy statement ...

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The district court did not commit a procedural error in applying § 3553(a). The district court correctly calculated the Guidelines range and allowed the parties to argue for a sentence they believed to be appropriate. The district court fully explained its reasoning in consideration of the § 3553(a) factors. The district court reasoned as follows:

[T]he conduct involved in this case is fairly unique and not just stupid but reckless and outrageous, and [ ] therefore a variance sentence is going to be necessary in my judgment in order to reflect the factors set forth in Section 3553.

First of all, the nature and circumstances of the offense, which at first glance appears to be a garden variety felon in possession of a firearm case, are by no means garden variety. This is an extremely serious offense which congress has provided for substantial possible punishment of up to ten years, and ordinarily it is under circum-

stances quite different from this one. In this one, however, the circumstances of the possession by this convicted felon are truly not stupid, but outrageous. That one would come to the offices of a government agency that is required to supervise him because of earlier criminal conduct, and to march into that building with a loaded weapon which either does not have a safety or the safety is off, and with a large supply of additional ammunition, is an extremely serious offense when you take into account the full circumstances relating to this felon's possession of that weapon.

The history and characteristics of this defendant are not helpful to this case. This is a person who wasn't recruited to MS-13 here in the United States but came here as a member already, overstayed his visa, and clearly has been involved in fairly significant and deep involvement with the MS-13 gang as reflected by the tattoos and by the testimony that's been given to me today by the witnesses who I've heard.

This is an especially troublesome gang that endangers the public in a most profound way with a culture that calls for crime as part of its existence, and it is one to be dealt with in the interest of the public severely and harshly. My sentence is required to promote respect for the law....

*618 I'm required to consider the need to protect the public from further crimes of the defendant. This defendant has endangered the public enough. What he's done has been truly outrageous, and the public must be protected from further conduct of this nature.

I'm required to consider the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. I think the most effective manner will be in jail.

I am required to consider the need to avoid unwarranted sentence disparities, and I will attempt to do so, but I must do so with appropriate meas-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
**(Cite as: 609 F.3d 609)**

urement of the seriousness of this offense.

I am required to consider the need to provide restitution to any victims. And unfortunately, this defendant has no resources, and the-I'm not sure that I could provide adequate restitution to the impact this has had, and that I've already mentioned, on the probation officer.

I am going to impose a variance sentence of 96 months, and I want to state very clearly that whether the guideline recommendation produced a range of 63-78 months, which is what it did produce after I applied the guidelines, or a sentencing range of 41-51 months, which would be the way the probation officer's original calculations had it, or a sentencing range of 27-33 months, which would be without the four level enhancement as provided by the probation officer, not any one of those sentences to me would be sufficient to reflect all of the 3553 factors here.

So if I assume for the moment that this defendant were to prevail on every single argument on every single offense level adjustment and every single departure upward, and that I had in front of me a recommended sentence of 27-33 months, I would impose the exact same sentence. This is a sentence that must be imposed to reflect more accurately all of the factors set forth in Section 3553. That is a sentence that is still well below the statutory maximum in this case. It is 80 percent of a maximum sentence. And if ever were there a case where an argument could be made as has been made by the prosecutor today of seeking the most that congress would authorize, this is one of those cases. But the sentence I've imposed is only 80 percent of that way towards what would be recommended or authorized by congress in its wisdom in enacting this regulation. So I'm imposing a sentence of 96 months in custody.

This Court has held that "the resulting sentence is procedurally reasonable [when] the district court adequately explain[s] its sentence on alternative

grounds supporting a variance sentence, by reference to the 18 U.S.C. § 3553(a) factors." *United States v. Grubbs,* 585 F.3d 793, 804 (4th Cir.2009). "This additional, § 3553(a)-based, explanation of [the] sentence provides independent grounds for a variance sentence and verifies the reasonableness of the district court's sentencing determination." *Id.* at 805. The record shows that the district court adequately explained the basis for Alvarado-Perez's sentence under the § 3553(a) factors apart from the sentencing enhancements.[FN4]

> FN4. Alvarado-Perez argues that the district court gave undue weight to hearsay testimony that he engaged in gang activity. However, this Court previously held that "there is no bar to the use of hearsay at sentencing. 'United States courts have a long history of using reliable hearsay for sentencing. The trial court may properly consider uncorroborated hearsay evidence that the defendant has had an opportunity to rebut or explain.' " *United States v. Love,* 134 F.3d 595, 607 (4th Cir.1998) (quoting *United States v. Terry,* 916 F.2d 157, 160-61 (4th Cir.1990)).

**\*619** Alvarado-Perez's argument that a sentence of 96 months is too long to provide adequate deterrence because his previous sentence was only for a duration of 44 days is also meritless. The district court stated that a 96 month sentence was necessary because:

[A] light sentence under the circumstances of this case, [ ] would utterly undermine the law and would totally fail to afford adequate deterrence to criminal conduct. A sentence by a court occasionally needs to send a message that would deter others, like this defendant, who have cheerfully disregarded their status of convicted felons and do have not only possessed weapons but possessed them in a government building on their way to see a government probation officer. There really must be and will be deterrence to that kind of behavior.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
**(Cite as: 609 F.3d 609)**

[6] The totality of the circumstances demonstrates that Alvarado-Perez's sentence is substantively reasonable. The district court did not abuse its discretion in sentencing Alvarado-Perez to 96 months of imprisonment.

Conclusion
The sentencing decision of the district court is

*AFFIRMED.*

SHEDD, Circuit Judge, concurring:

Because I agree that the district court did not err in either calculating Perez-Alvarado's advisory guideline range or varying upward from that range, I concur in the majority opinion. I write separately to note that, in my view, the sentence could also be affirmed, as the government urges in its supplemental brief, on the alternate reasoning given by the district court without deciding whether the court erred in its calculation of the advisory guideline range. *See United States v. Keene,* 470 F.3d 1347 (11th Cir.2006).[FN1]

> FN1. Alternate sentences are not completely uncommon. Indeed, in a more limited context, we have previously recommended that district courts impose alternate sentences. *See United States v. Hammoud,* 378 F.3d 426 (4th Cir.2004) (en banc order holding that the sentencing guidelines are mandatory but recommending that district courts impose alternate sentences treating the guidelines as advisory pending Supreme Court guidance), *vacated,* 543 U.S. 1097, 125 S.Ct. 1051, 160 L.Ed.2d 997 (2005) (for further consideration in light of *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)).

As the majority notes, the district court used an advisory sentencing range of 63-78 months in imposing the 96-month variance sentence. To reach this range, the court used several guideline enhancements. However, the court stated that it would impose that sentence even if the sentencing range was 27-33 months, which is what Alvarado-Perez contends is appropriate:

I am going to impose a variance sentence of 96 months, and I want to state very clearly that whether the guideline recommendation produced a range of 63-78 months, which is what it did produce after I applied the guidelines, or a sentencing range of 41-51 months, which would be the way the probation officer's original calculations had it, or a sentencing range of 27-33 months, which would be without the four level enhancement as provided by the probation officer, not any one of those sentences to me would be sufficient to reflect all of the 3553 factors here.

***620** So if I assume for the moment that this defendant were to prevail on every single argument on every single offense level adjustment and every single departure upward, and that I had in front of me a recommended range of sentence of 27-33 months, I would impose the exact same sentence.* This is a sentence that must be imposed to reflect more accurately all of the factors set forth in Section 3553. That is a sentence that is still well below the statutory maximum in this case. It is 80 percent of a maximum sentence. And if ever were there a case where an argument could be made as has been made by the prosecutor today of seeking the most that [C]ongress would authorize, this is one of those cases. But the sentence I've imposed is only 80 percent of the way towards what would be recommended or authorized by [C]ongress in its wisdom in enacting this legislation. So I'm imposing a sentence of 96 months in custody.

J.A. 233-34 (emphasis added).

In *Keene,* the district court sentenced the defendant using a contested sentencing enhancement, but it also stated that even if the enhancement did not apply it would impose the same sentence. On appeal, the Eleventh Circuit affirmed without de-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
**(Cite as: 609 F.3d 609)**

ciding the enhancement issue because it found that the alternate sentence was reasonable. The Eleventh Circuit termed its analysis "an assumed error harmlessness inquiry" that has two components: (1) "knowledge that the district court would have reached the same result even if it had decided the guidelines issue the other way," and (2) "a determination that the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor...." 470 F.3d at 1349. Applying that analysis to the facts before it, the Eleventh Circuit concluded that even if there was any misapplication of the guideline enhancement,

> "the error did not affect the district court's selection of the sentence imposed." Put a little differently, it would make no sense to set aside this reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm.

*Id.* at 1350 (quoting *Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)). *See also United States v. Dean,* 517 F.3d 1224, 1232 (11th Cir.2008), *cert. denied sub nom. Lopez v. United States,* --- U.S. ----, 129 S.Ct. 2155, 173 L.Ed.2d 1158 (2009) (applying the *Keene* analysis to affirm the variance sentence).

Improper calculation of an advisory guideline range constitutes a procedural error, *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), and "procedural errors at sentencing ... are routinely subject to harmlessness review," *Puckett v. United States,* --- U.S. ----, 129 S.Ct. 1423, 1432, 173 L.Ed.2d 266 (2009). Thus, "[i]n evaluating a district court's error in its sentencing calculations, we must determine whether the error was harmless." *United States v. Mehta,* 594 F.3d 277, 283 (4th Cir.2010). A sentencing calculation error is harmless "if the resulting sentence was not 'longer than that to which [the defendant] would otherwise be subject.' " *Id.* (quoting *United States v. Stokes,* 261 F.3d 496, 499 (4th Cir.2001)).

I am not aware of any published decision in which we have applied the *Keene* analysis in the precise situation before us: that is, where we have entirely given the benefit of the doubt regarding the appropriate advisory sentencing range to the defendant and then simply decided the reasonableness of an alternate variance sentence *621 from that range.[FN2] However, such an approach seems entirely consistent with our caselaw.

> FN2. *Cf. United States v. Lee,* 321 Fed.Appx. 298, 302 (4th Cir.) (Shedd, J., concurring) (noting that the sentence could have been affirmed under the *Keene* analysis), *cert. denied,* --- U.S. ----, 130 S.Ct. 204, 175 L.Ed.2d 142 (2009).

For example, it is not uncommon for us to assume, without deciding, error in the context of conducting a harmless error analysis. *See, e.g., United States v. Johnson,* 587 F.3d 625, 637 (4th Cir.2009) , *cert. denied sub nom. Martin v. United States,* --- U.S. ----, 130 S.Ct. 2120, 176 L.Ed.2d 744, 78 U.S.L.W. 3611 (2010) ("Martin raises several potential errors that the district court made in admitting the 1980 conviction, but we need not address them. Assuming that the district court erred in admitting the conviction, that error was harmless."); *United States v. Lipford,* 203 F.3d 259, 273 (4th Cir.2000) ("[W]e need not decide whether the conduct here meets that broad definition because even if we assume, without deciding, that there was error, any such error would be harmless.").

Indeed, we recently did so in a sentencing case. In *United States v. Boulware,* 604 F.3d 832 (4th Cir.2010), the defendant challenged her sentence on appeal, arguing that the district court did not offer sufficient reasons to show that it made an individual assessment of the specific circumstances in her case in light of the relevant § 3553(a) factors. Without deciding whether such an error occurred, we rejected this argument because the alleged error was harmless:

In light of the strong indications that the district

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**609 F.3d 609**
**(Cite as: 609 F.3d 609)**

court fully considered Boulware's argument for a below-guidelines sentence, and in light of the weakness of that argument, the notion that having to explain its analysis further might have changed the district court's mind ... is simply unrealistic in the present case, and remand for resentencing would be a pointless waste of resources. We therefore hold that even assuming that the district court committed procedural error in failing to sufficiently explain the sentence imposed in light of the § 3553(a) factors, any error was harmless.

604 F.3d 832, 840.

Moreover, in a slightly different context, we have affirmed a sentence that was erroneously imposed because we concluded that the district court's statement of an alternate sentence rendered the error harmless. *See United States v. Shatley,* 448 F.3d 264 (4th Cir.2006). We explained in that case:

Thus, even though the district court did impose a sentence under the Sentencing Guidelines that violated Shatley's Sixth Amendment rights, it announced at the same time that if the Sentencing Guidelines became advisory, it would impose the same sentence. In making that determination, it properly considered the § 3553(a) factors.... We take the district court at its word when it stated plainly that it would impose the same sentence under an advisory guideline system. Thus, the error was harmless; to remand this case now in view of these facts would amount to an "empty formality."

448 F.3d at 268 (citation omitted).

We have come close to applying the *Keene* analysis on at least two occasions. For example, in *United States v. Evans,* 526 F.3d 155 (4th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 476, 172 L.Ed.2d 341 (2008), the defendant did not challenge the calculation of his advisory sentencing range, but he did challenge the district **\*622** court's use of a guideline provision to depart upward from the range. Without deciding whether the court erred

in its use of the guideline provision, we found the ultimate sentence to be reasonable because the court imposed it by relying on both the guideline provision and, independently, the § 3553(a) factors. We noted: "When, as here, a district court offers two or more independent rationales for its deviation, an appellate court cannot hold the sentence unreasonable if the appellate court finds fault with just *one* of these rationales." 526 F.3d at 165 (emphasis in original). We then concluded: "Accordingly, even assuming the district court erred in applying the Guideline departure provisions, Evans' sentence, which is well-justified by § 3553(a) factors, is reasonable." *Id.*

More recently, in *United States v. Grubbs,* 585 F.3d 793 (4th Cir.2009), *cert. denied,* --- U.S. ----, 130 S.Ct. 1923, 176 L.Ed.2d 392 (2010), the defendant argued that the district court committed two procedural errors involving two enhancements used to calculate his guideline range. We rejected the defendant's argument as to the first enhancement, finding it to be proper. However, we noted regarding the second enhancement that the court "may have erred." 585 F.3d at 804. Nonetheless, we affirmed the sentence, finding it to be procedurally reasonable "because the district court adequately explained its sentence on alternative grounds supporting a variance sentence, by reference to the 18 U.S.C. § 3553(a) factors." *Id.*

As the foregoing authorities illustrate, (1) we review procedural sentencing errors (such as guideline range calculations) for harmlessness, (2) we have previously assumed without deciding that sentencing errors occurred in affirming sentences under a harmless error analysis, and (3) we have accepted a district court's statement of an alternate sentence as a basis to conclude that a sentencing error was harmless. Taken together, these analytical approaches form the *Keene* "assumed error harmlessness" analysis.

Applying that analysis to this case, we (1) initially give Alvarado-Perez the benefit of the doubt and assume (without deciding) that he is correct

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

609 F.3d 609
**(Cite as: 609 F.3d 609)**

that the sentencing range is 27-33 months and (2)
proceed to decide the question of whether a vari-
ance from that range to 96 months is reasonable.
Based on the reasons stated by the district court,
and in light of our deferential standard of review, I
believe that the variance from 27-33 months to 96
months is reasonable. Accordingly, the sentence
could be affirmed on this basis without reaching the
merits of the claimed guideline calculation errors.

C.A.4 (Md.),2010.
U.S. v. Alvarado Perez
609 F.3d 609

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

343 Fed.Appx. 946, 2009 WL 2905992 (C.A.4 (N.C.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 343 Fed.Appx. 946, 2009 WL 2905992 (C.A.4 (N.C.)))**

**H**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sylvester D. JONES, Jr., Defendant-Appellant.

No. 08-4645.
Submitted: Aug. 27, 2009.
Decided: Sept. 11, 2009.

**Background:** Defendant was convicted after guilty plea in the United States District Court for the Eastern District of North Carolina, James C. Fox, Senior District Judge, to use of a firearm during and in relation to crimes of violence, and was sentenced to upward departure sentence of 300 months' imprisonment. Defendant's counsel filed *Anders* brief.

**Holding:** The Court of Appeals held that District Court did not abuse its discretion in imposing upward departure sentence pursuant to Sentencing Guidelines.
     Affirmed.

West Headnotes

**Sentencing and Punishment 350H ⚖⟶820**

350H Sentencing and Punishment
     350HIV Sentencing Guidelines
          350HIV(F) Departures
               350HIV(F)2 Upward Departures
                    350Hk818 Offense-Related Factors
                         350Hk820 k. Scope, seriousness, and gravity of offense. Most Cited Cases

**Sentencing and Punishment 350H ⚖⟶844**

350H Sentencing and Punishment
     350HIV Sentencing Guidelines
          350HIV(F) Departures
               350HIV(F)2 Upward Departures
                    350Hk842 Victim-Related Factors
                         350Hk844 k. Extreme injury, trauma, or loss. Most Cited Cases

**Sentencing and Punishment 350H ⚖⟶996**

350H Sentencing and Punishment
     350HIV Sentencing Guidelines
          350HIV(H) Proceedings
               350HIV(H)3 Hearing
                    350Hk992 Findings and Statement of Reasons
                         350Hk996 k. Sufficiency. Most Cited Cases
     District Court did not abuse its discretion in imposing upward departure sentence, pursuant to Sentencing Guidelines, for defendant's guilty plea to use of a firearm during and in relation to crimes of violence; while district court properly calculated defendant's guidelines range, calculation did not take into account extensive injuries defendant inflicted, the financial and criminal motivation for his actions and overall extreme nature of his conduct, and district court adequately stated its reasons for sentence in open court. 18 U.S.C.A. §§ 924(c)(1)(A), (c)(2), 3553(c).

**\*946** Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Senior District Judge. (4:06-cr-00036-F-2).J. Michael McGuinness, The McGuinness Law Firm, Elizabethtown, NC, for Appellant. Anne Margaret Hayes, Assistant United States Attorney, Raleigh, NC, for Appellee.

Before MICHAEL, MOTZ, and AGEE, Circuit Judges.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

343 Fed.Appx. 946, 2009 WL 2905992 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 343 Fed.Appx. 946, 2009 WL 2905992 (C.A.4 (N.C.)))

*947 Affirmed by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

**1 Sylvester D. Jones, Jr., was charged in 2007 with: (1) attempting to kill a witness, by discharging a firearm with the intent to prevent said witness from testifying in an official proceeding ("Count Six"); (2) attempting to kill a witness, by discharging a firearm with the intent to prevent the witness from communicating to a federal judge information relating to the commission of federal offenses ("Count Seven"); (3) knowingly using physical force against a person with the intention of preventing their testimony in an official proceeding, all in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (2) (2006) ("Count Eight"); and (4) use of a firearm during and in relation to crimes of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (2) ("Count Nine").

Jones initially pled not guilty to all charges and proceeded to a jury trial. During the second day of the trial, Jones decided to plead guilty to Count Nine, and the Government agreed to dismiss Counts Six, Seven, and Eight pursuant to a plea agreement. Pursuant to § 924(c) and the advisory sentencing guidelines, Jones faced a guidelines sentence of ten years' imprisonment.

The Government filed a motion for upward departure based upon: (1) physical injury, pursuant to *U.S. Sentencing Guidelines Manual* ("USSG") § 5K2.2; (2) extreme psychological injury, pursuant to USSG § 5K2.3; (3) criminal purpose, pursuant to USSG § 5K2.9; and (4) dismissed and uncharged conduct, pursuant to USSG § 5K2.21. The Government sought a sentence of 255 months' imprisonment. The district court granted the motion for upward departure, found that the facts of the case justified a greater departure than the Government requested, and sentenced Jones to 300 months' imprisonment. The court found that the following factors were not taken into adequate consideration

by the guidelines: (1) the intentionally inflicted, severe physical injuries suffered by one of Jones's victims; (2) damage to the victims' personal property; (3) the criminal purpose of concealing the commission of another offense or retribution against a potential witness that was behind Jones's actions; (4) the premeditated nature of the crime; (5) the fact that the crime was carried out for money; (6) the dismissal of Counts Six, Seven, and Eight pursuant to the plea agreement; and (7) Jones's reckless endangerment of others and obstruction of justice during his flight from the crime scene. The court found that the guidelines sentence of 120 months did not adequately take into consideration the extent and seriousness of Jones's conduct.

Jones's counsel has filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that in his view, there are no meritorious issues for appeal. Counsel, however, asks this court to review the validity of Jones's guilty plea, the reasonableness of his sentence, and whether ineffective assistance of counsel appears conclusively on the face of the record. Jones filed a pro se supplemental brief in which he argues that the district court erred in granting the Government's motion for upward departure, as well as conclusory arguments regarding his conviction. The Government has not filed a brief.

**2 Under Rule 11(b)(1), the district court must address the defendant in open court and inform him of the following: the nature of the charge; any mandatory minimum sentence and the maximum possible sentence; the applicability of the Sentencing Guidelines; the court's obligation to *948 impose a special assessment; the defendant's right to an attorney; his right to plead not guilty and be tried by a jury with the assistance of counsel; his right to confront and cross-examine witnesses; his right against self-incrimination; and his right to testify, present evidence, and compel the attendance of witnesses. The defendant also must be told that a guilty plea waives any further trial and that his an-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

343 Fed.Appx. 946, 2009 WL 2905992 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 343 Fed.Appx. 946, 2009 WL 2905992 (C.A.4 (N.C.)))

swers at the proceeding may be used against him in a prosecution for perjury. Under Rule 11(b)(2), the court must address the defendant to determine that the plea is voluntary. The court must require disclosure of any plea agreement under Rule 11(c)(2) and determine a factual basis for the plea under Rule 11(b)(3). The record reflects that the district court conducted the plea colloquy in compliance with Rule 11, and that Jones's guilty plea was knowing and voluntary.

We review departure sentences, "whether inside, just outside, or significantly outside the Guidelines range" under a "deferential abuse-of-discretion standard." *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007); *United States v. Evans,* 526 F.3d 155, 161 (4th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 476, 172 L.Ed.2d 341 (2008). A district court "may reject a sentence within the advisory Guidelines range because 'the case at hand falls outside the "heartland" ' to which the individual Guidelines apply or because a sentence within the Guidelines fails to reflect the other § 3553(a) factors or 'because the case warrants a different sentence regardless.' " *Evans,* 526 F.3d at 161 (quoting *Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007)). The district court is obligated to state in open court the particular reasons supporting its chosen sentence, 18 U.S.C. § 3553(c) (2006), and to "make an individualized assessment based on the facts presented." *Gall,* 128 S.Ct. at 597.

Jones's sentence is reasonable. The parties do not dispute that the district court properly calculated Jones's guidelines range. However, as the district court stated on the record, the guidelines calculation did not take into account many aspects of Jones's offense conduct, including the extensive injuries he inflicted, the financial and criminal motivation for his actions, and the overall extreme nature of his conduct. The district court adequately stated its reasons for the sentence and did not abuse its discretion.

This court may address on direct appeal a claim that counsel was ineffective only if the ineffectiveness appears conclusively on the face of the record. *United States v. Baldovinos,* 434 F.3d 233, 239 (4th Cir.2006). There is no evidence on the face of the record that Jones's counsel was ineffective. Accordingly, we decline to address this claim.

**3 In accordance with *Anders,* we have reviewed the record in this case and have found no meritorious issues for appeal. We therefore affirm the district court's judgment. We deny Jones's motion to relieve counsel. This court requires that counsel inform Jones, in writing, of the right to petition the Supreme Court of the United States for further review. If Jones requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on Jones.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED.*

C.A.4 (N.C.),2009.
U.S. v. Jones
343 Fed.Appx. 946, 2009 WL 2905992 (C.A.4 (N.C.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

128 S.Ct. 2198                                                                    Page 1
553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal
D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313
**(Cite as: 553 U.S. 708, 128 S.Ct. 2198)**

▷

Supreme Court of the United States
Richard IRIZARRY, Petitioner,
v.
UNITED STATES.

No. 06-7517.
Argued April 15, 2008.
Decided June 12, 2008.

**Background:** Defendant was convicted in the
United States District Court for the Southern Dis-
trict of Alabama, No. 03-00236-CR-CG,Callie V.S.
Granade, Chief Judge, of making a threatening in-
terstate communication to his ex-wife, and he ap-
pealed. The Eleventh Circuit Court of Appeals, 458
F.3d 1208, affirmed. Defendant sought certiorari
which was granted.

**Holding:** The Supreme Court, Justice Stevens, held
that criminal procedure rule requiring notice that
the court is contemplating a departure from the re-
commended guideline sentencing range on a ground
not identified for departure either in the presentence
report or in a party's prehearing submission, is not
applicable to a variance from the recommended
range.

Affirmed.

Justice Thomas filed concurring opinion.

Justice Breyer filed dissenting opinion in which
Justices Kennedy, Souter, and Ginsburg, joined.

West Headnotes

**[1] Sentencing and Punishment 350H ☞651**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(A) In General
            350Hk651 k. Operation and effect of

guidelines in general. Most Cited Cases
    A sentence outside the Sentencing Guidelines
carries no presumption of unreasonableness.
U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[2] Sentencing and Punishment 350H ☞934**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(H) Proceedings
            350HIV(H)1 In General
                350Hk932 Advice and Notice
                    350Hk934 k. Necessity. Most Cited
Cases
    Criminal procedure rule requiring notice that
the court is contemplating a departure from the re-
commended guideline sentencing range on a ground
not identified for departure either in the presentence
report or in a party's prehearing submission, is not
applicable to a variance from the recommended
guidelines range. 18 U.S.C.A. § 3553(a); U.S.S.G.
§ 1B1.1 et seq., 18 U.S.C.A.; Fed.Rules
Cr.Proc.Rule 32(h), 18 U.S.C.A.

**\*\*2198 \*708 Syllabus** [FN*]

FN* The syllabus constitutes no part of the
opinion of the Court but has been prepared
by the Reporter of Decisions for the con-
venience of the reader. See *United States v.
Detroit Timber & Lumber Co.,* 200 U.S.
321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Petitioner pleaded guilty to making a threaten-
ing interstate communication to his ex-wife, in viol-
ation of federal law. Although the presentence re-
port recommended a Federal Sentencing Guidelines
range of 41-to-51 months in prison, the court im-
posed the statutory maximum sentence-60 months
in prison and 3 years of supervised release-rejecting
petitioner's objection that he was entitled to notice
that the court was contemplating an upward depar-
ture. The Eleventh Circuit affirmed, reasoning that
Federal Rule of Criminal Procedure 32(h), which

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

128 S.Ct. 2198                                                                                                                    Page 2
553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal
D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313
**(Cite as: 553 U.S. 708, 128 S.Ct. 2198)**

states that "[b]efore the court may depart from the applicable sentencing range on a **2199 ground not identified ... either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure," did not apply because the sentence was a variance, not a Guidelines depar- ture.

*Held:* Rule 32(h) does not apply to a variance from a recommended Guidelines range. At the time that *Burns v. United States,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123, was decided, prompting Rule 32(h)'s promulgation, the Guidelines were mandatory; the Sentencing Reform Act of 1984 prohibited district courts from disregarding most of the Guidelines' "mechanical dictates," *id.,* at 133, 111 S.Ct. 2182. Confronted with the constitutional problems that might otherwise arise, the *Burns* Court held that the Rule 32 provision allowing parties to comment on the appropriate sentence-now Rule 32(i)(1)(C)-would be "render[ed] meaningless" unless the defendant were given notice of a contemplated departure. *Id.,* at 135-136, 111 S.Ct. 2182. Any constitutionally protected expectation that a defendant will receive a sentence within the presumptively applicable Guidelines range did not, however, survive *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, which invalidated the Guidelines' mandatory features. Faced with advisory Guidelines, neither the Government nor the defendant may place the same degree of reliance on the type of "expectancy" that gave rise to a special need for notice in *Burns.* Indeed, a sentence outside the Guidelines carries no presumption of unreasonableness. *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) . Thus, the due process concerns motivating the Court to require notice in a mandatory Guidelines world no longer provide a basis for extending *709 the *Burns* rule either through an interpretation of Rule 32(h) itself or through Rule 32(i)(1)(C). Nor does the rule apply to 18 U.S.C. § 3553 variances by its terms. Although the Guidelines, as the "starting point and the initial benchmark," continue

to play a role in the sentencing determination, see *Gall,* 552 U.S., at 49, 128 S.Ct. 586, there is no longer a limit comparable to the one in *Burns* on variances from Guidelines ranges that a district court may find justified. This Court is confident that district judges and counsel have the ability-especially in light of Rule 32's other procedural protections-to make sure that all relevant matters relating to a sentencing decision have been considered before a final determination is made. Pp. 2202 - 2204.

458 F.3d 1208, affirmed.

STEVENS, J., delivered the opinion of the Court, in which ROBERTS, C.J., and SCALIA, THOMAS, and ALITO, JJ., joined. THOMAS, J., filed a concurring opinion. BREYER, J., filed a dissenting opinion, in which KENNEDY, SOUTER, and GINSBURG, JJ., joined.

Arthur J. Madden, III, Mobile, AL, for petitioner.

Matthew D. Roberts, Washington, D.C., for respondent.

Peter B. Rutledge, Charlottesville, VA, as *amicus curiae,* appointed by this Court, in support of the judgment below.

Jonathan D. Hacker, Harvard Law School, Supreme Court and Appellate Advocacy Clinic, Cambridge, MA, Arthur J. Madden III, Counsel of Record, Madden & Soto, Mobile, AL, Walter Dellinger, Mark S. Davies, Ryan W. Scott, Admitted only in Illinois, Susan M. Moss, O'Melveny & Myers LLP, Washington, DC, for petitioner.

Paul D. Clement, Solicitor General, Counsel of Record, Alice S. Fisher, Assistant Attorney General, **2200Michael R. Dreeben , Deputy Solicitor General, Matthew D. Roberts, Assistant to the Solicitor General, Sangita K. Rao, Attorney, Department of Justice, Washington, D.C., for United States.

For U.S. Supreme Court Briefs, see:2009 WL 494940   (Pet.Brief)2008   WL   809102 (Resp.Brief)2008 WL 1721899 (Reply.Brief)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

128 S.Ct. 2198                                                                                           Page 3
553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal
D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313
**(Cite as: 553 U.S. 708, 128 S.Ct. 2198)**

Justice STEVENS delivered the opinion of the Court.

Rule 32(h) of the Federal Rules of Criminal Procedure, promulgated in response to our decision in *Burns v. United States,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), states that "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating *710 such a departure." The question presented by this case is whether that Rule applies to every sentence that is a variance from the recommended Federal Sentencing Guidelines range even though not considered a "departure" as that term was used when Rule 32(h) was promulgated.

### I

Petitioner, Richard Irizarry, pleaded guilty to one count of making a threatening interstate communication, in violation of 18 U.S.C. § 875(c). Petitioner made the following admissions in the factual resume accompanying his plea: (1) On November 5, 2003, he sent an e-mail threatening to kill his ex-wife and her new husband; (2) he had sent "dozens" of similar e-mails in violation of a restraining order; (3) he intended the e-mails to "convey true threats to kill or injure multiple persons"; and (4) at all times he acted knowingly and willfully. App. 273-275.

The presentence report (PSR), in addition to describing the threatening e-mails, reported that petitioner had asked another inmate to kill his ex-wife's new husband. Brief for United States 6. The PSR advised against an adjustment for acceptance of responsibility and recommended a Guidelines sentencing range of 41-to-51 months of imprisonment, based on enhancements for violating court protective orders, making multiple threats, and intending to carry out those threats. Brief for Petitioner 9. As possible grounds for a departure, the probation officer stated that petitioner's criminal history category might not adequately reflect his "

'past criminal conduct or the likelihood that [petitioner] will commit other crimes.' " *Ibid.*

The Government made no objection to the PSR, but advised the court that it intended to call petitioner's ex-wife as a witness at the sentencing hearing. App. 293. Petitioner objected to the PSR's application of the enhancement based on his intention to carry out the threats and its rejection *711 of an adjustment for acceptance of responsibility. *Id.,* at 295-296.

Four witnesses testified at the sentencing hearing. *Id.,* at 299. Petitioner's ex-wife described incidents of domestic violence, the basis for the restraining order against petitioner, and the threats petitioner made against her and her family and friends. *Id.,* at 307, 309, 314. She emphasized at some length her genuine concern that petitioner fully intended to carry out his threats. *Id.,* at 320. A special agent of the Federal Bureau of Investigation was called to describe documents recovered from petitioner's vehicle when he was arrested; those documents indicated he intended to track down his ex-wife and their children. *Id.,* at 326-328. Petitioner's cellmate next testified that petitioner "was obsessed with the idea of getting rid of" **2201 his ex-wife's husband. *Id.,* at 336. Finally, petitioner testified at some length, stating that he accepted responsibility for the e-mails, but that he did not really intend to carry out his threats. *Id.,* at 361. Petitioner also denied speaking to his cellmate about killing his ex-wife's husband. *Id.,* at 356-357.

After hearing from counsel, the trial judge delivered a thoughtful oral decision, which included findings resolving certain disputed issues of fact. She found that petitioner had deliberately terrorized his ex-wife, that he intended to carry out one or more of his threats, "that he still intends to threaten and to terrorize Ms. Smith by whatever means he can and that he does not accept responsibility for what he has done." *Id.,* at 372. After giving both petitioner and counsel an opportunity to make further comment, the judge concluded:

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

128 S.Ct. 2198                                                                                    Page 4
553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal
D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313
(Cite as: 553 U.S. 708, 128 S.Ct. 2198)

"I've considered all of the evidence presented today, I've considered everything that's in the presentence report, and I've considered the statutory purpose of sentencing and the sentencing guideline range. I find the guideline *712 range is not appropriate in this case. I find Mr. Irizarry's conduct most disturbing. I am sincerely convinced that he will continue, as his ex-wife testified, in this conduct regardless of what this court does and regardless of what kind of supervision he's under. And based upon that, I find that the maximum time that he can be incapacitated is what is best for society, and therefore the guideline range, I think, is not high enough.

"The guideline range goes up to 51 months, which is only nine months shorter than the statutory maximum. But I think in Mr. Irizarry's case the statutory maximum is what's appropriate, and that's what I'm going to sentence him." *Id.,* at 374-375.

The court imposed a sentence of 60 months of imprisonment to be followed by a 3-year term of supervised release. *Id.,* at 375.

Defense counsel then raised the objection that presents the issue before us today. He stated, "We didn't have notice of [the court's] intent to upwardly depart. What the law is on that now with-," to which the Court responded, "I think the law on that is out the window .... You had notice that the guidelines were only advisory and the court could sentence anywhere within the statutory range." *Id.,* at 377.

The Court of Appeals for the Eleventh Circuit affirmed petitioner's sentence, reasoning that Rule 32(h) did not apply because "the above-guidelines sentence imposed by the district court in this case was a variance, not a guidelines departure." 458 F.3d 1208, 1211 (2006) *(per curiam).* The Court of Appeals declined to extend the rule to variances. "After [ *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),] parties are inherently on notice that the sentencing guidelines

range is advisory.... Given *Booker,* parties cannot claim unfair surprise or inability to present informed comment." *Id.,* at 1212.

***713** Because the Courts of Appeals are divided with respect to the applicability of Rule 32(h) to Guidelines variances,[FN1] we granted ****2202** certiorari. 552 U.S. 1086, 128 S.Ct. 828, 169 L.Ed.2d 625 (2008). We now affirm.

> FN1. Compare *United States v. Vega-Santiago,* 519 F.3d 1 (C.A.1 2008) (en banc); *United States v. Vampire Nation,* 451 F.3d 189 (C.A.3 2006); *United States v. Mejia-Huerta,* 480 F.3d 713 (C.A.5 2007); *United States v. Long Soldier,* 431 F.3d 1120 (C.A.8 2005); and *United States v. Walker,* 447 F.3d 999, 1006 (C.A.7 2006), with *United States v. Anati,* 457 F.3d 233 (C.A.2 2006); *United States v. Davenport,* 445 F.3d 366 (C.A.4 2006); *United States v. Cousins,* 469 F.3d 572 (C.A.6 2006); *United States v. Evans-Martinez,* 448 F.3d 1163 (C.A.9 2006); and *United States v. Atencio,* 476 F.3d 1099 (C.A.10 2007).

II

At the time of our decision in *Burns,* the Guidelines were mandatory; the Sentencing Reform Act of 1984, § 211 *et seq.,* 98 Stat. 1987, prohibited district courts from disregarding "the mechanical dictates of the Guidelines" except in narrowly defined circumstances. 501 U.S., at 133, 111 S.Ct. 2182. Confronted with the constitutional problems that might otherwise arise, we held that the provision of Rule 32 that allowed parties an opportunity to comment on the appropriate sentence-now Rule 32(i)(1)(C)-would be "render [ed] meaningless" unless the defendant were given notice of any contemplated departure. *Id.,* at 135-136, 111 S.Ct. 2182. Justice SOUTER disagreed with our conclusion with respect to the text of Rule 32 and conducted a due process analysis. *Id.,* at 147, 111 S.Ct. 2182 (dissenting opinion).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

128 S.Ct. 2198                                                                                                                                    Page 5

553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal
D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313
**(Cite as: 553 U.S. 708, 128 S.Ct. 2198)**

[1] Any expectation subject to due process protection at the time we decided *Burns* that a criminal defendant would receive a sentence within the presumptively applicable guideline range did not survive our decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which invalidated the mandatory features of the Guidelines. Now faced with advisory Guidelines, neither the Government nor the defendant may place the same degree of reliance on the type of "expectancy" *714 that gave rise to a special need for notice in *Burns.* Indeed, a sentence outside the Guidelines carries no presumption of unreasonableness. *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 596-97 (2007); see also *Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007).

[2] It is, therefore, no longer the case that "were we to read Rule 32 to dispense with notice [of a contemplated non-Guidelines sentence], we would then have to confront the serious question whether [such] notice in this setting is mandated by the Due Process Clause." *Burns,* 501 U.S., at 138, 111 S.Ct. 2182. The due process concerns that motivated the Court to require notice in a world of mandatory Guidelines no longer provide a basis for this Court to extend the rule set forth in *Burns* either through an interpretation of Rule 32(h) itself or through Rule 32(i)(1)(C). And contrary to what the dissent argues, *post,* at 2204 - 2205 (opinion of BREYER, J.), the rule does not apply to 18 U.S.C. § 3553 variances by its terms. "Departure" is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines.

The notice requirement set out in *Burns* applied to a narrow category of cases. The only relevant departures were those authorized by 18 U.S.C. § 3553(b) (1988 ed.), which required "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." That determination could only be made based on "the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." *Ibid.* And the notice requirement only applied to the subcategory of those departures that were based on "a ground not identified as a ground for ... departure either in the presentence report or in a pre-hearing submission." *Burns,* 501 U.S., at 138-139, 111 S.Ct. 2182; see also Fed. Rule Crim. Proc. 32(h). Although the Guidelines, as the "starting point and the initial benchmark," continue to play a role in the sentencing determination, see *715**2203 Gall,* 552 U.S., at 49, 128 S.Ct. 586, 596-97, there is no longer a limit comparable to the one at issue in *Burns* on the variances from Guidelines ranges that a district court may find justified under the sentencing factors set forth in 18 U.S.C. § 3553(a) (2000 ed. and Supp. V).

Rule 32(i)(1)(C) requires the district court to allow the parties to comment on "matters relating to an appropriate sentence," and given the scope of the issues that may be considered at a sentencing hearing, a judge will normally be well advised to withhold her final judgment until after the parties have had a full opportunity to present their evidence and their arguments. Sentencing is "a fluid and dynamic process and the court itself may not know until the end whether a variance will be adopted, let alone on what grounds." *United States v. Vega-Santiago,* 519 F.3d 1, 4 (C.A.1 2008) (en banc). Adding a special notice requirement whenever a judge is contemplating a variance may create unnecessary delay; a judge who concludes during the sentencing hearing that a variance is appropriate may be forced to continue the hearing even where the content of the Rule 32(h) notice would not affect the parties' presentation of argument and evidence. In the case before us today, even if we assume that the judge had contemplated a variance before the sentencing hearing began, the record does not indicate that a statement announcing that possibility would have changed the parties' presentations in any material way; nor do we think it would in most cases. The Government admits as much in arguing that the er-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal
D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313
**(Cite as: 553 U.S. 708, 128 S.Ct. 2198)**

ror here was harmless. Brief for United States 37-38.

Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues. We recognize that there will be some cases in which the factual basis for a particular sentence will come as a surprise to a defendant or the Government. The *716 more appropriate response to such a problem is not to extend the reach of Rule 32(h)'s notice requirement categorically, but rather for a district judge to consider granting a continuance when a party has a legitimate basis for claiming that the surprise was prejudicial. As Judge Boudin has noted,

"In the normal case a competent lawyer ... will anticipate most of what might occur at the sentencing hearing-based on the trial, the presentence report, the exchanges of the parties concerning the report, and the preparation of mitigation evidence. Garden variety considerations of culpability, criminal history, likelihood of reoffense, seriousness of the crime, nature of the conduct and so forth should not generally come as a surprise to trial lawyers who have prepared for sentencing." *Vega-Santiago,* 519 F.3d, at 5.

The fact that Rule 32(h) remains in effect today does not justify extending its protections to variances; the justification for our decision in *Burns* no longer exists and such an extension is apt to complicate rather than to simplify sentencing procedures. We have confidence in the ability of district judges and counsel-especially in light of Rule 32's other procedural protections [FN2]-to make sure that all relevant **2204 matters relating to a sentencing decision have been considered before the final sentencing determination is made.

FN2. Rule 32 requires that a defendant be given a copy of his PSR at least 35 days before sentencing, Fed. Rule Crim. Proc.

32(e)(2). Further, each party has 14 days to object to the PSR, Rule 32(f)(1), and at least 7 days before sentencing the probation officer must submit a final version of the PSR to the parties, stating any unresolved objections, Rule 32(g). Finally, at sentencing, the parties must be allowed to comment on "matters relating to an appropriate sentence," Rule 32(i)(1)(C), and the defendant must be given an opportunity to speak and present mitigation testimony, Rule 32(i)(4)(A)(ii).

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

*717 Justice THOMAS, concurring.

Earlier this Term, I explained that because "there is no principled way to apply the *Booker* remedy," it is "best to apply the statute as written, including 18 U.S.C. § 3553(b), which makes the [Federal Sentencing] Guidelines mandatory." *Kimbrough v. United States,* 552 U.S. 85, 116, 128 S.Ct. 558, 578, 169 L.Ed.2d 481 (2007) (dissenting opinion) (referencing *United States v. Booker,* 543 U.S. 220, 258-265, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)); see also *Gall v. United States,* 552 U.S. 38, 61, 128 S.Ct. 586, 603 (2007) (THOMAS, J., dissenting) (applying the Guidelines as mandatory). Consistent with that view, I would hold that the District Court committed statutory error when it imposed a sentence at "variance" with the Guidelines in a manner not authorized by the text of the Guidelines, which permit sentences outside the Guidelines, or "departures," only when certain aggravating or mitigating circumstances are present. See United States Sentencing Commission, Guidelines Manual § 1B1.1 (Nov.2007). But the issue whether such post-*Booker* "variances" are permissible is not currently before us.

Rather, we are presented with the narrow question whether Federal Rule of Criminal Procedure 32(h) requires a judge to give notice before he im-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

128 S.Ct. 2198                                                                                      Page 7
553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal
D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313
(Cite as: 553 U.S. 708, 128 S.Ct. 2198)

poses a sentence outside the Guidelines on a ground not identified in the presentence report or in a pre-hearing submission by the Government. I agree with the Court that neither Rule 32(h) nor *Burns v. United States,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), compels a judge to provide notice before imposing a sentence at "variance" with the post-*Booker* advisory Guidelines, *ante,* at 2203. Each addresses only "departures" under the mandatory Guidelines and does not contemplate the drastic changes to federal sentencing wrought by the *Booker* remedy. For this reason, I join the Court's opinion.

Justice BREYER, with whom Justice KENNEDY, Justice SOUTER, and Justice GINSBURG join, dissenting.

Federal Rule of Criminal Procedure 32(h) says:

**\*718** "Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure."

The question before us is whether this Rule applies when a sentencing judge decides, pursuant to 18 U.S.C. § 3553(a) (2000 ed. and Supp. V), to impose a sentence that is a "variance" *from* the advisory Guidelines, but is not a "departure" *within* the Guidelines. The Court says that the Rule does not apply. I disagree.

The Court creates a legal distinction without much of a difference. The Rule speaks specifically of "departure[s]," but I see no reason why that term should not be read to encompass what the Court calls § 3553(a) "variances." The Guidelines define "departure" to mean "imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise **\*\*2205** different from the guideline sentence." United States Sentencing Commission, Guidelines Manual (USSG), § 1B1.1, comment., n. 1(E) (Nov.2007). So-called variances fall comfortably within this definition. Variances

are also consistent with the ordinary meaning of the term "departure." See, *e.g.,* Webster's Third New International Dictionary 604 (1993) (defining "departure" to mean a "deviation or divergence esp. from a rule" (def. 5a)). And conceptually speaking, the substantive difference between a "variance" and a "departure" is nonexistent, as this Court's opinions themselves make clear. See, *e.g., Gall v. United States,* 552 U.S. 38, 46-47, 128 S.Ct. 586, 594-95 (2007) (using the term "departure" to describe any non-Guideline sentence); *Rita v. United States,* 551 U.S. 338, 350, 127 S.Ct. 2456, 2464 (2007) (stating that courts "may depart (either pursuant to the Guidelines or, since *Booker,* by imposing a non-Guidelines sentence)").

Of course, when Rule 32(h) was written, its drafters had *only* Guidelines-authorized departures in mind: Rule 32(h) was written after the Guidelines took effect but before this **\*719** Court decided *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Yet the language of a statute or a rule, read in light of its purpose, often applies to circumstances that its authors did not then foresee. See, *e.g., Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 79-80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

And here, the purpose behind Rule 32(h) requires that the Rule be construed to apply to variances. That Rule was added to "reflect" our decision in *Burns v. United States,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). See Advisory Committee's Notes on Fed. Rule Crim. Proc. 32, 18 U.S.C.App., p. 1411 (2000 ed., Supp. II) (2002 Amendment). In *Burns,* the Court focused upon "the extraordinary case in which the district court, on its own initiative and contrary to the expectations of both the defendant and the Government, decides that the factual and legal predicates for a departure are satisfied." 501 U.S., at 135, 111 S.Ct. 2182. The Court held that "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

128 S.Ct. 2198                                                                                              Page 8
553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal
D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313
(Cite as: 553 U.S. 708, 128 S.Ct. 2198)

Government ... the district court [must] give the parties reasonable notice that it is contemplating such a ruling." *Id.,* at 138, 111 S.Ct. 2182.

Our holding in *Burns* was motivated, in part, by a desire to avoid due process concerns. See ibid. ("[W]ere we to read Rule 32 to dispense with notice, we would then have to confront the serious question whether notice in this setting is mandated by the Due Process Clause"). That is perhaps why the majority today suggests that "[a]ny expectation subject to due process protection at the time we decided *Burns* " failed to survive *Booker. Ante,* at ----. But the due process concern was not the only reason for our holding in *Burns,* nor was it even the primary one. Rather, the Court principally based its decision upon Rule 32' s requirement that parties be given " 'an opportunity to comment upon ... matters relating to the appropriate sentence.' " 501 U.S., at 135, 111 S.Ct. 2182 (citing then-Rule 32(a)(1)). "Obviously," the Court said, whether a *sua sponte* departure was warranted was a "matter*720 relating to the appropriate sentence." *Ibid.* (internal quotation marks omitted). To deprive the parties of notice of such a departure would thus "rende[r] meaningless" their right to comment on "matters relating to the appropriate sentence." *Id.,* at 136, 111 S.Ct. 2182 (internal quotation marks omitted). Notice, the Court added, **2206 was "essential to assuring procedural fairness." *Id.,* at 138, 111 S.Ct. 2182.

The Court's decision in *Burns* also relied on what the Court described as Rule 32's overall purpose of "provid[ing] for focused, adversarial development of the factual and legal issues" related to sentencing. *Id.,* at 134, 111 S.Ct. 2182. This could be gleaned, *inter alia,* from the requirement that parties be given an opportunity to file responses or objections to the presentence report and from the requirement that parties be given an opportunity to speak at the sentencing proceeding. *Ibid.* Construing Rule 32 not to require notice of *sua sponte* departures, the Court reasoned, would be "inconsistent with Rule 32's purpose of promoting focused, adversarial resolution" of sentencing is-

sues. *Id.,* at 137, 111 S.Ct. 2182.

The primary grounds for the Court's decision in *Burns* apply with equal force to the variances we consider here. Today, Rule 32(i)(1)(C) provides a virtually identical requirement that the district court "allow the parties' attorneys to comment on the probation officer's determinations *and other matters relating to an appropriate sentence.* " (Emphasis added.) To deprive the parties of notice of previously unidentified grounds for a variance would *today* "rende[r] meaningless" the parties' right to comment on "matters relating to [an] appropriate sentence." *Id.,* at 136, 111 S.Ct. 2182 (internal quotation marks omitted). To deprive the parties of notice would *today* subvert Rule 32's purpose of "promoting focused, adversarial resolution" of sentencing issues. In a word, it is not fair. *Id.,* at 137, 111 S.Ct. 2182.

Seeking to overcome the fact that text, purpose, and precedent are not on its side, the majority makes two practical arguments in its defense. First, it says that notice is unnecessary*721 because "there is no longer a limit comparable to the one at issue in *Burns* " as to the number of reasons why a district court might *sua sponte* impose a sentence outside the applicable range. *Ante,* at ----. Is that so? Courts, while now free to impose sentences that vary from a Guidelines-specified range, have *always* been free to depart from such a range. See USSG ch. 1, pt. A, § 4(b) (Nov.1987), reprinted in § 1A1.1 comment., editorial note (Nov.2007) (suggesting broad departure authority). Indeed, even *Burns* recognized that "the Guidelines place essentially no limit on the number of potential factors that may warrant a departure." 501 U.S., at 136-137, 111 S.Ct. 2182 (citing USSG ch. 1, pt. A, § 4(b) (1990)). Regardless, if *Booker* expanded the number of grounds on which a district court may impose a non-Guidelines sentence, that would seem to be an additional argument *in favor of,* not *against,* giving the parties notice of the district court's intention to impose a non-Guidelines sentence for some previously unidentified reason. No-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

128 S.Ct. 2198                                                                              Page 9
553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal
D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313
**(Cite as: 553 U.S. 708, 128 S.Ct. 2198)**

tice, after all, would promote "focused, adversarial" litigation at sentencing. *Burns, supra,* at 134, 137, 111 S.Ct. 2182.

Second, the majority fears that a notice requirement would unnecessarily "delay" and "complicate" sentencing. *Ante,* at 2203, 2204. But this concern seems exaggerated. Rule 32(h) applies only where the court seeks to depart on a ground *not* previously identified by the presentence report or the parties' presentencing submissions. And the Solicitor General, after consulting with federal prosecutors, tells us that "in the vast majority of cases in which a district court imposes a sentence outside the Guidelines range, the grounds for the variance have previously been identified by the [presentence report] or the parties." Brief for United States 32.

In the remaining cases, notice does not necessarily mean delay. The parties may **2207 well be prepared to address the point and a meaningful continuance of sentencing would likely be in order only where a party would adduce additional evidence or brief an unconsidered legal issue. Further, to *722 the extent that district judges find a notice requirement to complicate sentencing, those judges could make use of Rule 32(d)(2)(F), which enables them to require that presentence reports address the sentence that would be appropriate in light of the § 3553(a) factors (including, presumably, whether there exist grounds for imposing a non-Guidelines sentence). If a presentence report includes a section on whether a variance would be appropriate under § 3553(a), that would likely eliminate the possibility that the district court would wind up imposing a non-Guidelines sentence for some reason *not previously identified.*

Finally, if notice *still* produced some burdens and delay, fairness justifies notice regardless. Indeed, the Government and the defendant here-the parties most directly affected by sentencing-both urge the Court to find a notice requirement. Clearly they recognize, as did the Court in *Burns,* that notice is "essential to assuring procedural fairness" at sentencing. 501 U.S., at 138, 111 S.Ct. 2182.

I believe that Rule 32(h) provides this procedural safeguard. And I would vacate and remand to the Court of Appeals so that it could determine whether the petitioner received the required notice and, if not, act accordingly.

I respectfully dissent.

U.S.,2008.
Irizarry v. U.S.
553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28, 76 USLW 4401, 08 Cal. Daily Op. Serv. 7130, 2008 Daily Journal D.A.R. 8671, 21 Fla. L. Weekly Fed. S 313

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.